

John W. Shaw
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
(302) 298-0701 – Direct
jshaw@shawkeller.com

April 15, 2015

**BY CM/ECF and HAND DELIVERY**
The Honorable Richard G. Andrews
United States District Court
844 N. King Street
Wilmington, DE  19801

   Re: *EMC Corp. v. Pure Storage Inc.*, C.A. No. 13-01985-RGA

Dear Judge Andrews:

  Defendant Pure Storage Inc. respectfully submits its letter outlining the issues for the Friday, April 17, 2015 discovery dispute conference.

I. **Newly Disclosed Witnesses**

  On February 12, 2015—well after the deadline to serve document and email discovery, the day after the deadline to serve any other written discovery, and one month before the close of fact discovery—EMC identified 18 new witnesses who are "Likely to Have Discoverable Information" that EMC "may use to support its claims in this action."  Fifth Amended Initial Disclosures at 2 [Exh. A (highlighting shows new witness disclosures)].  This eleventh-hour disclosure nearly *doubled* the number of witnesses EMC may use to support its claims, to 41.  EMC's 18 new witnesses purportedly possess relevant knowledge on major issues in the case—from the technical details of EMC's products to the alleged competition between EMC and Pure.  [Exh. A]  All of the new witnesses are EMC's own employees, and thus were known to EMC since it filed the case in November 2013.  Many of EMC's new witnesses were designated on subjects for which EMC had already identified other witnesses.

  "The fundamental purpose of early disclosures is to accelerate the exchange of information needed to . . . assist the parties in organizing and prioritizing their discovery, and prepare the case for trial."  *In re LG Front Load Washing Mach. Class Action Litig.*, No. CIV.A. 08-51 FSH MAS, 2011 WL 13868, at *1 (D.N.J. Jan. 4, 2011) (internal quotations and citation omitted).  Thus, a party must identify any witness it "might call . . . in support of its claims or defenses" to "alert [the] opposing party of the need to take discovery of the named witness."  *Pal v. N.Y. Univ.*, No. 06 Civ. 5892(PAC)(FM), 2008 WL 2627614, at *2-6 (S.D.N.Y. June 30, 2008) (granting motion to strike witnesses identified in supplemental disclosures served on the last day of fact discovery, finding that the "late disclosure of the four witnesses here simply did not provide [the other side] with fair warning of the need to take discovery from them").

  EMC cannot reasonably expect to use the testimony of 41 witnesses in the one-week trial scheduled in this action, nor could EMC reasonably expect Pure to take discovery of all of the persons that EMC claims have discoverable information that EMC may use at a hearing or trial.  The Scheduling Order permits just 100 hours of depositions per side, and at the time of EMC's disclosure, the parties had over 20 depositions scheduled for the final weeks of discovery.  EMC's last-minute disclosure thus prejudices Pure, because Pure was unable to investigate and assess the new witnesses when organizing and prioritizing discovery.  Pure already had served

SHAW KELLER LLP

The Honorable Richard G. Andrews
Page 2

document and email requests and other written discovery based upon the witnesses EMC identified in its five prior Rule 26 disclosures. Further, Pure already had allocated its limited number of deposition hours and filled the remaining dates in the discovery period with depositions based upon EMC's previous disclosure of more than 20 potentially relevant witnesses.

Moreover, EMC's last-minute disclosure of 18 of its own employees effectively creates a new cast of potential trial witnesses on key subjects who—as a direct result of EMC's failure to identify them earlier—Pure has not had the opportunity to depose or investigate by any other discovery means. At trial, EMC may seek to avoid damaging admissions made by its originally disclosed witnesses at deposition by relying upon the newly disclosed witnesses—even though Pure was denied the opportunity to conduct depositions due to the timing of and number of witnesses in EMC's final disclosure.

