# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**JEREMY A. TIGAN**
(302) 351-9106
(302) 425-3096 FAX
jtigan@mnat.com

April 16, 2015

**BY E-FILING**

The Honorable Richard G. Andrews
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE  19801

      Re:    *EMC Corp., et al. v. Pure Storage, Inc.*, C.A. No. 13-1985 (RGA)

Dear Judge Andrews:

      We write on behalf of the Plaintiffs (collectively, "EMC") to address the issues identified in Defendant Pure Storage, Inc.'s April 15, 2015 letter (D.I. 156) in advance of tomorrow's discovery dispute conference.

      **I.**    **The So-Called "Newly Disclosed Witnesses"**

      This issue exemplifies the adage, "no good deed goes unpunished."  In essence, Pure Storage seeks to penalize EMC for providing timely, complete, and forthright discovery in depositions and amended initial disclosures.  EMC properly identified all of the individuals at issue well within the fact discovery period and in compliance with Rule 26(e).  EMC named these individuals because it either intended to designate them as Rule 30(b)(6) deposition witnesses or because it sought their assistance in preparing other Rule 30(b)(6) witnesses.

      In December 2014, Pure Storage served a broad, 41-topic Rule 30(b)(6) notice.  In response, EMC dutifully investigated the topics to determine which of its employees had relevant knowledge.  No single witness was knowledgeable about all of Pure Storage's topics.  Thus, consistent with the Rule, EMC arranged for its knowledgeable employees to provide information to the designated 30(b)(6) witnesses.  In compliance with Rule 26(e), EMC served its Fifth Amended Initial Disclosures to identify these knowledgeable employees who participated in the deposition preparation sessions.

The Honorable Richard G. Andrews
April 16, 2015
Page 2

EMC served its amended disclosures on February 12, 2015 (*see* D.I. 131), with over a month before the close of fact discovery. Pure Storage had ample opportunity to seek to depose any of the individuals listed in those disclosures, but chose not to do so. In fact, *after* EMC served its Fifth Amended Initial Disclosures, Pure Storage noticed the depositions of two *other* EMC employees—not among the group of "newly disclosed witnesses." Pure Storage offers no explanation why it did not seek depositions of any of the "newly disclosed" individuals and there is no basis for Pure Storage's speculation that it would have changed its allocation of deposition hours or discovery requests.

Pure Storage's proposal is premised on the mistaken notion that EMC's conduct violates the discovery rules. Just the opposite: Rule 26(e)(1) *requires* that EMC supplement its initial disclosures "if the party learns that in some material respect the disclosure … is incomplete…." Parties routinely supplement initial disclosures throughout the discovery period. *See Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 370 (D. Del. 2006) ("Rule 26 requires supplementation … Supplementation requires everything to be supplemented. Not just certain interrogatories or certain requests. Everything including your initial disclosures.").

Nevertheless, to narrow the dispute, EMC agreed that it will not object to Pure Storage taking pretrial depositions of the individuals first named in EMC's February 12, 2015 disclosures prior to trial if indeed EMC designates any of those individuals as trial witnesses.[1] This Court is familiar with such pretrial depositions.

Pure Storage, however, has insisted on imposing an onerous procedure whereby these individuals must be disclosed before all other trial witnesses and EMC must provide a proffer of the witness's anticipated trial testimony, *over three months before trial*. Besides being unnecessary, this procedure would afford Pure Storage an undue tactical advantage by forcing EMC to reveal aspects of its trial strategy prematurely, while Pure Storage would be permitted to delay the disclosure of its intended witnesses until much closer to trial.

EMC timely identified all of the individuals at issue. Pure Storage had ample opportunity to seek to depose them during fact discovery, but did not. As a compromise, EMC has offered to permit pretrial depositions of individuals first identified in EMC's Fifth Amended Initial Disclosures who were not deposed during fact discovery and EMC plans to call at trial. This compromise is more than fair. The Court should not impose additional, prejudicial disclosure requirements on EMC as a consequence of EMC simply following the rules.

---

[1] The scheduled fact discovery cut-off was March 13, 2015; however, the parties stipulated that some depositions could take place after that date. As the result of an ongoing meet and confer process, some additional fact discovery depositions of EMC employees may yet occur.

The Honorable Richard G. Andrews
April 16, 2015
Page 3

## II.     Miscellaneous

Pure Storage never reduced the number of asserted prior art references (which number in the hundreds) in response to EMC's earlier reduction of asserted claims from 57 to 32.  The parties will be meeting and conferring about reducing the number of asserted claims and prior art references, and will attempt to reach agreement.  There is no pending dispute that requires the Court's involvement at this point.

          Respectfully,

          */s/ Jeremy A. Tigan*

          Jeremy A. Tigan (#5239)

JT/bac
9081856.3
cc:     All Counsel of Record (via CM/ECF and email)