IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EMC CORPORATION, EMC                )
INTERNATIONAL COMPANY, and EMC      )
INFORMATION SYSTEMS                 )
INTERNATIONAL,                      )
                                    )
                 Plaintiffs,        )
                                    )
        v.                          )        C.A. No. 13-1985-RGA
                                    )
PURE STORAGE, INC.,                 )
                                    )        REDACTED:
                 Defendant.         )        PUBLIC VERSION
                                    )

## **LETTER TO THE HONORABLE RICHARD G. ANDREWS FROM DAVID FRY**

OF COUNSEL:                                  John W. Shaw (No. 3362)
Robert A. Van Nest                           David M. Fry (No. 5486)
Matthew M. Werdegar                          SHAW KELLER LLP
Ashok Ramani                                 300 Delaware Avenue, Suite 1120
R. Adam Lauridsen                            Wilmington, DE 19801
Corey A. Johanningmeier                      (302) 298-0700
KEKER & VAN NEST LLP                         jshaw@shawkeller.com
633 Battery Street                           dfry@shawkeller.com
San Francisco, CA 94111                      *Attorneys for Defendant Pure Storage, Inc.*
(415) 391-5400

Joseph Fitzgerald
PURE STORAGE, INC.
650 Castro Street, Suite 400
Mountain View, CA 94041
(650) 318-6589

Dated: September 30, 2015



David M. Fry
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
(302) 298-0705 – Direct
dfry@shawkeller.com

September 30, 2015

**BY CM/ECF AND HAND DELIVERY**
The Honorable Richard G. Andrews
United States District Court
844 N. King Street
Wilmington, DE 19801

REDACTED:
PUBLIC VERSION

Re:   *EMC Corp. v. Pure Storage Inc.*, C.A. No. 13-01985-RGA

Dear Judge Andrews:

Defendant Pure Storage Inc. respectfully submits its letter outlining the issues for the Friday, October 2, 2015 discovery dispute conference. Despite extensive meet-and-confer on these issues, the parties have been unable to resolve their disputes.

I.   **EMC's damages opinions should be excluded to the extent they rely on late disclosed evidence and contentions.**

During discovery, Pure served EMC with a contention interrogatory asking it to identify the factual bases for its lost profit claims. *See* Ex. E (EMC's 2nd Suppl. Rsp. Interrog. No. 9). EMC's damages reports contain facts and contentions far beyond those disclosed in its interrogatory response. EMC does not claim that any of those facts or contentions at issue here were unknown to it at the time of its response.[1] Rather, EMC argues only that the interrogatory "does not call for this information." *See* Ex. A (Sept. 8, 2015 Poppe email). EMC's assertion is baseless, and Pure was prejudiced by EMC's incomplete response.

*First*, EMC did not identify or define the market in which it contends it suffered lost profits. Likewise, EMC did not disclose the facts on which EMC's expert eventually based his opinion that EMC suffered lost profits in either of two supposedly "equally probable" markets. EMC disclosed for the first time in its expert's damages report the purported existence of separate all-flash array ("AFA") and hybrid array markets in which it contends it suffered lost profits. *See, e.g.,* Ex. F (Napper Rpt.) at 60-62. EMC's late disclosure denied Pure the opportunity to take discovery specifically targeting the various factual assumptions on which EMC's lost profits claims necessarily rely, such as customer preferences regarding substitute products.

*Second*, EMC did not disclose the facts upon which its expert bases his lost profits market share analysis, namely, third-party "IDC data" that its expert now claims accurately describes vendors' respective market shares in the purported AFA and hybrid array markets. *See, e.g.,* Ex. F at 62-68, Schedule 2. Although EMC invoked Fed. R. Civ. P. 33(d) to list documents in response to Pure's interrogatory, it did not list the IDC studies upon which its expert bases his lost profits

---

[1] By contrast, Pure's expert's opinions on non-infringement and invalidity that Pure understands EMC may seek to strike could not be fully developed until EMC disclosed its infringement theories in detail. Pure also has offered EMC several remedies to mitigate any prejudice it claims to have suffered.

