IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMC CORPORATION, | ) | |
| EMC INTERNATIONAL COMPANY, | ) | |
| and EMC INFORMATION SYSTEMS | ) | |
| INTERNATIONAL, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 13-1985 (RGA) |
| | ) | |
| v. | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| PURE STORAGE, INC., | ) | |
| | ) | VOLUME 1 OF 3 |
| Defendant. | ) | |

## JOINT PROPOSED FINAL PRETRIAL ORDER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for Plaintiffs EMC Corporation, EMC International Company, and EMC Information Systems International*

OF COUNSEL:

Josh A. Krevitt
Paul E. Torchia
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2490

SHAW KELLER LLP
John W. Shaw (#3362)
David M. Fry (#5486)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com

*Attorneys for Defendant Pure Storage, Inc.*

OF COUNSEL:

Robert A. Van Nest
Matthew Werdegar
R. Adam Lauridsen
Corey Johanningmeier
David W. Rizk
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Chris R. Ottenweller
Matthew H. Poppe
Jesse Y. Cheng
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Los Angeles, CA  90017
(213) 629-2020

T. Vann Pearce, Jr.
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8200

Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA  01748

*Attorneys for Plaintiffs EMC Corporation, EMC International Company, and EMC Information Systems International*

Joseph FitzGerald
PURE STORAGE, INC.
650 Castro Street, Suite 400
Mountain View, CA  94041
(650) 318-6589

*Attorneys for Defendant Pure Storage, Inc.*

Original Filing Date:  February 9, 2016


Redacted Filing Date:  February 22, 2016

# TABLE OF CONTENTS

Page

I.  NATURE OF THE CASE AND THE PLEADINGS ......................................................1

    A.  EMC's Statement Regarding the Scope of the Issues to be Tried: ...................... 3

    B.  Pure's Statements Regarding the Scope of the Trial ........................................... 4

II.  JURISDICTION ..............................................................................................................6

III.  JOINT STATEMENT OF ADMITTED FACTS..........................................................6

    A.  The Parties ........................................................................................................ 6

    B.  Asserted Patents ............................................................................................... 7

    C.  Accused Products ............................................................................................. 7

IV.  STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED................................8

V.  STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED ...............8

VI.  THE PARTIES' TRIAL EXHIBITS ..............................................................................9

    1.  Stipulations Concerning Trial Exhibits .................................................. 9

    2.  Procedures for the Disclosure of Trial Exhibits and Demonstrative
        Exhibits ................................................................................................ 11

VII.  TRIAL WITNESSES ...................................................................................................12

    A.  List of Witnesses to be Called ....................................................................... 12

    B.  Testimony by Deposition ............................................................................... 13

VIII.  PARTIES' BRIEF STATEMENT OF INTENDED PROOFS.....................................15

    A.  EMC's Statement ........................................................................................... 15

    B.  Pure's Statement ............................................................................................ 19

IX.  AMENDMENT TO PLEADINGS................................................................................24

X.  MOTIONS *IN LIMINE*................................................................................................24

XI.  CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS .............................25

XII.  OTHER MATTERS ......................................................................................................25

    A.  Jury Trial ....................................................................................................... 25

    B.  Witness Sequestration ................................................................................... 26

i

TABLE OF CONTENTS *(continued)*

Page

C.      Length of Trial .................................................................................................. 26

D.      Set-up of Electronic and Computer Devices ...................................................... 27

E.      Federal Judicial Center Introduction to the Patent System Video ..................... 27

F.      Handling of Confidential Information at Trial ................................................... 27

## I.     NATURE OF THE CASE AND THE PLEADINGS

1.      This is an action for patent infringement.  On November 26, 2013, Plaintiff EMC Corporation ("EMC") filed its Complaint for Injunctive Relief and Damages ("Complaint").  In its Complaint, EMC alleged that defendant Pure Storage, Inc. ("Pure") infringes United States Patent Nos. 6,904,556 (the "'556 Patent"), 7,373,464 (the "'464 Patent"), 7,434,015 (the "'015 Patent"), and 8,375,187 (the "'187 Patent") (collectively, the "Asserted Patents").[1]  EMC contends that these patents relate to technology for optimizing the performance of enterprise storage systems.  EMC sought judgment of infringement, injunctive relief, and monetary damages.

2.      On January 17, 2014, Pure filed its Answer (D.I. 8) to EMC's Complaint, in which it denied infringement of the Asserted Patents and asserted defenses of invalidity under 35 U.S.C. §§ 101, 102, 103, and/or 112, acquiescence, estoppel, waiver, laches, unclean hands,[2] and failure to state a claim.

3.      On June 6, 2014, EMC filed its Amended Complaint for Injunctive Relief and Damages (D.I. 37), in which EMC joined EMC International Company ("EIC") and EMC Information Systems International ("EISI") as co-Plaintiffs.  EMC[3] also provided more detailed allegations of induced and contributory infringement of the Asserted Patents.

---

[1]  EMC also alleged infringement of United States Patent No. 6,915,475 (the "'475 Patent"), but has since withdrawn the '475 Patent from this litigation.
[2]  Pure's unclean hands defense is applicable only to the withdrawn '475 Patent.
[3]  Where the context requires, "EMC" refers collectively to co-Plaintiffs EMC, EIC and EISI.

4.      On June 13, 2014, Pure filed its Answer (D.I. 38) to the Amended Complaint, in which Pure again denied infringement of the Asserted Patents and reasserted the defenses set forth in its original Answer.[4]

5.      On August 4, 2014, Pure filed its Amended Answer to the Amended Complaint, in which Pure provided more detailed allegations regarding its laches defense.[5]

6.      Both EMC and Pure demanded a jury trial on all issues triable by a jury.

7.      The Court issued a Memorandum Opinion (D.I. 115) regarding claim construction on January 9, 2015, and a Claim Construction Order (D.I. 121) on January 20, 2015.

8.      EMC moved for summary judgment of infringement of certain claims of the '015 Patent (D.I. 218) and also moved for summary judgment that certain non-infringing alternatives were not available to Pure during the damages period (D.I. 207).  EMC also moved to exclude certain opinions of Pure's technical expert Dr. Plank (D.I. 212) and Pure's damages expert Ms. Stamm (D.I. 207).

9.      Pure moved for summary judgment of non-infringement and invalidity of the '556 Patent, non-infringement of the '464 Patent, invalidity of the '015 Patent, and non-infringement of the '187 Patent (D.I. 198-199).  Pure also moved to exclude certain opinions of EMC's technical expert Mr. Jestice and EMC's damages expert Mr. Napper (D.I. 204-205).

10.     All of the parties' summary judgment and *Daubert* motions are still pending.

11.     In connection with the parties' summary judgment motions, the Court ordered supplemental claim construction briefing relating to certain claim terms in the '015 and '556

_____

[4] In its Answer to the Amended Complaint, Pure also added the defense that the '475 Patent is unenforceable due to inequitable conduct.
[5] In its Amended Answer, Pure also provided more detailed allegations for its unclean hands and inequitable conduct defenses, both of which are applicable only to the withdrawn '475 Patent.

Patents, which the parties filed in December 2015 (D.I. 332-335).   On February 3, 2016, the Court issued a supplemental claim construction order (D.I. 362).

**A.      EMC's Statement Regarding the Scope of the Issues to be Tried:**

12.      As of the date of the submission of this Pretrial Order, EMC is asserting 22 claims across the four Asserted Patents; specifically, EMC is asserting one independent claim and two dependent claims of the '556 Patent, two independent claims and five dependent claims of the '464 Patent, three independent claims and three dependent claims of the '015 Patent, and two independent claims and four dependent claims of the '187 Patent.   EMC intends to reduce the number of asserted claims after the Court enters its orders on the pending motions.   As EMC has discussed with Pure, depending on the nature of the Court's orders, EMC will consider Pure's request to reduce the number of patents currently scheduled for trial, on the condition that EMC can assert any remaining patents in a subsequent trial, without prejudice to any of EMC's rights.

13.      EMC has requested that Pure stipulate to various incontrovertible facts in order to reasonably narrow the issues for trial.   For example, EMC asked Pure stipulate to the fact that Pure makes and sells the accused products in the United States.   Pure has categorically refused to stipulate to this fact, and many other similar facts, not because Pure disputes them, but because, as Pure stated at the meet-and-confer, Pure wants to "put EMC to its proof."   Pure's refusal to make reasonable stipulations, even after EMC offered to do the same on issues where Pure bears the burden of proof, will frustrate EMC's ability to present its case in the time allotted by the Court, in a manner inconsistent with EMC's due process rights.

14.      Pure contends below that there is a dispute over whether EMC Corporation has standing to assert the '464 and '015 patents.   But this is *not* within the scope of the issues to be tried to the jury – standing is a matter of law for the court, not a jury issue.   To the extent that Pure believed that standing was a genuine issue in dispute, Pure should have raised the issue long

3

ago, such as in a motion to dismiss EMC Corporation's claims under Rule 12(b)(1). Pure has not

done so and has not otherwise moved the Court on this issue. As explained more fully in EMC's

attached statement of issues of law in dispute, standing is a legal issue, and any subsidiary factual

findings necessary to determine standing are within the province of the Court, not the jury. ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████ (Pure does not dispute

that EMC Corporation is the owner of the '556 and '187 patents and thus has standing to assert

those patents). As shown below in paragraph 17, Pure seeks to prejudice the jury with irrelevant

information about the countries in which EMC entities are incorporated and their alleged

"preferential tax treatment," on the theory that these facts allegedly relate to standing. The Court

should not allow Pure to use standing as a basis to unfairly prejudice the jury, and should decide

standing as a matter of law, separately from the trial, to the extent Pure properly raises a dispute

about it.

**B.     Pure's Statement Regarding the Scope of the Issues to be Tried:**

15.     Pure previously has requested that the Court order EMC to reduce its number of

asserted claims. *See* D.I. 191. At the October 2, 2015 discovery hearing addressing Pure's

request, the Court deferred ruling on the issue but noted: "I'm certainly not saying, you know,

that we're going to try a four-patent, 22-claim case. You know, at some, it has to be gotten down

to the size that we can actually try." D.I. 196 (Oct. 2, 2015 Hr. Tr.) at 73:9-12. It continues to be

Pure's position that it is neither reasonable feasible nor consistent with Pure's due process rights

to attempt to try four patents and twenty-two claims within the time currently allotted for trial.

Accordingly, should the Court's rulings on the parties' pending motions for summary judgment

not significantly reduce the scope of EMC's case, EMC should be required to reduce both the

number of patents and number of claims it is asserting for purposes of trial.  The four patents EMC is continuing to assert relate to three distinct technology areas (inline deduplication, RAID, and input/out scheduling) that will require separate explanation to the jury, separate analysis, and for which both sides have designated separate technical expert witnesses.

16.     Pure already has agreed to stipulate to a number of facts in an effort to streamline the parties' trial presentations, has offered to stipulate to others with certain edits for accuracy, but EMC rejected Pure's offer, and will continue to negotiate in good faith with EMC regarding additional facts to which the parties potentially could stipulate.  However, most of the facts to which EMC has requested Pure stipulate to date relate to disputed issues concerning the design and operation of the Accused Products, are vague and/or inaccurate, and would be confusing, misleading, and prejudicial if presented to the jury without the necessary context and explanation.  Pure explained its concerns to EMC during the parties meet and confer, and also indicated that it would be willing to continue to work with EMC on this issue.  But in any event, additional stipulations of fact will not make it feasible to try all of EMC's currently asserted patents and claims in five trial days.

17.     With respect to standing, it is EMC's burden to establish with evidence its standing to sue for infringement and entitlement to recover the specific damages it seeks. ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

Because the assignment of the '464 and '015 patent rights is a matter of contract interpretation, ambiguities in the relevant contract provisions may result in factual issues that must be resolved by the jury.  Pure provides instructions and verdict questions to allow the jury, if necessary, to make such determinations.

## II.       JURISDICTION

18.       This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. §101 *et seq.*, including §§271 and 281-285.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).  No party contests personal or subject matter jurisdiction.

19.       Venue is proper in this judicial district under 28 U. S. Code §§ 1391(b), (c), (d) and 1400(b) because this Court's personal jurisdiction over Defendant Pure is not disputed.  No party contests venue.

## III.      JOINT STATEMENT OF ADMITTED FACTS

### A.       The Parties

20.       Plaintiff EMC is a Massachusetts corporation with its principal executive offices in Hopkinton, Massachusetts.

21.       Plaintiff EIC is an Irish corporation with its principal place of business in Bermuda and is wholly owned subsidiary of EMC.

22.       Plaintiff EISI is an Irish corporation with its principal place of business in Ireland and is wholly owned subsidiary of EMC.

23.       Defendant Pure is a Delaware corporation with its principal place of business in Mountain View, California.

### B.   Asserted Patents

24.     There are four patents at issue in this action:  the '556, '464, '015, and '187 Patents.

25.     The '556 Patent is entitled "Systems and Methods Which Utilize Parity Sets." It issued on June 7, 2005, to inventors John K. Walton, Michael Bermingham, and Christopher S. MacLellan.  EMC Corporation owns by assignment the entire right, title, and interest in and to the '556 Patent.

26.     The effective filing date of the '556 Patent is August 9, 2001.

27.     The '464 Patent is entitled "Efficient Data Storage System."  It issued on May 13, 2008, to inventors Ming Benjamin Zhu, Kai Li, and R. Hugo Patterson.

28.     The '464 Patent claims priority to U.S. Patent No. 6,928,528, and gains the benefit of its filing date of December 20, 2002.

29.     The '015 Patent is entitled "Efficient Data Storage System."  It issued on October 7, 2008, to inventors Ming Benjamin Zhu, Kai Li, and R. Hugo Patterson.

30.     The '015 Patent claims priority to U.S. Patent No. 7,065,619, and gains the benefit of its filing date of December 20, 2002.

31.     The '187 Patent is entitled "I/O Scheduling for Flash Drives."  It issued on February 12, 2013, to inventors Kendell Chilton and Sachin More.  EMC Corporation owns by assignment the entire right, title, and interest in and to the '187 Patent.

32.     The effective filing date of the '187 Patent is September 27, 2007.

### C.   Accused Products

33.     Pure sells data storage products named FlashArray.  The products accused of infringement are the FA-300 and FA-400 series of FlashArray products (collectively, the "Accused Products").

34.     The Accused Products are "all flash" data storage products.

35.      Pure obtained notice of the Asserted Patents, and of EMC's allegation that Pure is infringing the Asserted Patents, as of the filing of the Complaint on November 26, 2013.

## IV.     STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED

36.     Plaintiff EMC's statement of facts that remain to be litigated is attached as **Exhibit 1**.

37.     Defendant Pure's statement of facts that remain to be litigated is attached as **Exhibit 2**.

38.     The parties reserve the right to modify or supplement their statements of facts that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## V.     STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

39.     Plaintiff EMC's statement of issues of law that remain to be litigated is attached as **Exhibit 3**.  EMC received Pure's statement of law late on the evening before this Pretrial Order was due, with extensive pages of new argument and case law.   While EMC has endeavored to address the issues raised by Pure in that filing, EMC reserves the right to amend or supplement its statement.

