IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMC CORPORATION, EMC INTERNATIONAL COMPANY, and EMC INFORMATION SYSTEMS INTERNATIONAL, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1985-RGA |
| | ) | |
| PURE STORAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **PURE'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

OF COUNSEL:
Robert A. Van Nest
Matthew Werdegar
R. Adam Lauridsen
Corey Johanningmeier
David W. Rizk
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400

Joseph FitzGerald
PURE STORAGE, INC.
650 Castro Street, Suite 400
Mountain View, CA  94041
(650) 318-6589

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Pure Storage, Inc.*

Dated:  March 15, 2016

## TABLE OF CONTENTS

I.      LEGAL STANDARDS ...................................................................................................1

II.     NON-INFRINGEMENT OF THE '464 PATENT..........................................................2

        A.      Literal Infringement .........................................................................................2

III.    NON-INFRINGEMENT OF THE '556 PATENT ...........................................................4

IV.     INVALIDITY OF THE '556 PATENT...........................................................................5

        A.      All asserted claims of the '556 patent are rendered
                obvious by the Young patent ............................................................................5

        B.      All asserted claims of the '556 patent are rendered
                obvious by the Santeler patent .........................................................................6

V.      CONCEPTION OF THE '015 PATENT..........................................................................7

VI.     INVALIDITY OF THE '015 PATENT...........................................................................11

        A.      The Sun patent anticipates all asserted claims of the '015 patent...........................11

        B.      The Venti reference anticipates all asserted claims of the '015 patent..................13

        C.      The Moulton patent anticipates claims 1, 2, 15, and 16 of the '015 patent ...........14

VII.    DAMAGES.....................................................................................................................16

        A.      EMC's claim for lost profits damages is not supported
                by sufficient evidence ....................................................................................16

        B.      EMC's claims for reasonable royalties are not supported
                by sufficient evidence ....................................................................................18

VIII.   CONCLUSION................................................................................................................19

Pursuant to Federal Rule of Civil Procedure 50(a), Defendant Pure Storage, Inc. ("Pure") respectfully moves for judgment as a matter of law that (1) Pure has not literally infringed Claim 32 of U.S. Patent No. 7,373,464 (the "'464 patent") (PTX 1); (2) Pure has not literally infringed Claim 6 or 7 of the U.S. Patent No. 6,904,556 (the "'556 patent") (PTX 5); (3) Claims 6 and 7 of the '556 patent are invalid as obvious in light of U.S. Patent No. 5,680,579 (DTX 512); (4) Claims 6 and 7 of the '556 patent are invalid as obvious in light of U.S. Patent No. 6,223,301 (DTX 513); (5) EMC has failed to establish prior conception, and U.S. Patent No. 6,889,297  (DTX 557) is prior art to U.S. Patent No. 7,434,015 (the "'015 patent") (PTX 3); (6) Claims 1, 2, 7, 15, and 16 of the '015 patent are anticipated by U.S. Patent No. 6,889,297  (DTX 557); (7) Claims 1, 2, 7, 15, and 16 of the '015 patent are anticipated by "Venti: a new approach to archival storage" (DTX 560); (8) Claims 1, 2, 15, and 16 of the '015 patent are anticipated by U.S. Patent No. 6,704,730 (DTX 556); (9) EMC is not entitled to lost profits; and (10) EMC is not entitled to a reasonable royalty.

## I.     LEGAL STANDARDS

Once "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).  Rule 50 allows a motion for judgment as matter of law to be "made at any time before the case is submitted to the jury." *Id.* at 50(a)(2).

"'[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"" *Intellectual Ventures I, LLC v. Motorola Mobility, LLC*, 72 F. Supp. 3d 496, 501-02 (D. Del. 2014) (quoting *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted)). "'[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.'" *Id.* at 502 (quoting *Reeves*, 530 U.S. at 150). And while the Court must construe the evidence in the light most favorable to the non-moving party, "'[a] mere scintilla of evidence presented by the plaintiff is not sufficient to deny a motion for judgment as a matter of law.'" *Id.* (quoting *Stewart v. Walbridge, Aldinger Co.*, 882 F. Supp. 1141, 1443 (D. Del. 1995)). Rather, the Court must determine "'whether there is evidence upon which the jury could properly find for the non-moving party.'" *Id.* (quoting *Stewart*, 882 F. Supp. at 1443).

## II.    NON-INFRINGEMENT OF THE '464 PATENT

### A.    Literal Infringement

The final element of claim 32 of the '464 patent, requires: "returning the identifier for the data segment in the event the data segment is determined to have been stored previously." PTX 1. EMC has not offered sufficient evidence "upon which the jury could properly find for" EMC that the accused FlashArray products meet this claim limitation.