Accordingly, Pure objected to EMC's new disclosures on February 19, 2015 and began the meet and confer process. [Exh. B]  While Federal Rule of Civil Procedure 37(c) supports an order barring EMC from relying on any of its newly disclosed witnesses, Pure's meet and confer efforts proposed compromises that would allow EMC to use whichever of these new witnesses it desires at trial, while protecting Pure's right to conduct a fair cross-examination. [Exhs. C-E].

Because these efforts at compromise failed, Pure seeks the following relief:  EMC must identify any of the newly disclosed witnesses it may call to testify at trial by December 5, 2015, and make those witnesses available for deposition no later than January 26, 2016 (approximately five weeks before trial). EMC shall provide a proffer regarding the general subject matter on which each identified witness may testify. Pure may depose any identified witness for no longer than 3.5 hours. The depositions shall not count against Pure's 100-hour deposition limit.

Each component of the proposed relief is reasonable and proportional. <u>First</u>, any depositions should occur sufficiently before trial such that Pure's normal trial preparation efforts are not undermined by taking whatever additional depositions are required by EMC's late and excessive disclosures. Under EMC's proposal to Pure, any of the newly disclosed witnesses EMC intends to rely upon could be deposed up to the day before motions *in limine* and pre-trial filings are due, impairing Pure's ability to incorporate the deposition testimony fully in its trial plans and burdening Pure with the need simultaneously to take discovery and make final preparations for trial.

<u>Second</u>, a proffer of expected testimony is justified in order to limit the length of any deposition and to allow the deposition to focus on the expected trial testimony. A proffer is needed because EMC designated many of the newly disclosed witnesses on multiple, broad topics. Alternatively and without a proffer, these depositions could be governed by Rule 30, although Pure does not believe such an approach is efficient for either party or the witnesses.

<u>Third</u>, Pure has not asked EMC to conduct new email searches for any of the new witnesses, even though such a remedy would be appropriate. Pure originally identified custodians for email discovery based on EMC's earlier disclosures, and even limited those custodians at EMC's insistence from the 10 permitted under the Scheduling Order to 7—all before EMC added the newly disclosed witnesses. Pure will be doubly prejudiced if it cannot

SHAW KELLER LLP
The Honorable Richard G. Andrews
Page 3

take depositions of the newly disclosed witnesses because the timing of EMC's disclosures denied Pure any other means of investigating their knowledge.

EMC's only justification for identifying 41 witnesses who it may use to support its claims is that the newly identified witnesses provided information to EMC's Rule 30(b)(6) designees. But Pure served its Rule 30(b)(6) deposition notice on December 4, 2015—more than two months before EMC supplemented its witness disclosures. Moreover, all of the witnesses—EMC employees—were known and accessible to EMC long before Pure served its Rule 30(b)(6) notice. EMC did not identify the newly disclosed witnesses as a result of any discovery it took and has provided no explanation for why the witnesses were not identified at an earlier date, given that they purportedly "likely have discoverable information" concerning major issues in the case. Finally, whether or not EMC's excuse for the last-minute disclosures is sufficient to justify EMC's conduct, identification of 18 new witnesses (and 41 total witnesses) prejudices Pure and its trial preparation as set forth above. Resolution of this matter should not be delayed until the eve of trial. Any prejudice EMC may claim as a result of the requested proffer is a result of EMC's own delay in identification of the witnesses.

In short, this is a problem of EMC's making, and if EMC is permitted to leave Pure in the dark as to its intentions and likely testimony at trial, the purpose of Rule 26(a)(1) will be flouted, and Pure will be prejudiced at trial.

II.     **Reduction of Asserted Claims**

By way of brief status report, Pure has requested that EMC reduce the number of asserted claims from 32. The parties are meeting and conferring, and hope to reach a resolution in the coming days. If a resolution does not occur quickly, however, the parties may need a further conference with the Court.

Respectfully submitted,

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

Enclosures
cc:     Clerk of the Court (by hand delivery)
        All Counsel of Record (by CM/ECF)