SHAW KELLER LLP

The Honorable Richard G. Andrews
Page 2

contentions. EMC compounded its late disclosure by relying on new facts regarding IDC's data from an undisclosed EMC witness in support of its *reply* damages report. Ex. G (Napper Reply Rpt.) at 33 n. 116. Pure was prejudiced by EMC's late disclosure because it was unable to conduct discovery regarding the IDC data, including a deposition of the undisclosed witness.

Despite EMC's control over and knowledge of its damages theory, it failed to disclose the highly material facts and contentions described above. EMC has made no offer of compromise to mitigate the prejudice its failure to disclose has caused. Thus, EMC should be barred from relying on the late-disclosed facts and opinions in its damages reports. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977).

## II.      **EMC's untimely infringement theory on the '464 patent should be excluded.**

In his opening report, EMC's expert presented a single theory of literal infringement of the '464 patent. Ex. H (Jestice Rpt.) at ¶¶ 180-181. Pure's expert responded to this theory, pointing out, among other flaws, that it was contrary to the Court's ordered claim construction in this case. Ex. I (Zadok Rebuttal Rpt.) at ¶¶ 80-84. In reply, EMC's expert offered a completely new theory concerning the crucial "returning the identifier" element of the asserted claims, ostensibly based on the doctrine of equivalents. Ex. J (Jestice Reply Rpt.) at ¶¶ 48-49; Ex. K (Jestice Depo.) at 187:1-7 ("Q. Okay. Now, is that opinion that you just expressed present in your opening report? A. No, it is not.").

EMC can offer no justification for its expert's failure to timely disclose this equivalents theory. Indeed, EMC's expert did argue doctrine of equivalents in the alternative in his opening report—but only with respect to completely different and hypothetical non-infringement arguments. *See* Ex. H at ¶ 182. EMC cannot claim to have been surprised that Pure would deny literal infringement of the returning element, given that EMC has had possession of Pure's source code since before claim construction, and the meaning of the returning element was strenuously disputed and a construction was ordered against EMC's position. D.I. 115 at 8. The only unfair surprise here was Pure's.

Pure is undeniably prejudiced by the late disclosure of this equivalence theory—including because Pure's expert has had no opportunity to respond to it.[2] This late disclosure has not only unfairly disadvantaged Pure, but also will disrupt the efficiency of further proceedings and trial on this issue. EMC compounded the prejudice by strategically opting to ask no questions about infringement of the '464 patent during its seven-hour deposition of Pure's expert. If the late opinion is not excluded, Pure will be forced to spend valuable space in its dispositive and *Daubert* motions addressing its complete lack of substance.

---

[2] In light of the importance of this issue to the case, and acknowledging that exclusion is an extreme sanction, Pure offered to submit a supplemental expert report on this issue. Ex. B (Sep. 11, 2015 Lauridsen ltr.). EMC responded with unreasonable proposed limitations on the length and deadline for such a report. Ex. C (Sep. 17, 2015 Poppe email). While a supplemental report is preferable to the alternative of going through dispositive motions and trial with no chance to respond, the necessary additional expert discovery on a core issue of alleged infringement risks postponing the set deadlines in the case—further prejudicing Pure by delaying the prompt resolution of these unfounded infringement claims.

SHAW KELLER LLP

The Honorable Richard G. Andrews
Page 3

Assertion of a new infringement theory in a reply expert report is improper, and cannot be considered to be "offered to directly contradict or rebut the opposing party's expert." *See, e.g.*, *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001-02 (D. Del. 2013). Such late theories can be excluded where they "flout[] discovery deadlines" and threaten "the constraints of Scheduling Orders and deadlines." *See, e.g.*, *id.* at 1001. Exclusion can be applied in the Court's discretion where, as here, there were inappropriate litigation tactics or "circumstances creating prejudice to the party against whom the evidence is offered." *See, e.g.*, *Novartis Pharmaceuticals Corp. v. Actavis, Inc.*, 2013 WL 7045056, C.A. No. 12-366-RGA-CJB, at *6 (D. Del. Dec. 23, 2013). In light of the clear prejudice to Pure, as well as the potential disruption to the trial proceedings and date, EMC's late disclosed infringement theory of infringement should be excluded.