40.     Defendant Pure's statement of issues of law that remain to be litigated is attached as **Exhibit 4**.  EMC provided Pure with the final version of its statement of issues of law, which includes substantial substantive changes, less than 45 minutes before the filing deadline for this Joint Proposed Pretrial Order.  Consequently, Pure reserves the right to supplement or amend its statement once it has had an opportunity to review EMC's final statement.

41.     The parties reserve the right to modify or supplement their statements of issues of law that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## VI.     THE PARTIES' TRIAL EXHIBITS

42.     Plaintiff EMC's list of exhibits it may offer at trial, including Pure's objections, is attached as **Exhibit 5**.

43.     Defendant Pure's list of exhibits it may offer at trial, including EMC's objections, is attached as **Exhibit 6**.

### 1.     Stipulations Concerning Trial Exhibits

44.     Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections.  The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit should the opposing party attempt to offer it into evidence.

45.     Each exhibit list contains all of the exhibits that a party intends to present at trial other than (1) exhibits used solely for impeachment and (2) exhibits necessary to account for information learned in discovery completed after the submission of this Pretrial Order, provided that the need for such exhibits could not reasonably have been anticipated earlier.[6]  With the aforementioned exceptions, exhibits not listed on a party's exhibit list or on the opposing party's exhibit list will not be admitted into evidence unless good cause is shown.

---

[6] Demonstrative exhibits need not be listed on the parties' exhibit lists, and procedures for the exchange of demonstrative exhibits are addressed separately.

46.     Neither party will remove a document from its exhibit list without agreement from the other party, unless it provides the other party the opportunity to add the document to its exhibit list.

47.     Any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document or any other listed document.

48.     The parties will meet and confer regarding replacing any poor print or digital quality copies of exhibits with substantively identical improved or higher quality or color copies.

49.     Legible copies of exhibits may be offered into evidence in lieu of originals, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the copy. Electronic versions of document exhibits in their native format, such as spreadsheets or presentations, may be offered into evidence in lieu of paper or PDF versions.  The parties will exchange replacement versions and/or native versions of exhibits prior to use in trial.

50.     Legible copies of United States patents and patent applications, including the Asserted Patents, and their file histories may be offered into evidence in lieu of certified copies thereof, subject to all other objections that might be made to admissibility of certified copies.

51.     Demonstrative exhibits do not need to be included on the parties' respective trial exhibit lists.  For purposes of this Pretrial Order, the term "demonstrative exhibits" does not include (1) exhibits created in the courtroom during testimony or opening at trial, (2) the enlargement, highlighting, or ballooning of a trial exhibit (or parts of a trial exhibit) or a transcript of testimony.

52.     Plaintiff EMC's trial exhibits will be identified with PTX numbers, starting with PTX 0001. EMC's demonstrative trial exhibits will be identified with PDX, starting with PDX 001.

53.     Defendant Pure's trial exhibits will be identified with DTX numbers, starting with DTX 0001. Pure's demonstrative trial exhibits will be identified with DDX, starting with DDX 501.

54.     The parties will meet and confer in a further effort to refine and shorten their exhibit lists and to resolve objections without the Court's intervention.

**2.      Procedures for the Disclosure of Trial Exhibits and Demonstrative Exhibits [Disputed in part]**

55.     A party will provide, together with its identification of a witness to be called (as provided in section VII below) a list of trial exhibits to be used in connection with a direct examination of that witness by 7:00 p.m. two calendar days before their intended use (by way of example, for a witness that a party intends to call at any time on Tuesday, March 8, 2016, the party shall provide its list of direct examination exhibits by 7:00 p.m. on Sunday, March 6, 2016).  Any objections by the opposing party will be provided no later than 7:00 p.m. the following day.  The parties shall meet and confer prior to going into Court to resolve any objections to the exhibits.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand.  The parties also agree to provide opposing counsel with one set of all exhibits to be used in direct and/or cross examination at the time of that examination.

56.     A party shall provide a color PDF or PowerPoint copy of demonstrative exhibits to be used in connection with a direct examination by 7:00 p.m. one calendar day before their intended use (by way of example, for a witness that a party intends to call at any time on

Tuesday, March 8, 2016, the party shall provide its demonstrative exhibits by 7:00 p.m. on Monday, March 7, 2016).  Objections to any such demonstrative exhibits shall be made by 9:00 p.m. that same day.  The parties will meet and confer on any objections by 10:00 p.m. that same day and will present any unresolved issued to the Court before the proposed use of the disputed demonstrative exhibit.

57.     With respect to opening statements, the parties shall identify any evidence (*e.g.*, trial exhibits or designated deposition testimony) they intend to use on the calendar day before opening statements.  The parties shall make objections, if any, to the evidence disclosed within two hours after the disclosures are made and shall promptly meet and confer on any such objections.  Pure proposes that the parties make their disclosures by 4:00 p.m., while EMC proposes that the parties make their disclosures by 6:00 p.m.  Additionally, Pure has proposed that the parties shall also provide copies of any demonstrative exhibits as color PDF or PowerPoint files that they intend to use as part of these disclosures.  EMC is considering Pure's proposal.

## VII.   TRIAL WITNESSES

### A.     List of Witnesses to be Called  [Disputed in part]

58.     The witnesses that EMC may call in person or by deposition at trial, together with Pure's objections, are attached as **Exhibit 7**.

59.     The witnesses that Pure may call in person or by deposition at trial, together with EMC's objections, are attached as **Exhibit 8**.

60.     Any witness not listed on the parties' witnesses lists (Exhibits 7-8) will be precluded from testifying absent good cause shown (provided, however, that either party may supplement its witness list to account for information learned in discovery served after the submission of this Pretrial Order, if the need for any additional witnesses could not reasonably

have been anticipated earlier), except that each party reserves the right to call rebuttal witnesses to the extent the offering party could not reasonably have anticipated requiring testimony from such witnesses at the time of submission of this Pretrial Order, on reasonable notice to the opposing party.  No party shall be required to present testimony from any witness on its list of witnesses.  The listing of a witness by a party on its witness list does not waive any objections to that witness should the opposing party attempt to call that witness to testify, either live or by deposition.

61.     The parties will identify specific witnesses that they intend to call on direct, and the order in which they will be called, by 7:00 p.m. two calendar days before the direct examination is expected to take place (by way of example, for the witnesses a that party intends to call on Tuesday, March 8, 2016, the party shall identify the witnesses and the order in which they will be called by 7:00 p.m. on Sunday, March 6, 2016).  Each party shall identify which witnesses will be called live and which will be offered by deposition.  Any objections by the opposing party will be provided no later than 7:00 p.m. the following day.  The parties shall meet and confer prior to going into Court to resolve any objections regarding witnesses.  In addition, Pure requests that if a party intends to call as a live witness an officer, director or employee of the opposing party, the party shall provide the opposing party with twenty-one (21) calendar days' notice in order to permit the opposing party to raise any objections and/or to arrange for the witness's presence at trial.  EMC opposes Pure's request.

### B.     Testimony by Deposition

62.     EMC's deposition designations (including Pure's objections and counter-designations and EMC's objections thereto) are attached as **Exhibit 9**.

63.     Pure's deposition designations (including EMC's objections and counter-designations and Pure's objections thereto) are attached as **Exhibit 10**.

64.     The parties may not add new deposition designations or counter-designations, or provide new objections to listed designations or counter-designations, except for good cause shown or by agreement of the parties.

65.     Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purpose of impeachment, if otherwise competent for that purpose.

66.     The party intending to offer a witness by deposition shall provide the other party with a list of final deposition designations (by page and line number) it intends to introduce by 7:00pm 3 calendar days before the deposition testimony is expected to be read or played in Court.  The other party shall identify any objections and counter-designations to the designated testimony by 6:00 pm the following day (*i.e.*, two calendar days before the deposition testimony is expected to read or played in Court).  The offering party shall thereafter provide any objections to the counter-designations and any counter-counter-designations no later than 8:00pm the same day.  The parties shall meet and confer as to any objections no later than 10:00pm the same day.  Any unresolved objections must be raised with the Court by the objecting party no later than one calendar day before the day on which the witness's testimony will be offered.  If the deposition testimony is going to be played by video, the party offering the deposition testimony in its case-in-chief shall provide a copy of the video to be played, in the form in which it is to be played (including any editing or synching), as well as a clip report of the designated testimony, to the opposing party by 11:00 p.m. one calendar day before the testimony is to be played.

67.     If a party chooses to read a witness's designations at trial, all counter-designations will also be read (subject to any objections).  If a party chooses to play a video of a witness's

designations at trial, all counter-designations will also be played in video (subject to any objections).

68.     All irrelevant or redundant material such as attorney objections and colloquy between counsel will be removed when the deposition is read or played at trial.

69.     Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations.  The parties shall promptly meet and confer concerning the amount of time attributable to each party's designations and counter-designations and shall inform the Court of the allocation of the time.

## VIII.   PARTIES' BRIEF STATEMENT OF INTENDED PROOFS

### A.     EMC's Statement

70.     EMC's statement is limited to its expected proof with regard to its infringement and damages claims, and does not address the proof that it may choose to present in rebuttal to the defenses that Pure may present in its case-in-chief or rebuttal case at trial.   Furthermore, EMC's statement is based upon the current status of the case and the Court's current rulings. EMC reserves the right to revise this statement in light of any further decisions or orders of the Court or any new issues raised by Pure.

71.     .

72.     EMC intends to establish through its presentation of evidence that Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) of the Accused Product directly infringe Claims 6, 7, and 16 of the '556 Patent.

73.     EMC intends to establish through its presentation of evidence that Pure's conduct induced the infringement of Claims 6, 7, and 16 of the '556 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), and/or (f).

74.     EMC intends to establish through its presentation of evidence that Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) of the Accused Product directly infringe Claims 2, 3, 14, 19-21, and 32 of the '464 Patent.

75.     EMC intends to establish through its presentation of evidence that Pure's conduct induced the infringement of Claims 2, 3, 14, 19-21, and 32 of the '464 Patent by another in violation of §§ 271(b), (c), and/or (f).

76.     EMC intends to establish through its presentation of evidence that Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) of the Accused Product directly infringe Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent.

77.     EMC intends to establish through its presentation of evidence that Pure's conduct induced the infringement of Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), and/or (f).

78.     EMC intends to establish through its presentation of evidence that Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) of the Accused Product directly infringe Claims 1, 2, 4-6, and 8 of the '187 Patent.

79.     EMC intends to establish through its presentation of evidence that Pure's conduct induced the infringement of Claims 1, 2, 4-6, and 8 of the '187 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), and/or (f).

80.     EMC intends to establish through its presentation of evidence that it is entitled to a reasonable royalty due to Pure's infringement of the Asserted Patents.

81.     EMC intends to establish through its presentation of evidence that it is entitled to lost profits due to Pure's infringement of the Asserted Patents.

82.     In the event of a finding of infringement, EMC intends to seek a permanent injunction against any infringement of the Asserted Patents by Pure, its officers, agents, attorneys, and employees, and those acting in privity or contract with them, precluding them from manufacturing, using, selling, and/or offering to sell in the United States, and/or importing into the United States the accused Flash Array products and any products that are no more than colorably different from the accused FlashArray products.

83.     In the event of a finding of infringement, EMC intends to seek an order requiring Pure Storage to destroy all infringing products in inventory, including but not limited to its FlashArray products wherever they may be stored or maintained, and to recall from the marketplace all such infringing products, including but not limited to any infringing products in the possession or control of dealers, distributors, or customers.

84.     In the event of a finding of infringement, EMC intends to seek an equitable accounting of any recoverable damages not captured by the verdict, including, but not limited to (1) any damages for infringement between the period last addressed by the damages experts and the date of the verdict and (2) any damages for infringement between the date of the verdict and the date of entry of judgment, the effective date of an order permanently enjoining Pure from continued infringement, and/or Pure's cessation of infringement.

85.     In the event of a finding of infringement and award of damages, EMC intends to seek any and all recoverable pre-judgment and post-judgment interest.

86.     In the event of a finding of infringement, EMC intends to seek an award of attorneys' fees and costs in this action, including on the basis that this case is an exceptional case under 35 U.S.C. § 285.

87.     In the event of a finding of infringement, EMC intends to seek an award of enhanced damages, including on the basis that this case is an exceptional case under 35 U.S.C. § 285.

88.     While not an issue to the tried to the jury, to the extent that Pure disputes EMC Corporation's standing, EMC will establish to the Court that EMC Corporation has standing to assert all four patents-in-suit, with the right to sue for damages based on past, present, and future infringement.  Pure has stipulated that EMC Corporation is the owner by assignment of the '187 Patent and the '556 Patent, and the relevant assignment agreements demonstrate unambiguously that EMC Corporation owns the '464 and '015 patents and has not assigned away "all substantial rights."  Therefore, as a matter of law EMC Corporation has standing.  Pure has stated below, erroneously, that EMC lacks "standing to recover damages for lost profits" under the '464 and '015 patents.  But because EMC Corporation has standing to assert the '464 and '015 patents, EMC Corporation is entitled to seek all damages that it can prove under the law, including its lost profits.

89.     Pure states below that it is "amenable to resolving these standing disputes prior to trial," yet Pure also suggests that it will present the issue of standing—which is legal one normally presented early in a case on a motion to dismiss—to the jury.  EMC submits that Pure should have raised this issue with the Court long ago, and at a minimum in Pure's motions for summary judgment.  Instead, Pure has submitted, without any authority or support, both jury instructions and verdict form questions purporting to go to issues of standing.  In these submissions, Pure suggests that the jury should interpret patent license and assignment agreements and make determinations as to whether EMC has standing to sue.  These issues are for the Court to decide, and it would be inappropriate to present them to the jury.  The relevant

assignment agreements are unambiguous and thus their interpretation is purely a matter of law. And even if the contracts were ambiguous, any fact-finding necessary to resolve ambiguities and determine standing would still be within the province of the Court, not the jury, as explained in EMC's statement of issues of law. Therefore EMC proposes that any evidence or argument relating to the issue of standing be presented outside of the presence of the jury, and that all references to issues of standing be excised from the materials submitted to the jury. If, after the agreements in question are admitted, Pure wishes to raise an issue of standing, Pure should file a Rule 12(b)(1) motion to dismiss, and the parties will submit briefing to the Court.[7]

### B.    Pure's Statement

90.    Pure's statement is limited to its expected proof with regard to EMC's infringement and damages claims and Pure's asserted affirmative defenses, and does not address the proof that EMC may present, but has not yet identified, in its rebuttal case at trial. Furthermore, EMC's statement is based upon the current status of the case and the Court's rulings. Pure reserves the right to revise this statement in light of any further decisions or orders of the Court, information learned through discovery and expert analysis that has not yet been completed, and/or any new issues raised by EMC. Additionally, because EMC provided Pure with substantive amendments to its Statement one hour and fifteen minutes before the filing deadline for this Joint Proposed Pretrial Order, Pure has not had an opportunity to address EMC's final Statement. Accordingly, Pure reserves the right to supplement and amend this Statement once it has had the opportunity to fully evaluate EMC's final Statement.

---

[7] EMC received Pure's edits to this Pretrial Order late on the evening before the Order was due, with extensive pages of new argument and case law. While EMC has endeavored to address the issues raised by Pure in that filing, EMC reserves the right to amend or supplement its statement.