First, EMC's expert, Mr. Jestice, has conceded that when the SD Table in the FlashArray is updated, the identifier is added to the SD Table for the first time, and was never there before. Trial Tr. at 576:13-577:12. This cannot constitute a "return" under the Court's construction, as the identifier is not "delivered back" to the SD Table. The identifier was never stored in the SD Table— and was not present in the SD Table temporarily in any way—and thus could not be delivered *back* to the SD Table. In denying summary judgment on this issue, the Court held that a "reasonable jury could conclude, based on the evidence, that an identifier is delivered 'back' to the SD Table, even though the identifier had not previously been stored in the SD Table, because the identifier is returned to the table against which it had previously been compared." D.I. 381 at 14. But the undisputed evidence in the record at trial is that in order to check whether the SD Table contains a

2

matching identifier, the identifiers to be checked are copied out of the SD Table to the FlashArray controller's CPU.  And once the comparison is done, the copy of the identifier is simply discarded.  Trial Tr. at 1285:7-1286:12 (Vachharajani); *id.* at 1518:6-1520:22 (Zadok).  Thus, nothing happens inside the SD Table, which is a passive structure.  *See id.* at 1519:5-14.  And the identifier never interacts with the SD Table as part of the check/lookup process.  *See id.*  Consequently, the evidence is clear and undisputed, when the identifier is later added to the SD Table, it is being delivered to the table for the first time—not delivered back in any way.

Second, in denying summary judgment on EMC's index return theory of infringement, the Court held that although "Mr. Jestice acknowledges that no FlashArray routines return the value of the identifier to the calling routine[,] . . . [a] jury could reasonably conclude that returning an index representing the identifier . . . literally satisfies the claim language 'returning the identifier'[.]" D.I. 381 at 13-14.  The undisputed evidence at trial, however, now establishes that the index return line of code (DTX 906 at line 1879) is not part of either the SD and Recent Table lookup processes or the SD Table update process.  Trial Tr. at 1295:1-17 (Vachharajani); 1531:21-1532:2, 1537:7-13 (Zadok); *cf. id.* at 584:1-585:7 (Jestice).  The undisputed evidence at trial further establishes that:  (1) the index return line of code is only used inside the compare data step of the inline deduplication process, (2) is used as part of the process of fetching data for the comparison, (3) is executed before the actual data comparison happens, and (4) the index disappears before the comparison process is complete. *Id.* at 1294:2-1295:3 (Vachharajani); 1531:21-1532:15, 1537:7-19 (Zadok).  The index return thus is unrelated to the process of checking to see if the identifier is in either the SD Table or the Recent Table.  And it is executed *before* the determining process inside the compare data step and disappears thereafter.  It bears no relationship to the SD Table update step that Mr. Jestice

3

accuses of being the returning step.  Trial Tr. at 1295:1-17 (Vachharajani); 1531:21-1532:2, 1537:7-13 (Zadok); *cf. id.* at 584:1-585:7 (Jestice).

Additionally, the only evidence in the record as to what the index that is returned actually is, and what it actually does, confirms that it is not the identifier.  *Id.* at 1532:3-12 (Zadok).  Mr. Jestice's testimony to the contrary is conclusory and unsupported by any reasoned explanation or analysis.  *Id.* at 527:2-21.  Based on this evidence, no reasonable jury could conclude that the index return identified by Mr. Jestice "returns the identifier in the event it is determined that a data segment has been stored previously."[1]

## III.    NON-INFRINGEMENT OF THE '556 PATENT

In denying Pure's motion for summary judgment, the Court noted that "EMC's expert opined that the FlashArray meets the base memory address element because it organizes data in 'pages' that each have their own page numbers and uses the page numbers, in conjunction with a relative address, as a reference point to determine the storage location to accessed."  D.I. 381 at 39.  Based on this opinion, the Court concluded that "[w]hether the FlashArray assigns a base memory address as that term has been construed is a question properly left to the jury."  *Id.*

However, now that all the evidence has been presented, it is clear that EMC has not offered sufficient evidence "upon which the jury could properly find for" EMC that the accused FlashArray products meet the "base memory address" limitation of claims 6 and 7 of the '556 patent, as construed.  The Court has construed the meaning of "base memory address" to be "an address used as a reference point to which a relative address may be added to determine the address of the storage location to be accessed."  D.I. 436 at 2.  EMC's expert has admitted, consistent with the construction and claim language, that the address of the storage location to be accessed must be on the memory