**III.   EMC should be ordered to reduce its number of asserted claims.**

Although claim construction is long completed and fact and expert discovery are closed, EMC is still asserting 24 claims across 4 patents and three distinct technology areas (deduplication, RAID, and I/O scheduling). This is far more than feasibly can be addressed in the scheduled 5-day jury trial. *Cf.* Feb. 21, 2014 Sch. Cnf. Tr. (D.I. 17) at 17:18-19 ("there's only so much you can expect people to learn in a short amount of time"). Pure has met and conferred with EMC repeatedly—in April 2015, before expert discovery, and again in September 2015—but EMC has refused to cut the number of claims to a manageable number. Although EMC has offered to cut two duplicative claims from one patent, it has refused to drop any more—now or in the future. *See* Ex. D.

Pure therefore requests that the Court order EMC to reduce the number of asserted claims to no more than 5 per patent and 16 total, by 6 p.m. EDT on October 5. Pure is prepared thereafter to reduce its anticipation and obviousness references to no more than 6 per patent and 20 total. Pure's request is consistent with the guidance provided by the Court at the *Markman* hearing and tracks exactly the Federal Circuit Advisory Council's Model Order. *See* Dec. 16, 2014 Hr. Tr. at 138:13-22. And there is ample good cause for the Court to order the requested reductions at this time. With discovery completed, EMC has more than sufficient information to make an informed selection of claims. *See Certusview Tech., LLC v. S& N Locating Servs., LLC*, No. 2:13CV346, 2014 WL 4930803 at * 5 (E.D. Va. Oct. 1, 2014) (reduction in claims not premature where plaintiff "has had substantial opportunity to obtain discovery regarding [defendant's] invalidity and non-infringement contentions"). Moreover, dispositive motions are due on October 6. It would be a waste of both the parties' and the Court's time and resources to address in those motions numerous claims that ultimately will have to be dropped from the case.

Finally, EMC is only accusing a single line of products in this case—Pure's FlashArray system, and in several instances EMC is asserting multiple claims against the exact same functionality. Thus, requiring EMC to reduce its asserted claims will not deprive EMC of the opportunity to obtain a finding of infringement against any accused Pure Storage product. *Cf. Masimo Corp. v. Philips Elec. N. Am. Corp.*, 918 F. Supp. 2d 277, 283-84 (D. Del. 2013) (rejecting contention that due process only permits the reduction of duplicative claims). EMC's purported due process concerns may be fully addressed by an order that allows EMC to assert additional claims on a showing of need. *See, e.g., Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902-03 (Fed. Cir. 2011).

SHAW KELLER LLP

The Honorable Richard G. Andrews
Page 4

Respectfully submitted,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc:  Clerk of the Court (by hand delivery)
     All Counsel of Record (by e-mail)

# Exhibit A

REDACTED IN ITS ENTIRETY

# Exhibit B

REDACTED IN ITS ENTIRETY

# Exhibit C

REDACTED IN ITS ENTIRETY

# Exhibit D

| From: | Matthew Werdegar |
|---|---|
| To: | "Poppe, Matthew" |
| Cc: | EMC/Pure Storage OHS Only; Rosenberg, Stuart M.; Josh Krevitt; Paul Torchia; Wallace, Brooke Myers; John Shaw; David Fry; PURE-KVN |
| Subject: | RE: EMC v. Pure Storage |
| Date: | Wednesday, September 30, 2015 12:57:11 AM |
| Attachments: | image004.png |
| | image001.png |