91.     Pure intends to establish through its presentation of evidence that Pure's manufacture, sale, offer sale, and/or use (or control of use by others) of the Accused Product does not directly infringe any asserted claim of the '556 Patent, either literally or under the doctrine of equivalents.

92.     Pure intends to establish through its presentation of evidence that Pure's conduct has not induced the infringement of any asserted claim of the '556 Patent.

93.     Pure intends to establish through its presentation of evidence that Pure's manufacture, sale, offer sale, and/or use (or control of use by others) of the Accused Product does not directly infringe any asserted claim of the '464 Patent, either literally or under the doctrine of equivalents.

94.     Pure intends to establish through its presentation of evidence that Pure's conduct has not induced the infringement of any asserted claim of the '464 Patent.

95.     Pure intends to establish through its presentation of evidence that Pure's manufacture, sale, offer sale, and/or use (or control of use by others) of the Accused Product does not directly infringe any asserted claim of the '015 Patent, either literally or under the doctrine of equivalents.

96.     Pure intends to establish through its presentation of evidence that Pure's conduct has not induced the infringement of any asserted claim of the '015 Patent.

97.     Pure intends to establish through its presentation of evidence that Pure's manufacture, sale, offer sale, and/or use (or control of use by others) of the Accused Product does not directly infringe any asserted claim of the '187 Patent, either literally or under the doctrine of equivalents.

98.     Pure intends to establish through its presentation of evidence that Pure's conduct has not induced the infringement of any asserted claim of the '187 Patent.

99.     Pure intends to establish through its presentation of evidence that the asserted claims of the '556 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

100.    Pure intends to establish through its presentation of the evidence that the asserted claims of the '556 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

101.    Pure intends to establish through its presentation of evidence that the asserted claims of the '464 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

102.    Pure intends to establish through its presentation of the evidence that the asserted claims of the '464 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

103.    Pure intends to establish through its presentation of evidence that the asserted claims of the '015 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

104.    Pure intends to establish through its presentation of the evidence that the asserted claims of the '015 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

105.    Pure intends to establish through its presentation of the evidence that the '015 Patent is invalid for lack of enablement under 35 U.S.C. § 112.

106.    Pure intends to establish through its presentation of the evidence that the '015 Patent is invalid for lack of written description under 35 U.S.C. § 112.

107.    Pure intends to establish through its presentation of evidence that the '187 Patent is invalid as obvious in light of the prior art under 35 U.S.C. § 103.

108.    Pure intends to establish through its presentation of evidence that EMC Corporation, EIC and EISI are not entitled to any royalties from Pure.

109.    In the event that Pure is found to infringe one or more valid claims of the Asserted Patents and EMC Corporation, EIC or EISI is found to be entitled to a reasonably royalty, Pure intends to establish through its presentation of evidence the reasonable royalty that would be due to EMC Corporation, EIC or EISI.

110.    In the event that Pure is found to infringe one or more valid claims of the Asserted Patents, Pure intends to establish through its presentation of evidence that EMC Corporation, EIC and EISI do not have standing to recover damages for lost profits.

111.    EMC seeks to skip over two prerequisite steps to any patent infringement action: (1) establishing which specific plaintiff owns the substantial rights to the patents at issue and (2) establishing that the plaintiff holding the substantial rights is entitled to claim the specific damages sought.   Here, both issues are disputed with respect to the '464 and '015 patents.

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████ Consequently, Pure intends

to establish through its presentation of evidence that no EMC entity is entitled to recover lost profits with respect to the '464 and '015 Patents.

112.     While EMC contests Pure's standing arguments, EMC provides no support for its claim that it was Pure's burden to resolve issues related to EMC's standing prior to trial. EMC could have moved for summary judgment on this issue, but did not. And Pure is under no obligation to stipulate to facts that are not supported by the record or to rely on contract terms that, by admission of EMC's own Rule 30(b)(6) witness, are ambiguous. Pure is amendable to resolving these standing disputes prior to trial, if possible. But it is EMC's burden to establish its own standing, and its Rule 30(b)(6) witness on this issue concedes that the license provisions on which EMC now relies are ambiguous. Thus, extrinsic evidence may be necessary to resolve the dispute, and could involve questions for the jury. In the event that the Court does not resolve the standing disputes, Pure proposes instructions and verdict questions that will allow the jury to decide them. And Pure opposes EMC's proposed instructions which inaccurately treat these issues as undisputed and/or already resolved.

113.     In the event that Pure is found to infringe one or more valid claims of the Asserted Patents, Pure intends to establish through its presentation of evidence that EMC, EIC and EISI are not entitled to any damages in the form of lost profits from Pure Storage.

114.     In the event that Pure is found to infringe one or more valid claims of the Asserted Patents and EMC, EIC or EISI is further found to be entitled to lost profits damages, Pure intends to establish through its presentation of evidence the appropriate amount of lost profits that should be awarded.

115.    In the event that Pure is found to infringe one or more valid claims of the Asserted Patents, Pure intends to establish that EMC is not entitled to permanent injunctive relief or an order requiring Pure to recall or destroy any infringing products.

116.    In the event Pure is found to infringe one or more valid claims of the Asserted Patents, Pure intends to request that any equitable accounting sought by EMC is limited to only to those sales of the Accused Products, if any, which are which are substantially related to the adjudicated direct infringement in light of the existing record.

117.    In the event Pure is found to infringe one or more valid claims of the Asserted Patents, Pure intends to oppose any request by EMC for pre-judgment and post-judgment interest that is contrary to or exceeds what is permitted by law.

118.    Pure intends to seek an award of attorneys' fees and costs in this action, including on the basis that this case is an exceptional case under 35 U.S.C. § 285.

119.    [Pure will add material in response to any additional material EMC may add to its section]

## IX.    AMENDMENT TO PLEADINGS

120.    Neither party intends to request an amendment to its pleadings at the present time.

## X.    MOTIONS *IN LIMINE*

121.    **Exhibit 11** contains EMC's Motion in Limine No. 1.  **Exhibit 11.1** contains EMC's opening brief; **Exhibit 11.2** contains Pure's opposition brief and attachments thereto; and **Exhibit 11.3** contains EMC's reply.

122.    **Exhibit 12** contains EMC's Motion in Limine No. 2.  **Exhibit 12.1** contains EMC's opening brief and attachments thereto; **Exhibit 12.2** contains Pure's opposition brief and attachments thereto; and **Exhibit 12.3** contains EMC's reply.

123.    **Exhibit 13** contains EMC's Motion in Limine No. 3.   **Exhibit 13.1** contains EMC's opening brief and attachments thereto; **Exhibit 13.2** contains Pure's opposition brief and attachments thereto; and **Exhibit 13.3** contains EMC's reply.

124.    **Exhibit 14** contains Pure's Motion in Limine No. 1.   **Exhibit 14.1** contains Pure's opening brief and attachments thereto; **Exhibit 14.2** contains EMC's opposition brief and attachments thereto; and **Exhibit 14.3** contains Pure's reply and attachments thereto.

125.    **Exhibit 15** contains Pure's Motion in Limine No. 2.   **Exhibit 15.1** contains Pure's opening brief and attachments thereto; **Exhibit 15.2** contains EMC's opposition brief and attachments thereto; and **Exhibit 15.3** contains Pure's reply and attachments thereto.

126.    **Exhibit 16** contains Pure's Motion in Limine No. 3.   **Exhibit 16.1** contains Pure's opening brief and attachments thereto; **Exhibit 16.2** contains EMC's opposition brief and attachments thereto; and **Exhibit 16.3** contains Pure's reply.

## XI.    CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS

127.    The parties certify that they have engaged in a good faith effort to explore the resolution of the litigation by settlement.  A settlement has not yet been reached.  The parties had scheduled a Court-ordered mediation (D.I. 239) with Judge Thynge on February 8, 2016, but after reviewing the parties' statements, Judge Thynge determined that the mediation should be cancelled.  Judge Thynge expressed that she would hold open the possibility of rescheduling the mediation once the Court has ruled on the pending motions for summary judgment and *Daubert* motions.

## XII.    OTHER MATTERS

### A.    Jury Trial

128.    This is a jury trial.  There shall be eight jurors.  The Court will conduct jury selection through the "struck-juror" method.

B.      **Witness Sequestration [Disputed in part]**

129.    Fact witnesses who may be called (or re-called) to testify will not be permitted to attend any trial proceeding (outside of their own examination) at which testimony will be given, until such witness is fully excused, unless agreed to by the parties or ordered by the Court.  For avoidance of doubt, expert witnesses who may be called (or re-called) to testify are permitted to attend all trial proceedings.  The parties may each designate one corporate representative who may attend all trial proceedings, subject to the confidentiality restrictions below, regardless of whether that representative is also a fact witness.  EMC contends that, notwithstanding the foregoing, Bill Clark (in-house counsel at EMC) should be permitted to attend all trial proceedings at any time.  Pure disagrees with EMC's contention.  Mr. Clark served as EMC's Rule 30(b)(6) designee with respect to multiple relevant, disputed issues during discovery and is listed as a fact witness to be called live on EMC's witness list.  There is no reason that Mr. Clark, who is not EMC's corporate representative for trial, should be exempted from the witness sequestration rules.  Mr. Clark is one of four in-house counsel at EMC who are listed on EMC's pleadings.

C.      **Length of Trial**

130.    This case is currently scheduled for a five-day jury trial beginning at 9:30am on March 7, 2016.  Each trial day will begin at 9:30am and the jury will be excused at 4:30pm.  The trial will be timed, as the Court will allocate to counsel for each party a number of hours in which to present their respective cases, including time for opening and closing statements, but not including time for voir dire.

D.      **Order of Presentation of Evidence [Disputed]**

131.    Pure proposes that unless the Court specifies otherwise, the order of presentation of evidence will be as follows:

> i.    Opening Statements (EMC first, followed by Pure);
>
> ii.    EMC's presentation of evidence of issues for which EMC bears the burden of proof;
>
> iii.    Pure's presentation of evidence rebutting EMC's presentation, and Pure's presentation of evidence on issues for which Pure bears the burden of proof;
>
> iv.    EMC's presentation of evidence rebutting Pure's presentation of evidence on issues for which Pure bears the burden of proof; and
>
> v.    Closing Arguments (EMC first, followed by Pure, followed by EMC rebuttal)

132.    EMC does not agree that it is necessary to specify the order of presentation of evidence in this Pretrial Order, as the Court is familiar with how to manage a patent trial.

**E.    Set-up of Electronic and Computer Devices**

133.    The parties request that the Court grant access to the Courtroom on March 4, 2016, the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

**F.    Federal Judicial Center Introduction to the Patent System Video**

134.    The parties agree that the current version of the Federal Judicial Center Introduction to the Patent System video (2013 revision) will be played as part of the Court's preliminary jury instructions.

**G.    Handling of Confidential Information at Trial**

135.    To address confidentiality concerns, the parties agree that witnesses competent to testify regarding source code (including experts) may present testimony regarding source code, or based upon source code, without offering the source code itself into evidence.

136.    Persons entitled to have access to CONFIDENTIAL – ATTORNEYS' EYES ONLY information under the Protective Order (D.I. 25) shall not be excluded from the

courtroom and shall have the right to review any information presented by either party at trial, including, but not limited to, exhibits and trial transcripts; provided, however, that such persons who are not entitled to have access to CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE information under the Protective Order shall not be permitted to review any exhibits designated as CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE information other than as may be published or presented to the jury in Court during a witness examination.

137.    Persons not entitled to have access to CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS' EYES ONLY information shall be excluded from the courtroom, at the request of any party and subject to the Court's approval, during the presentation of any evidence designated CONFIDENTIAL, CONFIDENTIAL – ATTORNEYS' EYES ONLY, or CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE information, or any testimony that is reasonably anticipated to solicit such information.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Stephen J. Kraftschik
_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for Plaintiffs EMC Corporation, EMC International Company, and EMC Information Systems International*

SHAW KELLER LLP

/s/ David M. Fry
_____
John W. Shaw (#3362)
David M. Fry (#5486)
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com

*Attorneys for Defendant Pure Storage, Inc.*

OF COUNSEL:

Josh A. Krevitt
Paul E. Torchia
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2490

Stuart M. Rosenberg
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5389

Chris R. Ottenweller
Matthew H. Poppe
Jesse Y. Cheng
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400

Alyssa M. Caridis
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Los Angeles, CA  90017
(213) 629-2020

T. Vann Pearce, Jr.
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8400

Paul T. Dacier
Krishnendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA  01748

February 9, 2016

OF COUNSEL:

Robert A. Van Nest
Matthew Werdegar
R. Adam Lauridsen
Corey Johanningmeier
David W. Rizk
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400
Joseph FitzGerald
PURE STORAGE, INC.
650 Castro Street, Suite 400
Mountain View, CA  94041
(650) 318-6589

# EXHIBIT 1

### EMC'S STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED

Plaintiff EMC[1] asserts that Pure Storage infringes U.S. Patent Nos. 7,373,464 ("the '464 patent"), 7,424,015 ("the '015 patent"), 6,904,556 ("the '556 patent"), and 8,375,187 ("the '187 patent") (collectively "the patents-in-suit") directly and indirectly, literally and/or under the doctrine of equivalents.  At trial, EMC will seek damages to compensate EMC for Pure Storage's infringement.  EMC also seeks injunctive relief, as well as pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. §284 and attorneys' fees pursuant to 35 U.S.C. §285.

EMC respectfully submits the following Statement of Facts That Remain to be Litigated based on EMC's current understanding of Pure's defenses.  Should the Court determine that any issue identified here is more appropriately considered an issue of law, EMC incorporates such issues by reference into its Statement of Issues of Law That Remain to Be Litigated (Exhibit 3).  Likewise, to the extent that EMC's Statement of Issues of Law That Remain to Be Litigated contains issues that the Court deems to be issues of fact, those issues are incorporated herein by reference.

### 1.    Infringement

1.    Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 6, 7, and 16 of the '556 Patent, either literally or under the doctrine of equivalents.

2.    Whether Pure induced the infringement of Claims 6, 7, and 16 of the '556 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

---

[1] Where the context requires, "EMC" refers collectively to co-Plaintiffs EMC Corporation, EMC International Company, and EMC Information Systems International.

3.     Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 2, 3, 14, 19-21, and 32 of the '464 Patent, either literally or under the doctrine of equivalents.

4.     Whether Pure induced the infringement of Claims 2, 3, 14, 19-21, and 32 of the '464 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

5.     Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent, either literally or under the doctrine of equivalents.

6.     Whether Pure induced the infringement of Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

7.     Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 1, 2, 4-6, and 8 of the '187 Patent, either literally or under the doctrine of equivalents.

8.     Whether Pure induced the infringement of Claims 1, 2, 4-6, and 8 of the '187 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

### 2.     Validity

9.     Whether the references alleged by Pure to be prior art are prior art under 35 U.S.C. §§ 102 or 103.

10.     Whether Claims 6, 7, and 16 of the '556 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

11.     Whether Claims 6, 7, and 16 of the '556 Patent are invalid as obvious in light of the prior art and secondary considerations of nonobviousness under 35 U.S.C. § 103.