---

[1] Pure filed a separate motion regarding EMC's doctrine of equivalence theory of infringement for the '464 patent.  D.I. 443.  On March 14, 2016, the Court indicated that it was granting Pure's motion.  Pure thus does not include those arguments here.

board.  Trial Tr. at 728:2-5 (Jones).  It is also undisputed that the address of the storage location to be accessed is assigned by the controllers of the SSDs.  *Id.* at 729:3-24, 733:24-734:3 (Jones).  It is further undisputed that there are many different types of SSD controllers, and that some use base memory addressing and some do not.  *Id.* at 734:4-10 (Jones); 1338:22-1339:4 (Miller); 1648:11-15, 1649:18-22 (Plank).  It is also undisputed that Pure does not know—and EMC's expert does not know—how the SSDs in the FlashArray perform addressing.  *Id.* at 728:10-17, 731:4-17 (Jones); *id.* at 1270:15-1272:5 (Vachharajani); 1337:14-19, 1340:17-20 (Miller).

Accordingly, there is no evidence in the record that the FlashArray assigns "an address used as a reference point to which a relative address may be added to determine the address of the storage location to be accessed."  The reference that Pure uses to keep track of data sent to the SSDs for storage is not an address of the storage location to be accessed.  *Id.* at 1271:7-19 (Vachharajani); *id.* at 1660:10-1662:10 (Plank).  The page address accused by EMC and identified by Professor Jones is not an address on the accused storage location to accessed—which is the memory regions of the memory boards of the SSDs.  *See, e.g.,* Trial Tr. at 1659:18-1660:9, 1705:23-1706:4 (Plank).  Professor Jones' testimony to the contrary is inconsistent with his overall infringement opinion and the undisputed evidence concerning the operation of the FlashArray, and is unsupported by any evidence or reasoned analysis.

## IV. INVALIDITY OF THE '556 PATENT

### A. All asserted claims of the '556 patent are rendered obvious by the Young patent.

Pure presented clear and convincing evidence that the U.S. Patent No. 5,680,579 (the "Young patent") (DTX 512) discloses or renders obvious each and every element of every asserted claim. Trial Tr. at 1669:1-1682:17 (Plank).  In addition, the parties presented clear and convincing evidence that the RAID techniques of the '556 patent were well known in the prior art.  *See, e.g., id.* at 638:10-15 (Bermingham); 1319:16-21 (Miller); 1630:10-15 (MacLellan); 1665:11-17 (Plank);

5

2081:14-17 (Jones).  The allegedly novel base memory address element is also admittedly an old concept that was well known in the art.  *See, e.g.*, *id.* at 644:16-23, 648:9-11 (Bermingham); 2088:22-2089:3 (Jones).  In fact, the testimony clearly and convincingly demonstrates that each and every element of the claims was known in the prior art to persons of ordinary skill:

- Parity groups:  *Id.* at 1631:13-1632:15 (MacLellan).

- Calculated by a logical exclusive-or of data values:  *Id.* at 647:21-648:8 (Bermingham); 1632:16-19 (MacLellan); 2081:24-2082:3 (Jones).

- Memory boards:  *Id.* at 1632:24-1633:7 (MacLellan); 2083:2-6 (Jones).

- Memory regions:  *Id.* at 1632:24-1633:7 (MacLellan); 2082:2-9 (Plank); 2083:2-6 (Jones).

- Memory segments: *Id.* at 648:15-21 (Bermingham); 1633:8-12 (MacLellan).

- Base memory addresses:  *Id.* at 648:9-11 (Bermingham); 1665:20-23 (Plank); 2083:24-2084:9 (Jones).

EMC's expert Dr. Jones did not dispute the disclosure in Young of any elements beyond memory region and base memory address.  *See, e.g.*, *id.* at 2097:12-24 (Dr. Jones, agreeing that Young discloses memory boards, parity groups, and memory segments/blocks).

EMC has not provided sufficient evidence to rebut the showing made by Pure.

### B.    All asserted claims of the '556 patent are rendered obvious by the Santeler patent.

Pure presented clear and convincing evidence that U.S. Patent No. 6,223,301 (the "Santeler patent") (DTX 513) discloses or renders obvious each and every element of every asserted claim. Trial Tr. at 1682:18-1687:3 (Plank).  In addition, the parties presented clear and convincing evidence that the RAID techniques of the '556 patent were well known in the prior art.  *See, e.g.*, *id.*at 638:10-15 (Bermingham); 1319:16-21 (Miller); 1630:10-15 (MacLellan); 1665:11-17 (Plank); 2081:14-17

6

(Jones). The allegedly novel base memory address element is also admittedly an old concept that was well known in the art. *See, e.g.*, *id.* at 644:16-23, 648:9-11 (Bermingham); 2088:22-2089:3 (Jones). In fact, the testimony clearly and convincingly demonstrates that each and every element of the claims was known in the prior art to persons of ordinary skill:

- Parity groups: *Id.* at 1631:13-1632:15 (MacLellan).