Matt,

Your offer to reduce the number of asserted claims by two to 22 (six more than contemplated by the Federal Circuit Advisory Council's Model Order) is unreasonable and will not meaningfully streamline this case or make it any more possible to try it in a five-day jury trial.  As the Federal Circuit and courts within the District of Delaware repeatedly have made clear, your purported due process concerns may be addressed by an order that leaves open the opportunity for EMC to request additional claims upon a showing of need.   *See, e.g., Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902-03 (Fed. Cir. 2011); *In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303, 1309-12 (Fed. Cir. 2011); *Masimo Corp. v. Philips Elec. N. Am. Corp*., 918 F. Supp. 2d 277, 282-86 (D. Del. 2013); *see also* D.I. 66.  Moreover, your suggestion that Pure Storage should reduce its prior art references to 16 (four less than contemplated by the Model Order), when EMC has refused to cut its claims to 16, makes no sense.  As explained in my prior email, Pure Storage is willing promptly to reduce its anticipatory and obviousness references to 20, with no more than six per patent, and it is also willing to limit the number of obviousness combinations, which goes beyond what the Model Order says.  Consequently, it appears the parties are at an impasse and that the Court will have to resolve this issue.

As to your procedural objection, I note that EMC previously utilized the informal letter-brief dispute resolution process, rather than a noticed motion under Local Rule 7.1.2, to raise its complaints about the number of claim terms to be construed (an issue that was closely related to the number of asserted claims, as the Court ultimately recognized), even though that issue is not expressly covered by the Scheduling Order.  *See* D.I. 57.  This is also consistent with Judge Andrews's practice in other cases.  *See, e.g., Agincourt Gaming LLC v. Zynga Inc.*, D.I. 125 (D. Del. May 14, 2015) (addressing claim reduction in the context of a discovery conference).

Regards,
Matt

---

**Matthew Werdegar**
Attorney at Law

415 676 2248 direct  |  vCard  |  mwerdegar@kvn.com
633 Battery Street, San Francisco, CA 94111-1809  |  415 391 5400 main  |  kvn.com

**From:** Poppe, Matthew [mailto:mpoppe@orrick.com]
**Sent:** Tuesday, September 29, 2015 10:56 AM
**To:** Matthew Werdegar
**Cc:** EMC/Pure Storage OHS Only; Rosenberg, Stuart M.; Josh Krevitt; Paul Torchia; Wallace, Brooke Myers; John Shaw; David Fry; PURE-KVN
**Subject:** RE: EMC v. Pure Storage

Matt,

EMC is willing to drop two additional asserted claims – claims 1 and 10 of the '556 patent, bringing the number of asserted claims down to 22 – but EMC declines to drop any more. All of the remaining claims present non-duplicative elements that are relevant to liability, damages, and/or the strength of an injunction. Accordingly, under *In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303 (Fed. Cir. 2011), due process principles forbid forcing EMC to drop any of them. We disagree that the remaining claims cannot be addressed in a 5-day jury trial. They all relate to data storage technology and there is only one accused product (FlashArray).

Your statement that "EMC has persistently declined voluntarily to" reduce the number of asserted claims is untrue. In fact, since the Court ordered EMC to reduce the number of claims to 32, EMC has voluntarily dropped an additional 10 asserted claims, including one entire patent (the '475 patent). It is now Pure's turn to reciprocate by reducing the number of prior art references and obviousness combinations. To date, Pure has not meaningfully narrowed its invalidity case. Of the 19 prior art references that Pure originally identified as being anticipatory for patents other than the '475 patent, Pure is still asserting 16, it has added one new one (Krapp), and its expert continues to discuss another as "background" (Williams). While Pure has dropped some obviousness references, it has (improperly) added as many new ones. (See my 8/14/15 letter to you at pp. 6-7.) And Pure has stated the position that references allegedly not relied on for "obviousness" can still be used to show the "background of the field at issue and the knowledge of persons of ordinary skill in the art." (See 8/21/15 letter from A. Lauridsen to me.) Pure cannot justify such a large number of prior art references. To match EMC's reduction of claims, Pure should limit itself to 16 prior art references—including "background" references—from which it should assert no more than 16 obviousness combinations.