12.     Whether Claims 2, 3, 14, 19-21, and 32 of the '464 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

13.     Whether Claims 2, 3, 14, 19-21, and 32 of the '464 Patent are invalid as obvious in light of the prior art and secondary considerations of nonobviousness under 35 U.S.C. § 103.

14.     Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

15.     Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid as obvious in light of the prior art and secondary considerations of nonobviousness under 35 U.S.C. § 103.

16.     Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid for lack of enablement.

17.     Whether Claims 1, 2, 4-6, and 8 of the '187 Patent are invalid as obvious in light of the prior art and secondary considerations of nonobviousness under 35 U.S.C. § 103.

### 3.     Damages

18.     Whether EMC is entitled to lost profits due to Pure's infringement of the Asserted Patents.

19.     The amount of lost profits EMC should be awarded due to Pure's infringement of the Asserted Patents.

20.     In the event of infringement, the amount of reasonable royalty damages that EMC should be awarded due to Pure's infringement of the Asserted Patents.

EXHIBIT 2

### PURE'S STATEMENT OF FACTS THAT REMAIN TO BE LITIGATED

Defendant Pure Storage, Inc. ("Pure") asserts that the asserted claims of U.S. Patent Nos. 6,904,556 ("the '556 patent"), 7,373,464 ("the '464 patent"), 7,424,015 ("the '015 patent"), and 8,375,187 ("the '187 patent") (collectively the "Asserted Patents") are not infringed and are invalid as anticipated and obvious. In addition, Pure asserts that the asserted claims of the '015 patent are invalid for lack of enablement and lack of written description. Pure also seeks its costs pursuant to Federal Rule of Civil Procedure 54(d) and its attorneys' fees pursuant to 35 U.S.C. § 285.

Pure respectfully submits the following Statement of Facts That Remain to Be Litigated based on its current understanding of EMC's[1] positions. Should the Court determine that any issue identified herein is more appropriately considered an issue of law, Pure incorporates such issues by reference in its Statement of Issues of Law That Remain to Be Litigated (Exhibit 4). Likewise, to the extent that Pure's Statement of Issues of Law That Remain to Be Litigated contains issues that the Court deems to be issues of fact, those issues are incorporated herein by reference.

### 1.      Infringement

1.      Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 6, 7, and 16 of the '556 Patent, either literally or under the doctrine of equivalents.

2.      Whether Pure induced the infringement of Claims 6, 7, and 16 of the '556 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

---

[1] Where the context requires, "EMC" refers collectively to co-Plaintiffs EMC Corporation, EMC International Company ("EIC"), and EMC Information Systems International ("EISI").

3.      Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 2, 3, 14, 19-21, and 32 of the '464 Patent, either literally or under the doctrine of equivalents.

4.      Whether Pure induced the infringement of Claims 2, 3, 14, 19-21, and 32 of the '464 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

5.      Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent, either literally or under the doctrine of equivalents.

6.      Whether Pure induced the infringement of Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

7.      Whether Pure's manufacture, sale, offer for sale, and/or use (or control of the use by others) in the United States of the accused FlashArray products directly infringe Claims 1, 2, 4-6, and 8 of the '187 Patent, either literally or under the doctrine of equivalents.

8.      Whether Pure induced the infringement of Claims 1, 2, 4-6, and 8 of the '187 Patent by another in violation of 35 U.S.C. §§ 271(b), (c), or (f).

## 2.      Conception, Diligence, and Reduction to Practice[2]

1.      Whether the named inventors of the '464 and '015 patents conceived of the subject matter claimed in the patents earlier than December 20, 2002.

2.      Whether the named inventors of the '464 and '015 patents diligently reduced the subject matter of the patents to practice.

---

[2] These issues will only need to be litigated if the Court denies Pure's pending motion to strike (D.I. 302).

### 3.    Invalidity

1.    Whether Claims 6, 7, and 16 of the '556 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

2.    Whether Claims 6, 7, and 16 of the '556 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

3.    Whether Claims 2, 3, 14, 19-21, and 32 of the '464 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

4.    Whether Claims 2, 3, 14, 19-21, and 32 of the '464 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

5.    Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid as anticipated by the prior art under 35 U.S.C. § 102.

6.    Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

7.    Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid for lack of enablement under 35 U.S.C. § 112.

8.    Whether Claims 1, 2, 4, 7, 15, and 16 of the '015 Patent are invalid for lack of written description under 35 U.S.C. § 112.

9.    Whether Claims 1, 2, 4-6, and 8 of the '187 Patent are invalid as obvious in light of the prior art under 35 U.S.C. § 103.

### 4.    Damages

1.    If any asserted claim is found to be infringed and not invalid, whether EMC Corporation, EIC or EISI is entitled to a reasonable royalty.

2.      If any asserted claim is found to be infringed and not invalid, and if EMC Corporation, EIC or EISI is entitled to a reasonable royalty, the amount of reasonable royalty damages that should be awarded.

3.      If any asserted claim is found to be infringed and not invalid, whether EMC Corporation, EIC, or EISI has standing to recover lost profits.

4.      If any asserted claim is found to be infringed and not invalid, and if EMC Corporation, EIC or EISI has standing to recover lost profits, whether lost profits should be awarded.

5.      If any asserted claim is found to be infringed and not invalid, and if EMC Corporation, EIC or EISI is entitled to lost profits, the appropriate amount of lost profits that should be awarded.

# EXHIBIT 3

### EMC'S STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

Plaintiff EMC[1] asserts that Pure Storage infringes U.S. Patent Nos. 7,373,464 ("the '464 patent"), 7,424,015 ("the '015 patent"), 6,904,556 ("the '556 patent"), and 8,375,187 ("the '187 patent") (collectively "the patents-in-suit") directly and indirectly, literally and/or under the doctrine of equivalents.  At trial, EMC will seek damages to compensate EMC for Pure Storage's infringement.  EMC also seeks injunctive relief, as well as pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

EMC's Statement of Issues of Law is based on the arguments it expects to make to establish infringement as well as its understanding of the arguments that Pure Storage is likely to make in an attempt to prove its defenses.  To the extent Pure Storage intends or attempts to introduce different or additional legal arguments, EMC reserves the right to supplement this Statement and contest those legal arguments and to present any and all rebuttal evidence in response to those arguments.  By providing this Statement, EMC does not concede that all of the recited issues are appropriate for trial.  In particular, EMC does not waive any of its motions *in limine*, *Daubert* motions, or motions for summary judgment which, if granted, would render some of these issues moot.

### STANDING

Pure has asserted that EMC Corporation lacks standing to sue with respect to the '015 and '464 patents.  Pure has further stated that it will attempt to present this issue to the jury.  Standing is not for the jury to decide, but, as the Supreme Court, the Federal Circuit, and the other Circuits have uniformly held, is a threshold jurisdictional question for resolution by the

---

[1] Where the context requires, "EMC" refers collectively to co-Plaintiffs EMC Corporation, EMC International Company, and EMC Information Systems International.

Court.  Moreover, even when there are subsidiary questions of fact that must be resolved to

determine standing (and here, there are not), the law is clear that those questions too are for the

Court, and not the jury, to decide.

Pure, in an effort to present this issue to the jury, wrongly suggests that standing is an

issue of damages, and proposes that this Court instruct the jury to decide issues of standing as

part of the damages charge.  Pure has revealed, in its statement, that it has done so in order to

prejudice EMC before the jury with assertions that EMC transferred its patents "to off-shore

subsidiaries to obtain preferential tax treatment for the assets."  The proposition that a jury may

be charged on an issue of standing as a part of a damages charge is, in any event, wholly

unsupported by any authority from any court, or any model instruction.

Pure, in its pretrial statement, has incorrectly characterized the relevant license and

assignment agreements in an effort to suggest that EMC Corporation divested all significant

rights in the patents.  That did not happen, but in any case, it is not an issue that should be

litigated in a pretrial order.  In the event the Court reaches the merits on this issue, EMC will

show that EMC Corporation has standing to sue under the '015 and '464 patents, under settled

law, because it retained both title to the patents and an express right to sue for infringement (in

addition to other rights).  If Pure truly believed there was a standing issue, Pure should have

raised it with the Court over a year ago, when Pure first raised it with EMC, and if Pure wishes to

maintain this assertion now, it must be decided by the Court, outside the presence of the jury.

**Standing is an Issue of Law for the Court.**  It is well settled that the issue of whether a

plaintiff has standing to sue is a question of law for the Court to decide.  *See, e.g.*, *Warth v.

Seldin*, 422 U.S. 490, 498-99 (1975); *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust

Litig.),* 686 F.3d 741, 747 (9th Cir. 2012*)* ("Standing is a question of law for the district court to

2

decide"); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 873 (Fed. Cir. 1991); *McKesson Automation, Inc. v. Swisslog Holding AG*, No. 06-28-SLR-LPS, 2008 U.S. Dist. LEXIS 66340, at *23 (D. Del. Aug. 29, 2008) ("patent ownership for standing purposes is a question of law that may require resolution of factual disputes by the court) (citing *Kahn v. General Motors*, 77 F.3d 457, 459 (Fed. Cir. 1996); *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 485 F. Supp. 2d 519, 532 (D. Del. 2007) ("Standing is a question of law to be determined by the court, not a question of fact for the jury.").

Accordingly, the Federal Circuit has long held, in the context of deciding standing to sue for patent infringement, that "the question of standing to sue is a jurisdictional one which we review de novo."  *E.g.*, *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). Questions of patent standing issues are legal in nature because they call into question a federal court's power to decide a case or controversy under Article III of the Constitution.  *See, e.g.*, *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1378 (Fed. Cir. 2009) (introducing the "all substantial rights" analysis with the following statement of law: "An Article III standing challenge is a question of law, which this court reviews de novo.").

The federal courts have also long held that even when subsidiary questions of fact must be resolved to determine standing, these questions should be resolved by the Court, and not by the jury.  *See, e.g.*, *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, (1978).  Indeed, "because the court (and not a jury) decides standing, the district court must decide issues of fact necessary to make the standing determination."  *Crayton*, 686 F.3d at 747; *see also*, *Animal Sci. Products, Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 485 (D.N.J. 2014) (the same).

The same is true in patent cases.  Indeed, in *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir. 2008), the plaintiff's standing to allege patent infringement hinged on the scope of an employment agreement, and on appeal from the district court's dismissal, the plaintiff argued it was entitled to have a jury determine that issue.  The Federal Circuit disagreed and remanded with instructions that the district court determine the jurisdictional facts for itself.  *Id*. at 1290-94.  *See also*, *e.g.*, *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999).  Pure's suggestion that there are issues for the jury to decide on this issue is contrary to the law.

Accordingly, the Federal Circuit cases that address standing are uniformly appeals from motions to dismiss or summary judgment rather than jury verdicts.  Not surprisingly, Pure has been unable to find a single case where a court asked a jury to pass on whether the plaintiff had sufficient rights, in light of a patent license or assignment, to confer standing to sue, not even after EMC challenged Pure to do so in numerous conferences and exchanges of the draft pretrial statements.  EMC has been unable to find any such case in its own research.

The cases that Pure has cited on this issue contradict Pure's position entirely and only further demonstrate that the standing issue that Pure has raised is one for the Court.  Pure cites to *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), for the unremarkable proposition that contract interpretation is a matter of state law.  *Id*. at 1370.  Pure ignores the fact that the Federal Circuit in this case found that standing was a legal issue, and reviewed it *de novo*.  *Id*. at 1365  Pure then cites to *Principal Mutual. Life Insurance Co. v. Racal-Datacom, Inc*., 233 F.3d 1 (1st Cir. 2000), for the similarly unremarkable position that, in an action for breach of contract, the "fact-finder" can in some cases resolve contract ambiguities.  *Id*. at 3.  Pure ignores the fact that the "fact-finder" in that case was the Court – no jury was involved.  *Id*.  Regardless,

4

even if a question of contractual ambiguity could be deemed factual and sent to a jury in a breach

of contract action, that is not an option when determining standing for patent infringement in

federal court.  As discussed above, the Federal Circuit has held unequivocally that contract

questions that go to standing are for the Court, and not the jury, to resolve.  *DDB Techs.*, 517

F.3d at 1290-94.[2]

**Standing is not a Damages Issue.**  Pure, in an effort to find a mechanism for presenting

standing to the jury, has suggested that standing is a damages issue, and that the jury must

determine whether the various EMC entities have  "standing to seek lost profits."  Standing is not

a damages issue, but, as discussed above, a threshold question as to whether a party can sue at

all.  Standing is binary question- if a party does not have standing on a particular count, it must

be dismissed, and the party cannot seek any remedy for that count, including damages.  But if a

party has standing, it can seek all remedies authorized under the patent statute, including lost

profits, to the extent the facts warrant that recovery under the applicable law.  Pure has not cited

a single case to the contrary.  Indeed, *Rite-Hite Corp.*, 56 F.3d at 1538, on which Pure relies,

contradicts Pure entirely, as the court (not the jury) in that case decided the issue of standing as a

matter of law, and when the Federal Circuit found standing lacking for two parties, it dismissed

them from the case.  *Id.* at 1553-54.  EMC is aware of no case where a court charged a jury to

determine standing as a matter of patent damages.

**A Patent Owner Who Retains a Right to Sue Has Standing.**  Pure has submitted pages

of briefing in its statement where Pure incorrectly characterizes the license and assignment

---

[2] The only situation where a jury can determine jurisdictional facts is when they "are so intertwined with the substantive federal patent law . . . that dismissal on jurisdictional grounds would be inappropriate." *DDB Techs.*, 517 F.3d at 1291.  In *DDB Techs*, the Federal Circuit held that the interpretation of an employment agreement to determine patent ownership, even though requiring extrinsic evidence as to the intent of the parties, did not warrant presentation to a jury, because the contractual issues were not "intertwined" with substantive issues of validity and infringement. *Id.*

agreements at issue (which Pure did not submit to this Court) in an effort to suggest that EMC

Corporation divested itself of all significant rights to the patent.  These characterizations of the

evidence, which are not appropriate for debate in a legal section pretrial order, are incorrect, as

the face of the agreements will themselves show.  As discussed below, the law is clear that

because EMC Corporation has expressly retained title to the patents and a meaningful right to

sue, EMC Corporation has standing.

The Federal Circuit has held that a party who retains a meaningful right to sue accused

infringers has standing, even where that party has conveyed all rights to practice a patent to an

exclusive licensee.  *See Alfred E. Mann Foundation v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir.

2010).   As the Federal Circuit in *Mann* explained, "the nature and scope of the licensor's

retained right to sue accused infringers is the most important factor in determining whether an

exclusive license transfers sufficient rights to render the licensee the owner of the patent."  *Id.* at

1361.  The court held that Alfred E. Mann, the licensor in that case, had standing because it

retained the unfettered right to sue, *i.e.*, "whether or not to bring suit, when to bring suit, where

to bring suit, what claims to assert, what damages to seek, whether to seek injunctive relief,

whether to settle the litigation, and the terms on which the litigation will be settled," even though

that right only vested when its licensee declined its right to sue.  *Id.* at 1362.  The Federal Circuit

has similarly held, in other cases, that an exclusive license will not deprive a licensor of standing

where it, like EMC Corporation here, retains its right to sue.  *Intellectual Prop. Dev., Inc. v. TCI*

*Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001); *Abbott Labs. v. Diamedix Corp.*,

47 F.3d 1128, 1131-33 (Fed. Cir. 1995).

Pure cites no authority to the contrary. Pure cites to *Merck & Co. v. Smith*, 155 F. Supp.