- Calculated by a logical exclusive-or of data values: *Id.* at 647:21-648:8 (Bermingham); 1632:16-19 (MacLellan); 2081:24-2082:3 (Jones).

- Memory boards: *Id.* at 1632:24-1633:7 (MacLellan); 2083:2-6 (Jones).

- Memory regions: *Id.* at 1632:24-1633:7 (MacLellan); 2082:2-9 (Plank), 2083:2-6 (Jones).

- Memory segments: *Id.* at 648:15-21 (Bermingham); 1633:8-12 (MacLellan).

- Base memory addresses: *Id.* at 648:9-11 (Bermingham); 1665:20-23 (Plank); 2083:24-2084:9 (Jones).

EMC's expert Dr. Jones did not dispute the disclosure in Santeler of any elements beyond memory region and base memory address. *See, e.g.*, *id.* at 2047:5-10, 2048:11-16. EMC has not provided sufficient evidence to rebut the showing made by Pure.

## V.   CONCEPTION OF THE '015 PATENT

The date of invention [is] presumed to be the filing date of the application until an earlier date is proved. *See Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986). "[T]he patentee has the burden of production in antedating a reference[.]" *Stamps.com Inc. v. Endicia, Inc.,* 437 F. App'x 897, 907-08 (Fed. Cir. 2011). "[W]hen a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer … independent corroborating evidence *in addition to [the inventor's] own statements and documents*." *Procter &*

7

*Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009) (internal quotations and citations omitted; emphasis added); *see also Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002) ("inventor's own unwitnessed documentation does not corroborate an inventor's testimony about inventive facts"); *Kenexa Brassring, Inc. v. Taleo Corp.,* 751 F. Supp. 2d 735, 753 (D. Del. 2010) (explaining that while "[e]vidence in the form of independent documents does not need to be corroborated[,] . . . an alleged prior inventor 'must provide independent corroborating evidence in addition to his own statements and documents'"); *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.,* 443 F. Supp. 2d 836, 856 (S.D. Tex. 2006) (plaintiff "does not cite and the court has not found any authority supporting its contention that the testimony of an inventor together with his own undisclosed and unwitnessed drawings is sufficient to create a genuine issue of material fact as to when conception occurred").  The "testimony of one co-inventor cannot be used to help corroborate the testimony of another." *Medichem, S.A. v. Rolabo, S.L.,* 437 F.3d 1157, 1170 (Fed. Cir. 2006).

At trial, EMC has offered no independent evidence of prior conception.  Indeed, EMC's evidence of the date of conception consists entirely of inventor testimony and unwitnessed documents created and dated by the inventor himself.  Specifically, EMC's evidence of the date of conception of the invention claimed in the '015 patent consists of:

- Dr. Li's testimony concerning when he recalls conceiving of the invention and when he recalls making various undated, unwitnessed notes on a whiteboard.  *See, e.g.,* Trial Tr. at 410:17-411:18, 423:18-20.

- Photographs taken by Dr. Li of the undated, unwitnessed whiteboard notes he created.  PTX 9-11; *see* Trial Tr. at 411:5-15; 420:9-14; 462:22-463:3.

8

- An architecture specification document, version 0.11, authored and dated only by Dr. Li, that undisputedly is dated April 3, 2002—*i.e.*, after the March 22, 2002 filing date of the Sun patent, DTX 557.  PTX 008; Trial Tr. at 424:25-425:1.

- Dr. Li's testimony that an earlier version of the architecture specification, version 0.1, which is missing and not in evidence, likely would be similar to version 0.11. Trial Tr. at 427:4-428:17; 455:19-456:12; 458:19-460:5.

None of this evidence, individually or taken together, is sufficient to antedate the Sun patent (DTX 557).

EMC has not offered the testimony of *any* independent witness to corroborate Dr. Li's testimony concerning the date of conception.  There is no evidence in the record that anyone besides Dr. Li witnessed the architecture specification and the whiteboard notes at the relevant time.  Nor has EMC offered any documents or other physical evidence to corroborate Dr. Li's testimony that was not both created and dated by him.  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* 2010 WL 583960, at *8 (N.D. Cal. Feb. 16, 2010) ("schematics do not constitute independent corroborating evidence because there is no evidence that anyone other than [the inventor] dated the schematics").  Mr. Jestice cannot possibly corroborate the *date* of conception, as he has no independent knowledge of what was done when.  Trial Tr. at 2015:8-20.