It is not true that Pure "has been attempting to meet and confer with EMC … for five months" regarding the number of asserted claims. To the contrary, after the parties reached an impasse in May 2015 and scheduled a court hearing on the issue, Pure's counsel sent us an unsolicited email stating that "we think it makes more sense to wait to bring this dispute to the court until after expert discovery is complete." EMC consented to Pure's request to cancel the hearing, after which Pure did not raise the issue again until a short time ago. Even then, Pure initially raised the issue only as a bargaining chip in an effort to get EMC to agree to an expanded number of pages of summary judgment briefing.

You argue that the parties should not have to use summary judgment and *Daubert* briefing

to address claims that may need to be dropped later.  As discussed above, based on the present state of the record, EMC does not expect to drop additional claims, and it cannot be required to do so consistent with due process principles.  And Pure has this issue backwards.  EMC should not be required to drop additional claims now in view of the fact that Pure will presumably seek to eliminate the rest by means of its summary judgment and/or *Daubert* motions.

Finally, EMC objects to Pure's stated plan to raise this issue with the Court using the summary procedure in the Scheduling Order that is made available only for "discovery matter[s]" and "dispute[s] relating to a protective order."  Neither label applies to the present dispute over the number of asserted claims.  You have stated that "[t]he Scheduling Order in this case does not impose any minimum notice period" for such a motion, but the Scheduling Order does not address such motions one way or the other.  Rather, such motions are governed by the Local Rules, which give the responding party 14 days to respond.  *See* Local Rule 7.1.2.  If Pure intends to present this issue to the Court, it should follow the applicable rules rather than over-burdening the Court with yet another issue to be addressed at the October 2 hearing on short notice and with minimal briefing.

- Matt

Matt Poppe
Partner, Intellectual Property Litigation
**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7431 - direct dial
(650) 614-7401 - facsimile
mpoppe@orrick.com

---

**From:** Matthew Werdegar [mailto:MWerdegar@kvn.com]
**Sent:** Friday, September 25, 2015 12:54 PM
**To:** Poppe, Matthew
**Cc:** EMC/Pure Storage OHS Only; Rosenberg, Stuart M.; Josh Krevitt; Paul Torchia; Wallace, Brooke Myers; John Shaw; David Fry; PURE-KVN
**Subject:** RE: EMC v. Pure Storage

Matt,

In response to the questions posed in your email, below:

(1)  If EMC will agree to limit itself to no more than 16 asserted claims total, and no more than five for any given patent, as contemplated by the Federal Circuit Advisory Council Model Order and the guidance provided by the Court at the Markman hearing, Pure Storage will similarly limit itself to the number of prior art references contemplated by the Model Order; i.e., no more than 20 total anticipation and/or obviousness references, and no more than six for any given patent.  Additionally, although the Model Order does not impose any limit on obviousness combinations, as a further good faith effort at compromise, Pure Storage will agree to limit itself to no more than four obviousness combinations per patent, based upon the selected prior art references.  Although the Model Order contemplates a defendant

having fourteen days to make its election of prior art, we are prepared to provide EMC with our election of prior art within three business days of receiving EMC's election of asserted claims.

(2) Pure Storage believes that the election of claims and prior art should be governed by the same terms and conditions previously imposed by the Court.  *See* Dkt. No. 66 ("Upon a showing of diligence, and with due consideration for prejudice, EMC may seek to modify this order for good cause shown.  Any request to add unasserted claims as asserted claims must specifically show why such an addition is warranted."); *see also Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902-903 (Fed. Cir. 2011); *In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303, 1309-12 (Fed. Cir. 2011); *Masimo Corp. v. Philips Electronics N. Am. Corp.*, 918 F. Supp. 2d 277, 282-86 (D. Del. 2013).

(3) Pure Storage has been attempting to meet and confer with EMC regarding reducing the number of asserted claims to a manageable number for five months, yet EMC has persistently declined voluntarily to agree to do so, or even to say whether it will ever agree to do so.  This issue can come as no surprise.  Moreover, we re-raised the issue in plenty of time (9 days prior to the conference) for the parties to confer once again and to address the issue in their letter briefs (EMC's responsive letter is not due until next Thursday).  The Scheduling Order in this case does not impose any minimum notice period.