843, 845 (E.D. Pa. 1957), *aff'd*, 261 F.2d 162 (3d Cir. 1958), which is clearly distinguishable

from the present case.  The licensor in *Merck & Co.* did not explicitly retain a right to sue, only the right to be notified of sublicenses and to recapture the patent in the event of default or bankruptcy.  261 F.2d at 164.  Similarly, *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372 (Fed. Cir. 2000) supports EMC's position entirely.  In that case, the Federal Circuit noted that a title holder (like EMC Corporation here), under doctrines of prudential standing, must normally be joined to a suit with an exclusive licensee, because a title holder presumptively would still have Article III standing to initiate a separate suit.  *Id.* at 1377.  Nowhere did the Court suggest that a title holder that retained a right to sue would not have standing.  Finally, *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000), which notes that a licensor's right to sue can be rendered "nugatory" by a licensee's right to sublicense, is similarly inapt, as EMC Corporation's right to sue cannot be rendered nugatory by EISI or EIC, both of whom are wholly owned subsidiaries under EMC Corporation's control.

Pure's remaining cases alternately express neutral points of law or stand for the related but irrelevant proposition that a "bare licensee" does not have standing to sue.  For example, in *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303 (Fed. Cir. 2004), the plaintiff Poly-Com was denied the ability to claim the lost profits of its sister company Poly-Flex because Poly-Flex did not have independent standing as a non-exclusive licensee.  *Id.* at 1311.  This holding has no bearing on whether a *licensor*-manufacturer has *retained* sufficient patent rights to have standing to sue for its own lost profits.  Pure's citations in fact support the proposition that a licensor has standing when it retains a meaningful right to sue accused infringers.  *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 978-80 (Fed. Cir. 2005) (holding licensor's retention of the partial right to sue for infringement resulted in transfer of fewer than "all substantial rights" to licensee).

7

### ISSUES ON WHICH EMC BEARS THE BURDEN OF PROOF

**Direct Infringement**

1.  <u>Issues to be Litigated</u>

    a.  Whether Pure Storage has directly infringed claims 2, 3, 14, 19-21, and/or 32 of the '464 patent literally and/or under the doctrine of equivalents.

    b.  Whether Pure Storage has directly infringed claims 1, 2, 4, 7, 15 and/or 16 of the '015 patent literally and/or under the doctrine of equivalents.

    c.  Whether Pure Storage has directly infringed claims 1, 6, 7, 10, and/or 16 of the '556 patent literally and/or under the doctrine of equivalents.

    d.  Whether Pure Storage has directly infringed claims 1, 2, 4, 5, 6, and/or 8 of the '187 patent literally and/or under the doctrine of equivalents.

2.  <u>Legal Authority</u>

EMC bears the burden of proving patent infringement by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). EMC must show that it is more likely than not that Pure Storage infringes the patents-in-suit. *Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005). A party may be found liable for infringement when it "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).

The infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The first step is to define the disputed terms of the patent consistent with how those terms would be understood by a person of ordinary skill in the art. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir.

8

2005) (en banc).  This Court construed a number of the disputed terms in its Memorandum

Opinion and Order dated January 9 and 20, 2015, and in its Memorandum Opinion dated

February 2, 2016.  (D.I. 115, 121, 362).  The second step is to determine whether the accused

product infringes the patent, which is done by comparing the accused product with the properly

construed claims.  *Markman*, 52 F.3d at 976.

"Infringement under the doctrine of equivalents is an equitable doctrine devised for

'situations where there is no literal infringement but [where] liability is nevertheless appropriate

to prevent what is in essence a pirating of the patentee's invention.'"  *Insta-Foam Prods., Inc. v.*

*Universal Foam Sys., Inc.*, 906 F.2d 698, 702 (Fed. Cir. 1990) (quoting *Loctite Corp. v.*

*Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985)).  Under the doctrine of equivalents, an

accused product infringes if a person of ordinary skill in the art would consider the elements in

the accused product to be insubstantially different from the limitations of the asserted claims.

*Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999); *see also*

*Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996) ("Infringement under the

doctrine of equivalents may be found where those limitations of a claim not found exactly in the

accused device are met equivalently.").

There are several ways to demonstrate infringement under the doctrine of equivalents.

One way is by the function-way-result test, which permits a finding of infringement if a claim

limitation and the corresponding element of the accused product (1) perform substantially the

same function, (2) in substantially the same way, (3) to produce substantially the same result.

*Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1579 (Fed. Cir. 1984)

(citation omitted).  In addition, evidence that a person of ordinary skill in the art would consider

the element of the accused product to be interchangeable with the claim limitation is also

evidence supporting a finding of infringement under the doctrine of equivalents. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36-37 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950)). Furthermore, if a person of ordinary skill in the art would consider the differences between the element found in the accused product and the element claimed in the patent to be insubstantial, equivalence is met. *Aquatex v. Techniche*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

Under the doctrine of equivalents, a patentee is entitled to the full scope of the properly construed claims absent a "clear and unmistakable" disavowal of the claim scope during prosecution of the patent. *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1057-59 (Fed. Cir. 2009) (a disclaimer of claim scope under the doctrine of equivalents is found only where there has been a "clear and unmistakable disavowal" of claim scope); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359-60 (Fed. Cir. 2001) (prosecution history estoppel does not apply to amendments made during prosecution that do not narrow claim scope). Prosecution history estoppel may bar a patentee from asserting equivalence if the scope of the claims was narrowed by amendment during prosecution. However, prosecution history estoppel does not apply where "the rationale underlying the amendment [bears] no more than a tangential relation to the equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).

### Indirect Infringement

1. Issues to be Litigated

   a. Whether Pure Storage has induced the infringement of claims 2, 3, 14, 19-21, and/or 32 of the '464 patent literally and/or under the doctrine of equivalents.

   b. Whether Pure Storage has induced the infringement of claims 1, 2, 4, 7, 15 and/or 16 of the '015 patent literally and/or under the doctrine of equivalents.

      c.  Whether Pure Storage has induced the infringement of claims 1, 6, 7, 10, and/or 16 of the '556 patent literally and/or under the doctrine of equivalents.

      d.  Whether Pure Storage has induced the infringement of claims 1, 2, 4, 5, 6, and/or 8 of the '187 patent literally and/or under the doctrine of equivalents.

    2.    <u>Legal Authority</u>

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A party is liable for inducement of infringement if it: (1) knew about the patent; (2) intentionally encouraged acts that constitute direct infringement; (3) knew or should have known that its actions would cause direct infringement or was willfully blind to the fact; and (4) another party directly infringed the claim. *Id.*; *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070-71 (2011).

Evidence of specific intent to induce infringement "may be inferred from circumstantial evidence." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008) (citation omitted); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009). Evidence of active steps taken to induce infringement, such as advertising an infringing use, or instructing how to engage in an infringing use, may support a finding of an intention for the product to be used in an infringing manner. *Ricoh*, 550 F.3d at 1341 (citation omitted). "It is enough that the inducer 'cause[s], encourage[s], or aid[s]' the infringing conduct and that the induced conduct is carried out." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012).

**Damages and Injunctive Relief**

    1.    <u>Issues to be Litigated</u>

      a.  Whether EMC is entitled to damages for Pure Storage's infringement of the patents-in-suit and, if so, the dollar amount of

> pre-verdict and post-verdict damages to the time of judgment to compensate for the infringement of the patents-in-suit.
>
> b.  Whether EMC is entitled to an accounting of damages and, if so, the dollar amount of such accounting.
>
> c.  Whether EMC is entitled to an award of pre-judgment and post-judgment interest and, if so, the dollar amount of such award.
>
> d.  Whether EMC is entitled to a declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and whether EMC is entitled to an award of attorneys' fees.
>
> e.  Whether EMC is entitled to costs and, if so, the dollar amount of its costs.
>
> f.  Whether EMC is entitled to a permanent injunction barring Pure Storage from infringing the patents-in-suit in the future.

   2.   <u>Legal Authority</u>

A patentee is entitled to lost profits if it can "show a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

In general, causation-in-fact requires the patentee to prove: "(1) a demand for the patented product; (2) an absence of acceptable noninfringing substitutes; (3) the manufacturing and marketing capability to exploit the demand; and (4) the amount of profit the patent owner would have made." *Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011) (citing *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1373 (Fed. Cir. 2008), and *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).  These factors are generally referred to as the *Panduit* factors.

Even in the presence of acceptable substitute products in the market, the patentee may still be entitled to lost profits on a portion of the accused infringer's sales.  *Ericsson, Inc. v.*

12

*Harris Corp.*, 352 F.3d 1369, 1377-78 (Fed. Cir. 2003).  The patentee bears the burden of proving that it is more likely than not that its products competed in the same market as the infringing products and must demonstrate that there was a reasonable probability that it would have made a portion of the infringing sales equal to at least the patentee's share of that market but for the infringement.  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989).  This approach is sometimes referred to as a market share analysis.  *Id.*

Although there are several well-recognized methods for showing lost profits, including the four *Panduit* factors and market share analysis, a patentee may use any method for showing lost profits so long as it satisfies the "but for" standard.  *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Crystal Semiconductor*, 246 F.3d at 1355.  To meet the "but for" standard, the patentee "need only show that it would have made additional profits 'but for' the infringement."  *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1383 (Fed. Cir. 2002) (citing *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999)).  "Although the parties must support their positions with sound economic proof, absolute certainty is not required, for reconstruction of the 'but for' market is 'by definition a hypothetical enterprise' based on the evidence introduced at trial.'"  *Fiskars*, 279 F.3d at 1383 (quoting *Grain Processing*, 185 F.3d at 1350); *W.R. Grace & Co.-Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 321 (D. Del. 1999) ("With respect to lost sales, the 'but for' rule requires the patentee to provide proof to a reasonable probability that the sale would have been made but for the infringement.") (emphasis added) (citing *Minco v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996)).

Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made

13

of the invention by the infringer, together with interest and costs as fixed by the court." 35

U.S.C. § 284. The reasonable royalty may be based on the "supposed result of hypothetical

negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling,*

*Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal

Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely

upon the fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318

F. Supp. 1116, 1120 (S.D.N.Y.1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon,*

*Inc.*, CIV.A. 03-241 JJF, 2004 WL 2213562 (D. Del. Sept. 28, 2004). "[I]n conducting the

hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the

infringement began." *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D.

Del. 1994). The determination of a reasonable royalty "necessarily involves an element of

approximation and uncertainty." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301,

1336 (Fed. Cir. 2009) (citing *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517 (Fed.

Cir. 1995)).

A patentee is also entitled to an accounting of damages for post-verdict sales of products

found to infringe the patents-in-suit. In patent cases, post-verdict accounting is standard practice.

*See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 2001 U.S. Dist. LEXIS 23416, *52-65 (D.

Nev. Aug. 1, 2001) (describing numerous instances of accountings in patent cases); *see also,*

*e.g., Edwards Lifesciences AG v. CoreValve, Inc.*, No. 08–91–GMS, 2011 WL 446203, at *16

(D. Del. Feb. 7, 2011), *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ("The

court will grant . . . an accounting of the number of [infringing] devices made, used, sold . . .

through the date of the order accompanying this memorandum."). Courts in this District have

permitted additional discovery to properly complete a post-trial accounting of damages.

14

*TruePosition Inc. v. Andrew Corp.*, No. Civ. 05–747–SLR, 2009 WL 1651042, at *1 n. 2 (D.

Del. June 10, 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

   Upon a finding of patent infringement, a court should award the patentee costs and

pretrial interest.  Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules,

or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the

prevailing party."  "Prejudgment interest shall ordinarily be awarded absent some justification

for withholding such an award."  *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800

(Fed. Cir. 1988) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)).

"[P]rejudgment interest should be awarded from the date of infringement to the date of

judgment."  *Id.* (citing *General Motors*, 461 U.S. at 656).

   Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed

on any money judgment in a civil case recovered in a district court."  "Post-judgment interest is

awarded on monetary judgments recovered in all civil cases," including ones for patent

infringement.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).

Post-judgment interest is governed by regional circuit law.  *Id.* at 1348.  Interest begins to accrue

on the date of the entry of judgment.  *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97

(3d Cir. 1993).  Courts in this district routinely award post-judgment interest in patent

infringement cases.  *See nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D.

Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee

for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400,

414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest

for patent infringement).

Section 285 of Title 35 of the United States Code provides for the awarding of "reasonable attorney fees to the prevailing party" when the case is determined to be exceptional. Courts find an accused infringer's "failure to investigate the patent and/or rely on the informed opinions of competent counsel before engaging in and/or continuing its infringing activity to be highly relevant evidence on the attorneys' fees issue." *nCUBE Corp.*, 313 F. Supp. 2d at 392 (citing *Gillette Co. v. S.C. Johnson & Son, Inc.*, 1990 WL 36143, at *6 (D. Mass. 1990) (stating that "[i]n a case in which an infringer does not act 'prudently' and 'reasonably' before engaging in infringing action, it is only 'fair' to allocate to the infringer the costs which the patent holder has to incur in order to seek redress"), *aff'd*, 919 F.2d 720 (Fed. Cir. 1990).

Pursuant to Federal Rule of Civil Procedure 54(d), costs should be allowed to the prevailing party. Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

Upon a finding of infringement, section 283 of Title 35 of the United States Code provides for the availability of the court to grant injunctive relief in accordance with the principles of equity on such terms as the court deems reasonable. To demonstrate it is entitled to a permanent injunction, a patentee must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### ISSUES ON WHICH PURE STORAGE BEARS THE BURDEN OF PROOF

**Invalidity**

1.  Issues to be Litigated

    a.  Whether Pure Storage has proven, by clear and convincing evidence, that each reference asserted against the patents-in-suit is "prior art" under 35 U.S.C. §§ 102 and/or 103.

    b.  Whether Pure Storage can overcome the statutory presumption that the patents-in-suit are valid and enforceable.

    c.  Whether Pure Storage has proven, by clear and convincing evidence, that any of the asserted claims of the patents-in-suit are invalid as anticipated under 35 U.S.C. § 102.

    d.  Whether Pure Storage has proven, by clear and convincing evidence, that any of the asserted claims of the patents-in-suit are invalid as obvious under 35 U.S.C. § 103.

2.  Legal Authority

    a.  Presumption of Validity and Burden of Proof

The patents-in-suit are presumed valid. 35 U.S.C. § 282(a). To overcome that

presumption of validity, a party challenging a patent must prove facts supporting a determination

of invalidity by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct.

2238, 2242 (2011). "Clear and convincing evidence has been described as evidence which

proves in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual

contentions are [sic] highly probable.'" *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821,

830 (Fed. Cir. 1991) (alterations in original) (quoting *Colorado v. New Mexico*, 467 U.S. 310,

316 (1984)). Further, "[e]ach claim of a patent (whether in independent, dependent, or multiple

dependent form) shall be presumed valid independently of the validity of other claims;

17

dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282(a).