The whiteboard photos taken by Dr. Li cannot corroborate the date of conception, because they and the underlying notes are unwitnessed, were created and dated by Dr. Li himself, and there is no independent, reliable evidence of when they were taken.  Dr. Li's testimony concerning when he took the photos and the photos' "metadata" conflict with each other.  *See id.* at 466:2-469:12.  And there is no independent evidence of when the whiteboard notes were created or photographed. Similarly, there is no evidence of what may have been in the March 16, 2002 version 0.1 of the

architecture specification, other than Dr. Li's own testimony, as the document itself is missing, if it ever existed. And Dr. Li himself was not sure what may have changed in the specification between March 16 and April 3, 2002. *Id.* at 458:19-49:8.

Additionally, even if Dr. Li's testimony and the whiteboard photographs were sufficient evidence of the date of conception of some elements of the asserted claims of the '015 patent, which they are not for all the reasons stated above, EMC failed to offer evidence that each and every element of the asserted claims was conceived prior to March 22, 2002, as is required. *See Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003) ("conception must encompass all limitations of the claimed invention"). In his testimony, Dr. Li only provided generalized testimony concerning the substance of the whiteboard notes, and did not attempt to identify evidence of conception of each element. *See* Trial Tr. at 418:12-15, 422:3-11, 423:8-17. Indeed, Dr. Li admitted that he had not even attempted to compare the substance of the whiteboard notes with the asserted claims of the '015 patent. *See id.* at 471:11-17.

Mr. Jestice, EMC's expert, also failed to identify evidence of conception of every element in the whiteboard photos. Specifically, he did not identify any evidence of conception in the whiteboard photos of the "receiving a data stream comprising a plurality of data segments" element of independent claims 1, 15 and 16. *See id.* at 1956:1-16. Nor did he identify any evidence of the confirming "using a relatively high latency memory" element of dependent claim 7. *See* Trial Tr. at 1962:2-1964:3. Mr. Jestice testified that he only saw evidence of these elements in the April 3, 2002 architectural specification, which post-dates the March 22, 2002 Sun patent filing.

In sum, EMC has failed to offer evidence upon which the jury could properly find that each and every element of the asserted claims of the '015 patent was conceived by Dr. Li prior to March 22, 2002. It has failed to offer any evidence of the date of conception beyond the inventor's own

10

testimony and unwitnessed documents, and it has failed to offer evidence of conception of each and every element, even if Dr. Li's testimony and documents concerning the date of conception are sufficient.

## VI.   INVALIDITY OF THE '015 PATENT

### A.   The Sun patent anticipates all asserted claims of the '015 patent

Pure submitted virtually uncontested evidence that the Sun patent (DTX 557) anticipates all asserted claims of the '015 patent. Based on the evidence in the record, Pure is entitled to judgment as a matter of law. As discussed above, clear and convincing evidence proves that the Sun patent is prior art to the '015 patent. In fact, the application date on the face of the '015 patent presumptively establishes a priority date of December 20, 2002, *see* PTX003, whereas the Sun patent application was filed on March 22, 2002.

The record supports judgment as a matter of law in Pure's favor with respect to anticipation of the '015 patent because Pure's technical expert, Prof. Erez Zadok, submitted clear and convincing evidence that each and every element of the asserted claims (1, 2, 7, 15, and 16) is invalid as anticipated under 35 U.S.C. § 103 by the Sun patent. *See generally* DTX557. Even EMC's technical expert, Mr. Ian Jestice, concedes that the Sun patent discloses nearly all elements of asserted claims 1, 2, 7, 15, and 16 of the '015 patent. Prof. Zadok presented uncontested testimony and evidence to show that the Sun patent is directed to a method for deduplicating data in a storage system, consistent with the '015 patent claims. *See, e.g.*, Trial Tr. at 1364:6-11, 1364:24-1365:4; DTX557 at Abstract, 11:30-39. Prof. Zadok also presented uncontested testimony that the Sun patent discloses receiving a "stream of data blocks," thereby anticipating the first element of independent claim 1, which requires "receiving a data stream comprising a plurality of data segments." *See, e.g.,* 1365:5-19; DTX557 at 11:30-39. With regard to the second element of claim 1, requiring "assigning an identifier to one of the plurality of data segments," Prof. Zadok's testimony and analysis showed that

11

the Sun patent also discloses: "[w]hen a data block is received, a data block identifier is obtained." *See, e.g.,* Trial Tr. at 1365:20-1366:22; DTX557 at 2:29-33 & Fig. 5a. Again, Mr. Jestice did not contest that the Sun patent discloses the second "assigning" element.