Regards,
Matt

---

**Matthew Werdegar**
Attorney at Law

415 676 2248 direct  |  vCard  |  mwerdegar@kvn.com
633 Battery Street, San Francisco, CA 94111-1809  |  415 391 5400 main  |  kvn.com

---

**From:** Poppe, Matthew [mailto:mpoppe@orrick.com]
**Sent:** Friday, September 25, 2015 9:56 AM
**To:** Matthew Werdegar
**Cc:** EMC/Pure Storage OHS Only; Rosenberg, Stuart M.; Josh Krevitt; Paul Torchia; Wallace, Brooke Myers; John Shaw; David Fry; PURE-KVN
**Subject:** RE: EMC v. Pure Storage

Matt,

We disagree that the patents at issue in this case involve "distinct technology areas" or that the current number of patent claims cannot be tried within the scheduled time period. Nevertheless, so that we understand and can fully consider Pure Storage's position, please clarify the following:

(1) Does Pure Storage contemplate dropping prior art references and/or obviousness combinations?  If so, how many and when?

(2) Does Pure Storage contend that EMC must drop claims with prejudice, or can they be dropped without prejudice?  If the former, what legal authority does Pure Storage rely upon?

(3) In Pure Storage's view, what procedure would permit it to raise this issue with the Court on less than a week's notice at the October 2 discovery conference?

- Matt

Matt Poppe
Partner, Intellectual Property Litigation
**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7431 - direct dial
(650) 614-7401 - facsimile
mpoppe@orrick.com

---

**From:** Matthew Werdegar [mailto:MWerdegar@kvn.com]
**Sent:** Wednesday, September 23, 2015 5:51 PM
**To:** Poppe, Matthew
**Cc:** EMC/Pure Storage OHS Only; Rosenberg, Stuart M.; Josh Krevitt; Paul Torchia; Wallace, Brooke Myers; John Shaw; David Fry; PURE-KVN
**Subject:** EMC v. Pure Storage

Matt,

I write once again to meet and confer concerning the number of claims EMC is asserting in this case.  Although claim construction is long completed and fact and expert discovery are closed, EMC is continuing to assert 24 claims across four patents (three of which are entirely unrelated) spanning three distinct technology areas.  As you should appreciate, this is far more than feasibly can be addressed in the scheduled five-day jury trial.  We raised this issue with your colleague Vann Pearce last spring, and I raised it with you again recently in the context of summary judgment briefing.  On both occasions, EMC refused to agree to further cut the number of asserted claims and declined to say if or when it ever would agree to do so.  At this point, with summary judgment briefs due in less than two weeks, we believe it is necessary to reach resolution of this issue.  There is simply no point in forcing the parties to brief and argue and the Court to address claims that ultimately will have to be dropped from the case.  Therefore, consistent with the clear guidance provided by the Court at the Markman hearing, we hereby request that EMC reduce the number of claims it is asserting to no more than 16 and that it do so by no later than Thursday, October 1st, so that the parties can account for the reduction in their summary judgment and Daubert briefing.  Please let me know by this Friday, September 25, whether EMC agrees to this proposal and, if not, why not.  If we cannot reach a resolution by early next week, we intend to raise this issue with the Court at the upcoming October 2 hearing.

Regards,
Matt

---

**Matthew Werdegar**
Attorney at Law

415 676 2248 direct   |   vCard   |   mwerdegar@kvn.com
633 Battery Street, San Francisco, CA 94111-1809   |   415 391 5400 main   |   kvn.com

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

# Exhibit E

REDACTED IN ITS ENTIRETY

# Exhibit F

REDACTED IN ITS ENTIRETY

# Exhibit G

REDACTED IN ITS ENTIRETY

# Exhibit H

REDACTED IN ITS ENTIRETY

# Exhibit I

REDACTED IN ITS ENTIRETY

# Exhibit J

REDACTED IN ITS ENTIRETY

# Exhibit K

REDACTED IN ITS ENTIRETY