"[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (citation and emphasis omitted). "It is not necessary that the court hold a patent valid; it is only necessary that it hold that the patent challenger has failed to carry its burden." *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1996 WL 621830, at *5 (D. Del. Oct. 21, 1996) (citing *Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984)), *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000). "[W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

When the Examiner of record has already considered during patent prosecution a reference offered to invalidate a patent, the accused infringer "has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job . . . and whose duty it is to issue only valid patents." *Am. Hoist & Derrick Co.*, 725 F.2d at 1359; *see also Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990); *AI-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("the challenger's 'burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application'") (quoting *Hewlett-Packard*, 909 F.2d at 1467)).

b.      Qualification as Prior Art

To be considered prior art (whether the reference is asserted as anticipatory art under § 102 or obviousness art under § 103), a reference must have been sufficiently accessible to the public interested in the art before the critical date. *In re Omeprazole Patent Litig. v. Apotex Corp.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008). A document "may be deemed a printed publication

18

'upon a satisfactory showing that it has been disseminated or otherwise made available to the extent that persons interested and of ordinary skill in the subject matter or art, exercising reasonable diligence can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Massachusetts Institute of Technology v. AB Fortia, et al.*, 774 F.2d 1104, 1109 (Fed. Cir. 1985) (quoting *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981). "The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986). The party alleging that a patent application qualifies as prior art under 35 U.S.C. §102(e) bears the burden of persuasion that the application was filed before the invention date of the challenged patent. 35 U.S.C. § 102(e); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015).

c.      Anticipation

Section 102 of Title 35 of the United States Code provides, in relevant part, that:[3]

> A person shall be entitled to a patent unless - (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or . . . (e) the invention was described in — (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated

---

[3] The pre-AIA version of the statute governs the asserted patents in this case.

the United States and was published under Article 21(2) of such treaty in the English language.

35 U.S.C. § 102.  Invalidity for anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation."  *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted).

Anticipation requires that the reference must disclose the invention "without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference."  *In re Arkley*, 455 F.2d 586, 587-88 (C.C.P.A 1972) ("Such picking and choosing may be entirely proper in the making of a § 103, obviousness rejection, where the applicant must be afforded an opportunity to rebut with objective evidence any inference of obviousness which may arise from the similarity of the subject matter which he claims to the prior art, but it has no place in the making of a § 102, anticipation rejection.").

d.    Obviousness

Section 103 of Title 35 of the United States Code provides, in relevant part, that:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103(a); *see also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010); *cert. denied*, 131 S. Ct. 1531 (2011).

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject

20

> matter is determined. Such secondary considerations as commercial
> success, long felt but unsolved needs, failure of others, etc., might be
> utilized to give light to the circumstances surrounding the origin of the
> subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 127 S. Ct. 1727, 1734 (2007) (quoting *Graham*

*v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).  Before finding a patent claim

invalid for obviousness, a court must consider all of these factors. *Ruiz v. A.B. Chance Co.*, 234

F.3d 654, 663 (Fed. Cir. 2000).  Obviousness determinations proceed in two stages. First, the

patent challenger must establish by clear and convincing evidence that the claimed invention

would have been prima facie obvious.  *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 974-75 (Fed.

Cir. 1986).  Failure to show prima facie obviousness means the claims are not invalid for

obviousness, ending the inquiry. *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231

F.3d 1339, 1345 (Fed. Cir. 2000).

Second, assuming the challenger sets forth clear and convincing evidence of prima facie

obviousness, the patentee may come forward with evidence to demonstrate that the invention

was not obvious.  Prima facie obviousness may be rebutted with objective indicia of non-

obviousness ("secondary considerations") such as commercial success, failure of others to solve

the problem, copying or other attempts to patent the same invention, satisfaction of a long-felt

need by the invention, and acclaim for the invention.  Sometimes, objective factors are the most

important evidence in evaluating obviousness, and "must" always be considered as part of the

original determination of obviousness.  *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802

F.2d 1367, 1380, 1382-84 (Fed. Cir. 1986); *see also In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir.

1998) (recognizing that objective considerations are critical to the obviousness inquiry). Once

sufficient rebuttal evidence has been presented, "the prima facie case dissolves, and the decision

is made on the entirety of the evidence." *In re Kumar*, 418 F.3d 1361, 1366 (Fed. Cir. 2005).

Moreover, when the patentee comes forward with evidence of secondary considerations, the

burden of proof that the claims were obvious in light of all the evidence remains on the

defendant by clear and convincing evidence.  *See Hybritech Inc.*, 802 F.2d at 1375, 1383*; see

also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d

1063, 1078 (Fed. Cir. 2012) *cert. denied*, 133 S. Ct. 933, 184 L. Ed. 2d 725 (2013) (patentee

never bears the burden of persuasion with respect to secondary considerations).

"[A] patent composed of several elements is not proved obvious merely by demonstrating

that each element was, independently, known in the prior art."  *KSR Int'l*, 550 U.S. at 418.

"Inventions in most, if not all, instances rely upon building blocks long since uncovered, and

claimed discoveries almost of necessity will be combinations of what, in some sense, is already

known." *Id.* at 418-19.  Where a challenger seeks to invalidate a patent based on obviousness, it

must demonstrate "by clear and convincing evidence" that a "skilled artisan would have had

reason to combine the teaching of the prior art references to achieve the claimed invention, and

that the skilled artisan would have had a reasonable expectation of success from doing so."  *In re

Cyclobenzapine*, 676 F.3d at 1068-69 (citing *Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*,

566 F.3d 989, 994 (Fed. Cir. 2009)); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d

1342, 1360 (Fed. Cir. 2007).

The obviousness analysis takes place at the time of the invention, and focuses on

evidence existing before the time of the invention.  The use of hindsight is prohibited in the

obviousness analysis.  *KSR Int'l*, 550 U.S. at 421 ("A factfinder should be aware, of course, of

the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post

reasoning."); *accord Innogenetics, N. V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir.

2008) (hindsight should not be relied upon to post-hoc create a reason for combining references

when such reason would not have been known before the claimed invention); *Yamanouchi*, 231 F.3d at 1343 (using "the claimed invention itself as a blueprint for piecing together elements in the prior art to defeat the patentability of the claimed invention" is impermissible hindsight reasoning) (citation omitted); *Janssen Pharmaceutica N.V. v. Mylan Pharm., Inc.*, 456 F. Supp. 2d 644, 663 (D.N.J. 2006) (discrediting expert testimony that was clearly based on hindsight).

An obviousness determination is made "from the viewpoint of a person of ordinary skill [not the inventor] in the field of the invention." *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997). The obviousness analysis must avoid using the teachings of the patent-in-suit because "[t]he invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985). Therefore, "[i]t is critical that the question of obviousness not be viewed in the light of the accomplished result." *BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 603 (D. Del. 1995) (internal quotation marks and citation omitted), appeal deactivated, No. 95-1494, 1995 WL 810959 (Fed. Cir. Oct. 27, 1995), *aff'd*, No. 95-1494, 96-1072, 1996 WL 518067 (Fed. Cir. Sept. 13, 1996). Evidence must be provided that a "skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

e.      Enablement

Section 112 of Title 35 of the United States Code provides, in relevant part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

23

The party asserting invalidity bears the burden of establishing lack of enablement by the highly probable standard.  Enablement is determined as of the effective filing date of the patent's application.  *Alza Corp. v. Andrx Pharms, LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010).  "[T]he enablement requirement is met if the description enables *any* mode of making and using the invention." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005) (emphasis added).  Enablement requires that the specification teach those in the art to make and use the invention without undue experimentation.  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  The fact that some experimentation may be required to practice the claimed invention does not mean that a patent does not meet the enablement requirement.  Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *Id*.  A patent need not expressly state information that persons of ordinary skill in the art would be likely to know or could obtain.

### Pure's Statement of Issues of Law That Remain to Be Litigated

Defendant Pure Storage, Inc. ("Pure") asserts that the asserted claims of U.S. Patent Nos. 6,904,556 ("the '556 patent"), 7,373,464 ("the '464 patent"), 7,424,015 ("the '015 patent"), and 8,375,187 ("the '187 patent") (collectively the "Asserted Patents") are not infringed and are invalid as anticipated and/or obvious under 35 U.S.C §§ 102 & 103. In addition, Pure asserts that the asserted claims of the '015 patent are invalid for lack of enablement and lack of written description under 35 U.S.C. § 112. Pure also seeks its costs pursuant to Federal Rule of Civil Procedure 54(d) and its attorneys' fees pursuant to 35 U.S.C. § 285.

Pure's Statement of Issues of Law is based on the arguments it expects to make to establish anticipation, obviousness, lack of written description, and lack of enablement, as well as its understanding of the arguments that EMC[1] is likely to make in attempting to prove infringement, conception and reduction to practice, standing, damages, and entitlement to injunctive relief. To the extent that EMC intends or attempts to introduce different or additional legal arguments, Pure reserves the right to supplement this statement and contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments. By providing this statement, Pure does not concede that all of the recited issues are appropriate for trial. In particular, Pure does not waive any of its motions *in limine*, *Daubert* motions, or motions for summary judgment which, if granted, would render some or all of these issues moot.

---

[1] Where the context requires, "EMC" refers collectively to co-Plaintiffs EMC Corporation, EMC International Company ("EIC"), and EMC Information Systems International ("EISI").

ISSUES ON WHICH EMC BEARS THE BURDEN OF PROOF

**Direct Infringement**

    1.    <u>Issues to Be Litigated</u>

        a.    Whether EMC will prove, by a preponderance of the evidence, that Pure has directly infringed claims 6, 7, and/or 16 of the '556 patent, literally or under the doctrine of equivalents.

        b.    Whether EMC will prove, by a preponderance of the evidence, that Pure has directly infringed claims 2, 3, 14, 19-21, and/or 32 of the '464 patent, literally or under the doctrine of equivalents.

        c.    Whether EMC will prove, by a preponderance of the evidence, that Pure has directly infringed claims 1, 2, 4, 7, 15, and/or 16 of the '015 patent, literally or under the doctrine of equivalents.

        d.    Whether EMC will prove, by a preponderance of the evidence, that Pure has directly infringed claims 1, 2, 4, 5, 6, and/or 8 of the '187 patent, literally or under the doctrine of equivalents.

    2.    <u>Legal Authority</u>

EMC bears the burden of proving patent infringement by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v, Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). To meet this burden, EMC must show that it is more likely than not that Pure has infringed the Asserted Patents. *Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).

The infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The first step is to define the disputed the terms of the patent consistent with how those terms would be understood by a person of ordinary skill in the art. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). This Court construed a number of the disputed terms in its Memorandum Opinion and Order dated January 9 and 20, 2015. (D.I. 115, 121). Moreover, the Court held an additional claim construction hearing on January 8, 2016. The second step is to determine

2

whether the accused product infringes the patent, which is done by comparing the accused product with the properly construed claims. *Markman*, 52 F.3d at 976.

a. Literal Infringement

To establish literal infringement, a patentee must prove "that each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005); *see also DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'") (citation omitted). If the patentee fails to prove that any limitation is literally present in the accused product, then there can be no finding of literal infringement. *V-Formation*, 401 F.3d at 1312 (finding no literal infringement where "the accused devices do not include" one of the limitations of the asserted claims); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998) ("any deviation from the claim precludes a finding of literal infringement").

"[A] dependent claim, by nature, incorporates all the limitations of the claim to which it refers." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000). Thus, it is "a fundamental principle of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.'" *Id.* (citation omitted).

b. The Doctrine of Equivalents

If a patentee has failed to prove that each claim limitation is literally present in the accused product, then the claim may only "be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

3

To prove infringement under the doctrine of equivalents, the patentee must "prove that the accused device contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Id.* (citation omitted). "Insubstantiality may be determined by whether the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). In addition, "other 'objective evidence rather than unexplained subjective conclusions' may be relevant to the determination whether the differences between the accused product or process and the claimed invention are insubstantial." *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996) (citation omitted). "Such evidence may include evidence of known interchangeability to one of ordinary skill in the art, copying, and designing around." *Id.*

To carry its burden of proof, "a patentee must provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test . . . ." *Id.* at 1567. "Such evidence must be presented on a limitation-by-limitation basis[,]" and "[g]eneralized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Id.* "[W]ithout these requirements, the fact-finder has no analytical framework for making its decision and is 'put to sea without guiding charts when called upon to determine infringement under the doctrine [of equivalents].'" *Id.* at 1566-67 (citation omitted). Thus, as the Federal Circuit has explained,

> when the patent holder relies on the doctrine of equivalents, . . . the
> difficulties and complexities of the doctrine require that evidence

> be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.

*AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007).

The scope of potential equivalents is limited by the principle of prosecution history estoppel, whereby "a patentee is unable to reclaim through the doctrine of equivalents what was surrendered or disclaimed in order to obtain the patent." *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999). Prosecution history estoppel applies not only "to matter surrendered as a result of amendments to overcome patentability rejections," but also "to matter surrendered . . . as a result of an argument to secure allowance of a claim." *Id.* (citations omitted). "Competitors may rely on estoppel to ensure that their own devices will not be found to infringe by equivalence." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 727 (2002).

"[T]he patentee bears the burden of showing that a narrowing amendment did not surrender a particular equivalent"; it can only overcome this presumption "by showing that 'at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003) (citation omitted).

> Specifically, the patentee must demonstrate that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not have reasonably been expected to have described the alleged equivalent.

*Id.*

5

"The doctrine of equivalents cannot be used to erase meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *V-Formation*, 401 F.3d at 1313 (internal quotations and citations omitted). Thus, "[i]t is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson*, 520 U.S. at 29. Likewise, because a patent holder may not "obtain[ ] under the doctrine of equivalents coverage it could not have obtained from the Patent and Trademark Office (PTO) by literal claims[,]" the range of equivalents may not be so broad as to encompass what is already known in the prior art. *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1367 (Fed. Cir. 1999). ("Because prior art limits the exclusive right available to an inventor, it also limits the range of permissible equivalents of a claim."). The patent holder bears the burden of proving that its asserted range of equivalents "would not ensnare the prior art." *Id.* at 1368 (internal quotations and citations omitted).

**Indirect Infringement**

1.   Issues to Be Litigated

    a.   Whether EMC will prove, by a preponderance of the evidence, that Pure has induced the infringement of claims 6, 7, and/or 16 of the '556 patent, literally or under the doctrine of equivalents.

    b.   Whether EMC will prove, by a preponderance of the evidence, that Pure has induced the infringement of claims 2, 3, 14, 19-21, and/or 32 of the '464 patent, literally or under the doctrine of equivalents.

    c.   Whether EMC will prove, by a preponderance of the evidence, that Pure has induced the infringement of claims 1, 2, 4, 7, 15, and/or 16 of the '015 patent, literally or under the doctrine of equivalents.

    d.   Whether EMC will prove, by a preponderance of the evidence, that Pure has induced the infringement of claims 1, 2, 4, 5, 6, and/or 8 of the '187 patent, literally or under the doctrine of equivalents.

2.      <u>Legal Authority</u>

"Whoever actively induces infringement of a patent shall be liable as an infringer."