Applying the Court's construction of "determining," Prof. Zadok next provided testimony and evidence that the Sun patent discloses the third element of claim 1, requiring "determining whether one of the plurality of data segments had been stored previously, using a summary, wherein the summary is a space efficient, probabilistic summary of segment information." *See, e.g.,* Trial Tr. at 1367:9-1371:22, 1969:12-1971:2; DTX557 at 7:5-14 & Fig. 5a. Mr. Jestice's only dispute with regard to independent claim 1 concerns the Sun patent's disclosure of this last claim element. However, Prof. Zadok, applying the Court's claim constructions, presented clear and convincing evidence that the Sun patent discloses that "the identifiers may not be unique," ensuring that there is possible uncertainty in the determination step, consistent with the Court's constructions. *See, e.g.,* Trial Tr. at 1371:13-1375:17; DTX557 at 14:27-33. Prof. Zadok also testified and provided evidence that the Sun patent discloses a "space-efficient" summary, consistent with the Court's construction, in the form of a data structure of "data block identifiers" that require less space in memory than the underlying data blocks. *See, e.g.,* Trial Tr. at 1375:18-1377:23; DTX557 at 6:29-32, Fig. 2. Mr. Jestice's claims to the contrary are unsupported by the plain language of the Sun patent's disclosures.

Prof. Zadok also provided clear and convincing evidence that the Sun patent anticipates dependent claims 2, requiring the derivation of an identifier based on the content of the data segments. *See, e.g.,* Trial Tr. at 1383:23-1386:13; DTX557 at 2:29-33. Mr. Jestice did not controvert that the Sun patent anticipates the additional claim language found in dependent claim 2, beyond those elements found in independent claim 1; thus, because the evidence of anticipation is sufficient

12

as to claim 1, as set forth above, claim 2 is also anticipated. Finally, applying the Court's constructions, Dr. Zadok presented clear and convincing evidence and testimony that dependent claim 7 is anticipated by Sun, which discloses confirming that a data segment has been stored previously using "relatively high latency memory." *See, e.g.,* Trial Tr. at 1387:15-1398:9; DTX557 at 4:27-30, 8:12-19, 14:27-33, Figs. 1 & 8. Although Mr. Jestice purported to contest the evidence of disclosure concerning the use of relatively high latency memory in the confirming step, his opinion was not adequately supported by the evidence. Finally, Dr. Zadok presented testimony and evidence that the Sun patent discloses the similar elements of independent claims 15 and 16, *see* Trial Tr. at 1398:10-1405:19; DTX557 at 2:28-30, 7:33-37, 12:44-46, Fig. 6 (claim 15), *and* Trial Tr. at 1405:20-1408:2; DTX557 at 7:33-37.  Mr. Jestice did not contest the distinct elements of these claims.

In sum, Pure showed by clear and convincing evidence that the Sun patent anticipates all asserted claims of the '015 patent judgment as a matter of law is warranted under 35 U.S.C. § 102.

**B.    The Venti reference anticipates all asserted claims of the '015 patent**

Pure also provided clear and convincing evidence that "Venti: a new approach to archival storage" (the "Venti reference") (DTX 560) discloses all asserted claims of the '015 patent pursuant to 35 U.S.C. § 102. There is no dispute that the Venti reference is prior art to the '015 patent, and Prof. Zadok presented uncontroverted testimony and evidence that he was personally present for the reference's printed publication and presentation at the 2002 FAST Conference. *See, e.g.,* Trial Tr. at 1408:3-1411:11.

Prof. Zadok went on to provide detailed evidence and analysis concerning the Venti reference's disclosures as a method for deduplicating data in a storage system, including all elements of the asserted claims.  *See, e.g.*, Trial Tr. at 1413:22-1427:12, 1473:24-1483:15; DTX560 at