35 U.S.C. § 271(b). In addition, "[w]hoever without authority supplies or causes to be supplied

in or from the United States all or a substantial portion of the components of a patented

invention, where such components are uncombined in whole or in part, in such manner as to

actively induce the combination of such components outside of the United States in a manner

that would infringe the patent if such combination occurred within the United States, shall be

liable as an infringer." 35 U.S.C. § 271(f).

A party may only be found liable for inducement of infringement if it: (1) knew about the

patent; (2) intentionally encouraged acts that constitute direct infringement; (3) knew or was

willfully blind to the fact that the intentionally encouraged acts would constitute direct

infringement; and (4) another party directly infringed the claim. *Id.*; *Global-Tech Appliances,*

*Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070-71 (2011); *Info-Hold v. Muzak LLC*, 783 F.3d 1365, 1372

(Fed. Cir. 2015) ("To prove inducement of infringement, the patentee must 'show that the

accused inducer took an affirmative act to encourage infringement with the knowledge that the

induced acts constitute patent infringement.'") (citation omitted). "The mere existence of direct

infringement . . . , while necessary to find liability for induced infringement, is not sufficient for

inducement." *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31

(Fed. Cir. 2015).

The "knowledge requirement may be satisfied by a showing of actual knowledge or

willful blindness." *Info-Hold*, 783 F.3d at 1372. "Willful blindness is a high standard, requiring

that the alleged inducer (1) subjectively believe that there is a high probability that a fact exists

and (2) take deliberate actions to avoid learning of that fact." *Id.* This requires more than "merely

a 'known risk' that the induced acts are infringing" or "'deliberate indifference' to that risk . . . ."

*Global-Tech.*, 131 S.Ct. at 2071. Rather, the patentee must demonstrate "active efforts by an

inducer to avoid knowing about the infringing nature of the activities." *Id.*

> "Inducement can be found where there is '[e]vidence of active steps taken to encourage

direct infringement,' which can in turn be found in 'advertising an infringing use or instructing

how to engage in an infringing use.'" *Takeda*, 785 F.3d at 630-31 (citation omitted). "But such

instructions need to evidence 'intent to *encourage* infringement.'" *Id.* at 631 (citation omitted).

"The question is not just whether instructions 'describ[e] the infringing mode,' . . . but whether

the 'instructions teach an infringing use of the device *such that* [the court is] willing to infer from

those instructions an affirmative intent to infringe the patent[.]'" *Id.* (citations omitted). "Merely

'describ[ing]' . . . an infringing mode is not the same as 'recommend[ing]," . . . 'encourag[ing],'

. . . or 'promot[ing]' . . . an infringing use, or suggesting that an infringing use 'should' be

performed . . . ." *Id.* (citations omitted).

> Also, "[e]specially where a product has substantial noninfringing uses, intent to induce

infringement cannot be inferred even when the defendant has actual knowledge that some users

of its product may be infringing the patent." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d

1348, 1365 (Fed. Cir. 2003); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317,

1329 (Fed. Cir. 2009) (refusing to infer specific intent despite patent holder's argument that "the

'default' [configuration of the accused product] leads to infringing use"). Similarly, the ability

"to use the accused device as directed without ever practicing the claimed method" weighs

against a finding of specific intent to induce infringement. *Vita-Mix*, 581 F.3d at 1329.

**Conception, Diligence, and Reduction to Practice**

    1.    <u>Issues to Be Litigated</u>[2]

        a.  Whether EMC can present admissible evidence sufficient to demonstrate that the named inventors of the '464 and '015 patents conceived of the subject matter claimed in the patents earlier than December 20, 2002.

        b.  Whether EMC can present admissible evidence sufficient to demonstrate that the named inventors of the '464 and '015 patents diligently reduced the subject matter of the patents to practice.

    2.    <u>Legal Authority</u>

A party seeking to establish priority must show either (1) that it was "the first party to reduce an invention to practice" or (2) "that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice." *Price v. Symsek*, 98 F.2d 1187, 1190 (Fed. Cir. 1993). "Priority and its issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings." *Brown v. Barbacid*, 276 F.3d 1327, 1332 (Fed. Cir. 2002). "While defendants bear the burden of persuasion to show that [references] are prior art . . . by clear and convincing evidence, the patentee nevertheless must meet its burden of production to demonstrate an earlier conception date." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014).

        a.  Conception

"Conception is 'the formation in the mind of the inventor[ ] of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.'" *Brown*, 276 F.3d at 1335-36 (citation omitted). "A conception must encompass all limitations of the claimed invention, . . . and 'is complete only when the idea is so clearly defined in the

---

[2] These issues will only need to be litigated if the Court denies Pure's pending motion to strike (D.I. 302).

inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation . . . .'" *Id.* at 1336 (citations omitted).

"[W]hen a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer . . . independent corroborating evidence in addition to [the inventor's] own statements and documents." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009) (internal quotations and citations omitted); *see also Brown*, 276 F.3d at 1335 (an "inventor's own unwitnessed documentation does not corroborate an inventor's testimony about inventive facts"). Moreover, the "testimony of one co-inventor cannot be used to help corroborate the testimony of another." *Medichem, S.A. v. Rolabo, S.L.,* 437 F.3d 1157, 1170 (Fed. Cir. 2006).

### b.   Diligence in Reduction to Practice

"Where a party is first to conceive but second to reduce to practice, that party must demonstrate reasonable diligence toward reduction to practice from a date just prior to the other party's conception to its reduction to practice." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). "The question of reasonable diligence is one of fact." *Brown*, 436 F.3d at 1379. "The purpose of requiring reasonable diligence . . . is to assure that the invention was not abandoned or unreasonably delayed by the first inventor during the period after the second inventor entered the field." *Id.* "The basic inquiry is whether, on all of the evidence, there was reasonably continuing activity to reduce the invention to practice." *Id.* at 1380. As with conception, "[p]recedent requires that an inventor's testimony concerning his diligence be corroborated." *Id.*

**Damages and Injunctive Relief**

1.     <u>Issues to Be Litigated</u>

    a.   Whether EMC will prove, by a preponderance of the evidence, that EMC Corporation, EIC or EISI is entitled to a reasonable royalty.

    b.   Whether EMC Corporation, EMC International Company, or EMC Information Systems International has standing to recover damages for lost profits.

    c.   Whether EMC will prove, by a preponderance of the evidence, that EMC Corporation, EIC or EISI is entitled to lost profits.

    d.   If EMC proves, by a preponderance of the evidence, that EMC Corporation, EIC or EISI is entitled to a reasonable royalty or lost profits, the appropriate dollar amount of pre-verdict and post-verdict damages to the time of judgment to compensate for infringement.

    e.   Whether EMC, EIC or EISI is entitled to an accounting of damages and, if so, the dollar amount of such accounting.

    f.   Whether EMC, EIC or EISI is entitled to an award of pre-judgment and post-judgment interest and, if so, the dollar amount of such award.

    g.   Whether EMC, EIC or EISI will carry its burden of showing that it is entitled to a permanent injunction.

2.     <u>Legal Authority</u>

    a.   Reasonable Royalty

Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. But a patent holder is not automatically entitled to damages—rather, "the amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). If there is not "enough evidence in the record to allow the factfinder to formulate a royalty[,]" then "plaintiffs are not entitled to collect any

royalty . . . ." *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981); *see also*

*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 522-23 (Fed. Cir. 2012) (affirming district

court's exclusion of plaintiff's damages expert and finding that the court had "sufficient basis to

preclude [the plaintiff] from presenting any evidence of damages at trial").

    The reasonable royalty may be based on the "supposed result of hypothetical negotiations

between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk*

*Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not

prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the

fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp.

1116, 1120 (S.D.N.Y.1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, C.A.

No. 03-241-JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004). This hypothetical negotiation

approach "tries, at best as possible, to recreate the *ex ante* licensing negotiation scenario and to

describe the resulting agreement." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325

(Fed. Cir. 2009).

    In determining a reasonable royalty, "the trial court must carefully tie proof of damages

to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594

F.3d 860, 869 (Fed. Cir. 2010). "Any evidence unrelated to the claimed invention does not

support compensation for infringement but punishes beyond the reach of the statute." *Id.*

Because the patent holder is required to apportion the value of the patented features, "it is

generally required that royalties be based not on the entire product, but instead on the 'smallest

salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67

(Fed. Cir. 2012) (citation omitted). "The entire market value rule is a narrow exception to this

general rule"; it is only available if the patent holder can show "that the patented feature drives the demand for an entire multi-component product . . . ." *Id.*

Any evidence offered to support a reasonable royalty "must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318. Thus, testimony based on arbitrary shortcuts— untethered to the facts of the case—is inadmissible. *Id.* (finding that an expert's "use of the 25% rule of thumb . . . was arbitrary, unreliable, and irrelevant" and "fails to pass muster under *Daubert*"); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("[T]he patentee … must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, not conjectural or speculative.").

The existence of an acceptable non-infringing alternative to the accused product "is a factor relevant to the determination of a proper royalty during hypothetical negotiations." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996). This factor tends to drive down the reasonable royalty because the accused infringer "would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device 'in the wings.'" *Id.* at 1571-72; *see also Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) (where an accused infringer "may have had non-infringing alternatives" available, "[t]he economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation"); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (affirming district court's finding that the difference between the cost of producing the infringing product and an

acceptable non-infringing alternative "effectively capped the reasonable royalty award"; if the patent holder "had insisted on a rate greater than" the cost difference—"taking into account possible cost fluctuations . . . and the elimination of [the accused infringer's] risk of producing an infringing product"—the accused infringer "instead would have chosen to invest in producing [the non-infringing alternative]").

Finally, if a party seeks to rely on past licenses to establish a reasonable royalty, it "must account for 'the technological and economic differences' between" the circumstances leading to those earlier licenses and the hypothetical negotiation. *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d, 1320 (Fed. Cir. 2010) (citation omitted). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79; *see also ResQNet*, 594 F.3d at 873 (finding that "the district court erred by considering [past] licenses to significantly adjust upward the reasonable royalty without any factual findings that accounted for the technological and economic differences between those licenses and the [asserted] patent").

### b.   Standing to Recover Lost Profits

First, "if the patentee is not selling a product, by definition there can be no lost profits." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995); *cf. Corning Optical Commc'ns Wireless Ltd. v. SOLiD, Inc.*, No. 5:14-CV-03750-PSG, 2015 WL 5723403, at *6 (N.D. Cal. Sept. 16, 2015) ("Defendants are right that Corning is not entitled to damages from related companies[.]").

Second, "[g]enerally, one seeking money damages for patent infringement must have held legal title to the patent at the time of the infringement." *Rite-Hite*, 56 F.3d at 1551. Thus, unless a plaintiff held legal title or was an exclusive licensee at the time of the alleged

infringement, it "has no entitlement under the patent statutes to itself collect lost profits damages for any losses it incurred due to infringement." *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004). "The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). "And at the final stage, those facts [relied upon by the plaintiff to establish standing] must be 'supported adequately by the evidence adduced at trial.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).

"[T]he grant of an exclusive license (including . . . the right to exclude the grantor itself) has generally been held to be an assignment or sale, unless a contrary intention appears." *Merck & Co. v. Smith*, 155 F. Supp. 843, 845 (E.D. Pa. 1957), *aff'd*, 261 F.2d 162 (3d Cir. 1958). "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite*, 56 F.3d at 1551. Without "an express or implied promise of exclusivity under the patent, . . . the party has a 'bare license,' and has received only the patentee's promise that that party will not be sued for infringement." *Id.*

"To determine whether a provision in an agreement constitutes an assignment or a license, one must ascertain the intention of the parties and examine the substance of what was granted." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991). Likewise, "'[d]etermining whether a licensee is an exclusive licensee . . . is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant.'" *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 602 (D. Del. 2007) (quoting *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d

1481, 1484 (Fed. Cir. 1998)). "The surrounding circumstances may be relevant to that

determination." *Id.*

A non-exclusive licensee "has no entitlement under the patent statues to itself collect lost

profits damages . . . ." *Poly-America*, 383 F.3d at 1311; *see also Mars, Inc. v. Coin Acceptors,*

*Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008). Moreover, parties cannot "synthetically create" lost

profits for a patent holder or exclusive licensee by giving it a contractual right to recover the lost

profits of a non-exclusive licensee. *Poly-America*, 383 F.3d at 1311-12 ("Although parties to a

lawsuit may allocate the disposition of infringement damages between themselves, . . . they

cannot create lost profits for a patentee if there are none.").

Here, EMC Corporation ("EMC Corp."), EMC International Company ("EIC") and EMC

Informational Systems International ("EISI") seek to skip over two prerequisite steps to any

patent infringement action: (1) establishing which specific plaintiff owns the substantial rights to

the patents at issue and (2) establishing that the plaintiff holding the substantial rights has an

entitlement to claim the specific damages sought, such as lost profits.  Both issues are disputed

with respect to the '464 and '015 patents, and may require the jury to resolve factual questions

regarding ambiguous contractual terms and extrinsic evidence.

Plaintiffs claim that EMC Corporation holds title to the '464 and '015 patents.  But this

bare assertion is contradicted by the agreements among EMC Corp. and its subsidiaries EIC and

EISI. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

16

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

**It is EMC's burden to establish standing:**  Standing is a jurisdictional requirement which can be raised at any time.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995); *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  As plaintiffs, EMC Corp. and its Bermuda and Ireland-based subsidiaries, EIC and EISI, bear the burden to establish standing.  *See e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court must therefore presume that EMC Corp. and its subsidiaries *lack* standing, and plaintiffs must overcome this presumption based on evidence. *Penn. Family Institute, Inc. v. Black*, 489 F.3d 156, 164 (3rd Cir. 2007) ("We presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record" (citations omitted)).

EMC has not established as a matter of law that EMC Corp. has standing to seek any damages related to the '464 and '015 patents.  EMC could have moved for summary judgment on this issue, but did not.  Pure Storage will not stipulate to EMC Corp.'s standing, because the factual record does not support such a stipulation, and EMC's own Rule 30(b)(6) witness claims the provisions on which EMC now purports to rely are ambiguous.  There is nothing radical about making EMC prove with evidence EMC Corp.'s standing to bring an infringement action and to recover damages.  Furthermore, EMC's claim that Pure should be forced to challenge Plaintiffs' standing through a Rule 12(b)(1) motion prior to trial is legally unsupported.  If EMC

has not established its own standing by the time of trial, it is not Pure's burden to address that deficiency through motion practice.

Regardless, should the Court consider EMC's standing, contractual ambiguities and extrinsic evidence may still leave issues for the jury to resolve.  EMC will seek to establish standing through a series of license agreements.  Construction of patent assignments and licenses is a matter of state contract law.  *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed. Cir. 2008).  Here, by the agreements' terms, Massachusetts law governs.  If the court finds the contract terms to be unambiguous, their interpretation is a legal issue.  But "where the plain meaning of a contract phrase does not spring unambiguously from the page or from the context, its proper direction becomes one for the factfinder, who must ferret out the intent of the parties." *RCI Northeast Servs. Div. v. Boston Edison Co.*, 822 F.2d 199, 202 (1st Cir. 1987) (applying Massachusetts law).  Consideration of extrinsic evidence is appropriate where "the bare language suggests one outcome but does not rule out the other." *Principal Mut. Life Ins. Co. v. Racal-Datacom, Inc.*, 233 F.3d 1, 3 (1st Cir. 2000) (applying Massachusetts law).