Abstract, at Sections 1-5 (PURE.DE00003312-24). EMC has not provided any credible evidence to the contrary, and Mr. Jestice was unable to dispute that the Venti reference discloses the vast majority of the elements of the asserted claims of the '015 patent, including the first three elements of independent claim 1, and the parallel elements in independent claims 15 and 16. To the extent Mr. Jestice attempted to dispute the Venti reference's disclosure of a probabilistic and/or space-efficient summary, his testimony was unsupported and does not rebut the clear and convincing testimony submitted by Prof. Zadok. *See, e.g.,* Trial Tr. at 1421:23-1422:9 (Prof. Zadok testifying to the Venti reference's disclosure of a space-efficient cache and of SHA-1 hashing); DTX560 at Sections 3-5 & Fig. 3 (disclosing the use of a system comprising of a block cache, index cache in memory, as well as an index of fingerprints stored in a relatively high latency, secondary storage medium such as disk). Mr. Jestice's suggestion that the Venti reference does not disclose the use of a cache with write operations is also belied by the plain language disclosures on the face of the reference. *See, e.g.*, Trial Tr. at 1424:22-1426:11; DTX560 at 3, 4.5, 5 & Table 1. Finally, Mr. Jestice's suggestion that the Venti reference does not disclose the use of "relatively high latency memory" in the confirming step of claim 7 is also unsupported and disproven by the clear testimony from Dr. Zadok and the disclosures of the Venti prototype system. *See, e.g.*, Trial Tr. at 1475:17-1478:16; DTX560 at Fig. 3.

In view of the testimony and analysis of Prof. Zadok, and the clear disclosures found in the Venti reference, Pure respectfully requests judgment as a matter of law that the Venti reference anticipates all elements of the asserted claims of the '015 patent.

### C.      The Moulton patent anticipates claims 1, 2, 15, and 16 of the '015 patent

The evidence establishes by clear and convincing evidence that U.S. Patent No. 6,704,730 (the "Moulton patent") (DTX 556) anticipates claims 1, 2, 15, and 16 of the '015 patent, and given

14

the record, a judgment of invalidity is warranted under 35 U.S.C. § 102. As with the prior two anticipatory references, EMC did not—and could not—contest that the Moulton patent discloses the great majority of the elements of claims 1, 2, 15, and 16 of the '015 patent. And as an initial matter, there is no dispute that the Moulton patent predates, and therefore is prior art to, the '015 patent by over a year. *See* DTX560, Cover (showing priority date of February 5, 2001).

Similarly, the record reflects no real debate that Moulton patent is generally directed to a system and method for deduplicating data in a storage system. Prof. Zadok testified that the Moulton patent discloses a "commonality factoring system" for use in "a high availability, high reliability data storage system." *See, e.g.,* Trial Tr. at 1483:21-1486:16; DTX556 at Title & 6:30-35 & Fig. 3, 4. And as with the prior two anticipatory references to the '015 patent, Prof. Zadok presented clear and convincing evidence, and EMC and Mr. Jestice did not dispute, that Moulton discloses "receiving a data stream comprising a plurality of data segments" and "assigning an identifier to one of the plurality of data segments." *See, e.g.,* Trial Tr. at 1486:17-1491:4; DTX556 at 9:66-10:2, 14:31-44. Although Mr. Jestice and EMC attempted to dispute the final "determining" element, the plain language on the face of the Moulton patent clearly discloses a determining step using a probabilistic and space-efficient summary. *See, e.g.,* Trial Tr. at 1490:20-1496:12; DTX556 at 6:30-50, 14:21-24, Fig. 5. Finally, EMC and Mr. Jestice were unable to present record evidence to rebut the clear and convincing testimony and evidence adduced by Pure, through its retained expert Prof. Zadok, concerning claims 15 and 16. *See, e.g.,* Trial Tr. at 1490:20-1496:12; DTX556 at 9:55-60, 10:49-53, 16:581-17:5 & Fig. 2, 6. Rather, Mr. Jestice only contested the elements in common with independent claim 1—and did so unsuccessfully.

In view of the record and foregoing reasons, Pure respectfully requests judgment as a matter of law that the '015 patent is anticipated.

15

## VII.    DAMAGES

### A.    EMC's claim for lost profits damages is not supported by sufficient evidence.

EMC presents insufficient evidence of a causal connection between the accused features and EMC's purported lost profits. "To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that 'but for' the infringement, it would have made the infringer's sales." *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).

First, EMC concedes that customers purchase Pure's products for a variety of reasons. *See*, *e.g.*, Trial Tr. at 1005:5-10 (Napper). EMC also concedes that the accused features are not the primary reasons for customer demand for Pure's products. *See*, *e.g.*, *id.* at 1004:21-1005:4, 1005:11-1009:7 (Napper). For example, EMC's damages expert expressly rejects the claim that Pure's customers "demand" a deduplication feature. *See*, *e.g.*, *id.* at 1007:11-18 (Napper). Moreover, Pure provided extensive evidence that there are other reasons why Pure's customers would not purchase EMC's products in the but-for world, including EMC's lack of other features, general customer dissatisfaction with EMC and EMC's lack of capacity to make additional sales. *See*, *e.g.*, *id.* at 1015:20-1026:9, 1029:6-1047:11 (Napper). The inline deduplication feature admittedly provides negligible benefit in leading use cases, such as database. *Id.* at 369:9-16 (Cobb). For these and other reasons stated at trial, EMC's market share analysis based on Pure making no sales in the all-flash array market is unreasonable and unsupported. Mr. Napper's testimony in favor of lost profits is unsupported by any reasoned explanation or analysis.