**EMC Corp. cannot establish standing under the '464 or '015 patents based on either contractual language or extrinsic evidence:**  It is black-letter law that "where the patentee makes an assignment of all substantial rights under the patent, the assignee may be deemed the effective 'patentee' under 35 U.S.C. § 281." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000).  "Section 261 recognizes, and courts have long held, that an exclusive, territorial license is equivalent to an assignment." *Id.*





### c.   Lost Profits

"To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that 'but for' the infringement, it would have made the infringer's sales." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). "An award of lost profits may not be speculative." *Id.* To carry its burden of proof, "the patent owner must show a reasonable probability that, absent the infringement, it would have made the infringer's sales." *Id.* "To prevent the hypothetical from lapsing into pure speculation, [the Federal Circuit] requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing*, 185 F.3d at 1350.

"[A]n accurate reconstruction of the hypothetical 'but for' market takes into account any alternatives available to the infringer." *Id.* at 1351.

> [O]nly by comparing the patented invention to its next-best available alternative(s)—regardless of whether the alternative(s)

were actually produced and sold during the infringement—can the
court discern the market value of the patent owner's exclusive
right, and therefore his expected profit or reward, had the
infringer's activities not prevented him from taking full advantage
of this right.

*Id.* Thus, if an accused infringer had a non-infringing substitute available to it during the time of

the alleged infringement, a patent holder may not recover lost profits unless it can "show 'that

the alleged infringer . . . would not have made a substantial portion or the same number of

sales'" from selling the non-infringing substitute instead of the allegedly infringing product. *Id.*

(quoting *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991)).

"[M]arket sales of an acceptable noninfringing substitute often suffice alone to defeat a case for

lost profits." *Id.* at 1352. But "a substitute need not be openly on sale" as long as the accused

infringer provides "proper economic proof of availability" during the relevant timeframe. *Id.* at

1354-56 (affirming district court's denial of lost profits where the accused infringer "had the

necessary . . . materials, the equipment, the know-how and experience, and the economic

incentive to produce [a non-infringing substitute] throughout the accounting period").

One acceptable method of proving "but for" causation is the *Panduit* test, a four-factor

test that requires the patent holder to "'prove: (1) demand for the patented product, (2) absence

of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit

the demand, and (4) the amount of the profit he would have made.'" *Water Techs. Corp. v.

Calco, Ltd.*, 850 F.2d 660, 672 (Fed. Cir. 1988) (quoting *Panduit Corp. v. Stahlin Bros. Fibre

Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). "[A] patentee is not entitled to lost profits if

the patentee fails to establish any of the above requirements." *SmithKline*, 926 F.2d at 1165.

In a market with multiple competitors, "a patent owner may satisfy the second *Panduit*

element by substituting proof of its market share for proof of the absence of acceptable

substitutes." *BIC Leisure*, 1 F.3d at 1219. But the patent holder bears the burden of proving that

its products competed in the same market as the allegedly infringing products, and it must

demonstrate that there was a reasonable probability that—if the accused infringer had not been

on the market—the patent holder would have made a portion of the infringing sales in proportion

to its market share. *Id.* at 1218; *see also Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,

989 F. Supp. 547, 600 (D. Del. 1997) ("A prerequisite to the applicability of the *Panduit* test is

that the products of the patent owner and the infringer compete against each other in the same

market segment."). In particular, "for lost profits based on the infringer's sales, a patentee must

show that the infringing units do 'not have disparately higher price than or possess characteristics

significantly different from the patented product.'" *Crystal Semiconductor Corp. v. TriTech*

*Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) (quoting *BIC Leisure*, 1 F.3d

at 1219)). If the patent holder cannot "show with reasonable probability that [the accused

infringer's] customers would have purchased from [the patent holder] in proportion with [its]

market share[,]" it would be error to "assum[e] that, without [the accused infringer] in the

market, [the accused infringer's] customers would have redistributed their purchases among all

the remaining [market participants.]" *BIC Leisure*, 1 F.3d at 1218.

      d.  Accounting

While a successful patent holder is generally entitled to an accounting of damages for

post-verdict infringement, an accounting "should not give [the patent holder] 'a second bite at

the apple.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1381

(Fed. Cir. 2013). Thus, any accounting must be limited "to those post-infringing sales, if any,

which are substantially related to the direct infringement . . . supported by the existing record."

*Id.* The patent holder's "right to a post-verdict accounting is not an unlimited after-hours hunting

license." *Id.*

### e.   Interest

"Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citing *General Motors*, 461 U.S. at 656). 28 U.S.C. § 1961(a) states that "interest shall be allowed on any money judgment in a civil case recovered in a district court."

"Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993); *but see id.* at 97 (noting that post-judgment interest does not always run from the date of the *original* judgment when that judgment is changed on appeal; "the decision turns on the degree to which the original judgment was upheld or invalidated"). Courts in this district routinely award post-judgment interest in patent infringement cases. *See nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest for patent infringement).

### f.   Injunctive Relief

To obtain a permanent injunction, a patent holder must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "An injunction should not be granted lightly . . . because it is a 'drastic and extraordinary remedy.'" *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, C.A. No. 11-484-RGA, 2014 WL 4695765, at *3 (D. Del. Sept. 12, 2014) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). "Indeed, if the plaintiff's injury can be adequately redressed with a less severe remedy, 'recourse to the additional and extraordinary relief of an injunction' is not warranted." *Id.* (quoting *Monsanto*, 561 U.S. at 166); *see also id.* at *14 (denying request for injunctive relief despite three of the four *eBay* factors weighing in favor of an injunction, finding that "the final three factors do not outweigh the absence of irreparable harm"). Likewise, a plaintiff's general "assertion that the public interest favors a strong patent system . . . is insufficient to compel an injunction." *XpertUniverse, Inc. v. Cisco Sys., Inc.*, C.A. No. 09-157-RGA, 2013 WL 6118447, at *13 (D. Del. Nov. 20, 2013) (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012)).

ISSUES ON WHICH PURE BEARS THE BURDEN OF PROOF

**Invalidity**

1.   Issues to Be Litigated

   a.   Whether Pure will prove, by clear and convincing evidence, that the asserted claims of the '556 patent, the '464 patent and the '015 patent are invalid under 35 U.S.C. § 102.

   b.   Whether Pure will prove, by clear and convincing evidence, that the asserted claims of the Asserted Patents are invalid under 35 U.S.C. § 103.

   c.   Whether Pure will prove, by clear and convincing evidence, that the asserted claims of the '015 patent are invalid under 35 U.S.C. § 112 for lack of enablement.

       d.  Whether Pure will prove, by clear and convincing evidence, that the asserted claims of the '015 patent are invalid under 35 U.S.C. § 112 for lack of written description.

2.    <u>Legal Authority</u>

"The presumption of a patent's validity under 35 U.S.C. § 282 can be rebutted by clear and convincing evidence." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014). "The standard does not 'rise and fall with the facts of each case.'" *Id.* (citation omitted). "In particular, '[w]hether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.'" *Id.* (citation omitted). Once an accused infringer has come "forward with invalidating prior art[,]" the burden shifts to the patent holder to "show that the prior art does not actually invalidate the patent or that it is not prior art because the asserted claim is entitled to the benefit of an earlier filing date." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010).

To be considered prior art (whether the reference is asserted as anticipatory art under § 102 or obviousness art under § 103), a reference must have been "accessible to the public interested in the prior art" before the critical date. *In re Omeprazole Patent Litig. v. Apotex Corp.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008). "[A] document may be deemed a printed publication 'upon a satisfactory showing that it has been disseminated or otherwise made available to the extent that persons interested and of ordinary skill in the subject matter or art, exercising reasonable diligence can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Mass. Inst. of Tech. v. AB Fortia*, 774 F.2d 1104, 1109 (Fed. Cir. 1985) (quoting *In re Wyer*, 655 F.2d 221, 226 (CCPA 1981)). A party alleging that a patent application qualifies as prior art under 35 U.S.C. § 102(e) bears the burden of persuasion that the application was filed before the invention date of the challenged patent. 35 U.S.C. § 102(e); *Dynamic Drinkware, LLC v. Nat'l Graphics,*

*Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015). But although the challenger "bears the burden of

persuasion to show that [a reference is] prior art . . . , the patentee nevertheless must meet its

burden of production to demonstrate an earlier conception date." *Allergan*, 754 F.3d at 967.

a.   Anticipation

Section 102 of Title 35 of the United States Code provides, in relevant part, that:[3]

> A person shall be entitled to a patent unless — (a) the invention
> was known or used by others in this country, or patented or
> described in a printed publication in this or a foreign country,
> before the invention thereof by the applicant for patent, or (b) the
> invention was patented or described in a printed publication in this
> or a foreign country or in public use or on sale in this country,
> more than one year prior to the date of the application for patent in
> the United States, or . . . (e) the invention was described in — (1)
> an application for patent, published under section 122(b), by
> another filed in the United States before the invention by the
> applicant for patent or (2) a patent granted on an application for
> patent by another filed in the United States before the invention by
> the applicant for patent, except that an international application
> filed under the treaty defined in section 351(a) shall have the
> effects for the purposes of this subsection of an application filed in
> the United States only if the international application designated
> the United States and was published under Article 21(2) of such
> treaty in the English language.

35 U.S.C. § 102.

Anticipation, like infringement, is "a two-step inquiry." *Power Mosfet Techs., L.L.C. v.*

*Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). "[T]he first step requires construing the

claim"; "[t]he second step . . . requires a comparison of the properly construed claim to the prior

art . . . ." *Id.* "[A] claim is anticipated if each and every limitation is found either expressly or

inherently in a single prior art reference." *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d

1354, 1361 (Fed. Cir. 1998). The reference does not need to explicitly disclose each limitation as

long as "the missing descriptive matter is necessarily present in the thing described in the

---

[3] The pre-AIA version of the statute governs the asserted patents in this case.

reference, and . . . it would be so recognized by persons of ordinary skill." *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). This principle of inherent disclosure "accommodates situations where the common knowledge of technologists is not recorded in the reference; that is, where technological facts are known to those in the field of the invention, albeit not known to judges." *Id.*

     b.   Obviousness

Section 103 of Title 35 of the United States Code provides, in relevant part, that:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negated by the manner in which the invention was made.

35 U.S.C. § 103(a).

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. In other words, the claimed subject matter must involve "more than the predictable use of prior art elements according to their established functions." *Id.* at 417.

     In determining whether the claimed subject matter is obvious,

> it will often be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

*Id.* at 418. "[T]he analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* The person of ordinary skill in the art is a "hypothetical person who is presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

One way to demonstrate obviousness "is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419-20. This analysis need not focus on "the problem the patentee was trying to solve"; rather, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. Likewise, the analysis should not be limited "to those elements of prior art designed to solve the same problem" as the one the patentee was trying to solve. *Id.* "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* "A person of ordinary skill is also a person of creativity, not an automaton." *Id.* at 421.

Once a challenger has made a "prima facie case demonstrating that the patent might be obvious[,]" the burden of production shifts to the patent holder "to come forward with evidence of nonobviousness . . . ." *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1353 (Fed. Cir. 2013). Such objective indicia of nonobviousness ("secondary considerations") may

include commercial success, failure of others to solve the problem, copying, satisfaction of a long-felt need, and industry praise. *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). "For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995); *see also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) ("[T]he patentee must establish a nexus between the evidence of commercial success and the patented invention.").

Moreover, "evidence of secondary considerations does not always overcome a strong prima facie showing of obviousness." *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *see also, e.g., Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008) (finding that "the objective evidence of nonobviousness simply cannot overcome such a strong prima facie case of obviousness"). Thus, for example, the Federal Circuit has affirmed a finding of obviousness despite the patent holder's "substantial evidence of commercial success, praise, and long-felt need . . . ." *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (agreeing that this evidence "was inadequate to overcome a final conclusion that [the asserted claim] would have been obvious").

c.   Enablement and Written Description

Section 112 of Title 35 of the United States Code provides, in relevant part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112.

i.   Enablement

"Enablement is determined as of the effective filing date of the patent's application." *Alza*

*Corp. v. Andrx Pharms, LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). "'To be enabling, the

specification of a patent must teach those skilled in the art how to make and use the full scope of

the claimed invention without 'undue experimentation.''" *Id.* (citations omitted). Enabling one

mode of practicing the invention does not satisfy the enablement requirement as to broad claims.

*See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) ("a

patentee cannot always satisfy the requirements of section 112, in supporting expansive claim

language, merely by clearly describing one embodiment of the thing claimed"); *see also Auto*

*Techs. Int'l, Inc. v. BMW of N. Am., Inc.* 501 F.3d 1274, 1285 (Fed. Cir. 2007); *Liebel-Flarsheim*

*Co. v. Medrad, Inc.*, 481 F.3d 1371, 1378-79 (Fed. Cir. 2007). Additionally, although

"[e]nablement is not precluded where a 'reasonable' amount of routine experimentation is

required to practice a claimed invention, . . . such experimentation must not be 'undue.'" *Alza*,

603 F.3d at 940 (citations omitted). In "determining if a disclosure requires undue

experimentation[,]" courts generally consider the following list of factors (often referred to as the

"*Wands* factors"):

> (1) the quantity of experimentation necessary, (2) the amount of
> direction or guidance presented, (3) the presence or absence of
> working examples, (4) the nature of the invention, (5) the state of
> the prior art, (6) the relative skill of those in the art, (7) the
> predictability or unpredictability of the art, and (8) the breadth of
> the claims.

*Id.* (quoting *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)).

"As [the Federal Circuit] has repeatedly stated, the rule that a specification need not

disclose what is well known in the art is merely a rule of supplementation, not a substitute for a

basic enabling disclosure." *Id.* at 940-41 (internal quotations and citations omitted). Thus, a

patentee "cannot simply rely on the knowledge of a person of ordinary skill to serve as a substitute for the missing information in the specification." *Id.* at 941.

>    ii.  Written Description

To determine whether a patentee has satisfied the written description requirement, the court must evaluate "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.* "Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id.* "[A]lthough written description and enablement often rise and fall together, requiring a written description of the invention plays a vital role in curtailing claims that do not require undue experimentation to make and use, and thus satisfy enablement, but that have not been invented, and thus cannot be described." *Id.* at 1352.

## Fees and Costs

>    1.    Issues to Be Litigated

>        a.   Whether Pure is entitled to a declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Pure is entitled to an award of attorneys' fees.

>        b.   Whether Pure is entitled to costs and, if so, the dollar amount of its costs.

>    2.    Legal Authority

35 U.S.C. § 285 provides for the awarding of "reasonable attorney fees to the prevailing party" when the case is determined to be exceptional. An exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in

which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). This is "a simple discretionary inquiry . . . governed by a preponderance of the evidence standard[.]" *Id.* at 1758. The court should consider the "totality of the circumstances" in determining whether a case is exceptional. *Id.* at 1756. The Federal Circuit has suggested that courts should "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1756 n.6 (citation omitted).

Pursuant to Federal Rule of Civil Procedure 54(d), costs should be allowed to the prevailing party. Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See also* D. Del. LR 54.1.