Second, EMC presents insufficient evidence that Pure had no non-infringing alternative to the accused inline deduplication feature. "Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). EMC does not dispute that

16

background deduplication is non-infringing. Trial Tr. at 1091:10-17 (Napper). Pure put forth evidence that this non-infringing alternative was available at all relevant times, and would be acceptable to customers. *Id.* at 1295:23-1305:6 (Vachharajani); 1545:22-1560:19 (Zadok); 1919:10-1921:4 (Stamm); DTX 1088; DTX 745; DTX 753. EMC does not put forth evidence to contest the availability of background deduplication. On acceptability, EMC concedes that customers are interested in effective capacity, and not specific data reduction features such as inline deduplication. *See*, *e.g.*, *id.* at 1027:4-10 (Napper). EMC concedes that a certain effective capacity for a certain price could be achieved in other ways besides inline deduplication, such as by changing pricing or adding capacity. *See*, *e.g.*, *id.* at 799:14-800:21 (Goldstein). Moreover, EMC does not identify a decrease in effective capacity that would change customer behavior, such that the alternative would be unacceptable. *See*, *e.g.*, *id.* at 1027:19-1028:2 (Napper).

Similarly, EMC presents insufficient evidence that Pure's proposed inline deduplication code redesign was not available and acceptable. Pure put forth sufficient evidence that its inline deduplication code redesign was available during the relevant period and would have been acceptable to customers. *Id.* at 1305:8-1309:20 (Vachharajani); 1540:15-1545:21 (Zadok); 1921:5-1922:19 (Stamm). EMC did not introduce evidence contesting the time it would take to implement the code changes, nor whether the code changes would be acceptable to Pure's customers.

Third, EMC presents insufficient evidence that Pure had no non-infringing alternative to the accused RAID-3D feature. "Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). EMC concedes that there are many different ways to implement RAID, including on flash. *See*, *e.g.*, Trial Tr. at 873:5-16 (Goldstein). Pure put forth sufficient evidence that these alternatives were available and would have been acceptable to

customers. *Id.* at 1327:15-1333:18, 1336:1-9 (Miller); 1687:5-1691:3, 1693:19-23, 1700:3-17 (Plank); 1923:19-1925:8 (Stamm). Pure's evidence regarding availability and acceptability is unrebutted. *See*, *e.g.*, *id.* at 1693:19-1694:18 (Plank); 1336:1-9 (Miller). EMC does not establish that Pure's proposed non-infringing RAID alternatives infringe the '556 patent. The '556 patent's claim language specifies that XOR must be used in a specific way, and the alternatives use XOR in a different manner. *Id.* at 1688:1-23 (Plank).

**B.      EMC's claims for reasonable royalties are not supported by sufficient evidence.**

First, EMC fails to apportion the value of deduplication between accused and unaccused features. "When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). EMC relies upon documents disclosing the value of deduplication generally. *See*, *e.g.*, Trial Tr. at 1092:6-18, 1093:18-23 (Napper). EMC does not apportion that value between inline and background deduplication. *See*, *e.g.*, *id.* at 1094:23-1096:24 (Napper).

Second, EMC bases its RAID-3D royalty on a purported benefit that Pure already obtains through unaccused features. "When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). EMC relies upon the value of low latency to estimate a royalty for the '556 patent. *See*, *e.g.*, Trial Tr. at 1085:11-22, 1087:4-1088:14 (Napper). EMC concedes that Pure could get the same low latency benefit through unaccused features of the FlashArray, such as I/O scheduling. *See*, *e.g.*, *id.* at 1090:13-1091:5 (Napper).

Mr. Napper's testimony in support of both royalties is conclusory and unsupported by any reasoned explanation or analysis.

## VIII.  CONCLUSION

For the foregoing reasons, Pure respectfully asks that the Court grant this motion and enter the attached order granting judgment as a matter of law.

Respectfully submitted,

/s/ David M. Fry

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Pure Storage, Inc.*

OF COUNSEL:
Robert A. Van Nest
Matthew Werdegar
Ashok Ramani
R. Adam Lauridsen
Corey Johanningmeier
David Rizk
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400

Joseph FitzGerald
PURE STORAGE, INC.
650 Castro Street, Suite 400
Mountain View, CA  94041
(650) 318-6589

Dated: March 15, 2016

19