IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMC CORPORATION, EMC INTERNATIONAL COMPANY, and EMC INFORMATION SYSTEMS INTERNATIONAL,  Plaintiffs,  v.  PURE STORAGE, INC.,  Defendant. | )<br>)<br>)<br>)<br>)  C.A. No. 13-1985 (RGA)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

**Page**

1. GENERAL INSTRUCTIONS ......................................................................... 1
   1.1  INTRODUCTION ............................................................................... 1
   1.2  JURORS' DUTIES .............................................................................. 2
   1.3  BURDENS OF PROOF ....................................................................... 3
   1.4  EVIDENCE DEFINED ....................................................................... 4
   1.5  CONSIDERATION OF EVIDENCE ................................................... 5
   1.6  DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................. 6
   1.7  CREDIBILITY OF WITNESSES ....................................................... 7
   1.8  NUMBER OF WITNESSES .............................................................. 9
   1.9  EXPERT WITNESSES ..................................................................... 10
   1.10  DEMONSTRATIVE EXHIBITS ...................................................... 11
   1.11  USE OF NOTES ............................................................................... 12
2. THE PARTIES AND THEIR CONTENTIONS ........................................... 13
   2.1  THE PARTIES ................................................................................. 13
   2.2  SUMMARY OF CONTENTIONS ................................................... 14
3. PATENT CLAIMS ...................................................................................... 16
   3.1  THE ROLE OF THE CLAIMS IN A PATENT ............................... 16
   3.2  INDEPENDENT AND DEPENDENT CLAIMS ............................. 17
   3.3  CONSTRUCTION OF CLAIMS ..................................................... 18
4. INFRINGEMENT ........................................................................................ 19
   4.1  INFRINGEMENT GENERALLY .................................................... 19
   4.2  INFRINGEMENT – LITERAL INFRINGEMENT .......................... 20
5. INVALIDITY—GENERALLY ................................................................... 21
   5.1  PRIOR ART ..................................................................................... 22
        5.1.1.  PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE
           USPTO ................................................................................ 23
        5.1.2.  DATE OF INVENTION ....................................................... 24
   5.2  ANTICIPATION ............................................................................. 26
   5.3  OBVIOUSNESS .............................................................................. 27
6. DAMAGES .................................................................................................. 30
   6.1  DAMAGES – GENERALLY .......................................................... 30
   6.2  LOST PROFITS – "BUT FOR" TEST ............................................ 31
   6.3  LOST PROFITS – DEMAND ......................................................... 32
   6.4  LOST PROFITS –NONINFRINGING SUBSTITUTES – ACCEPTABILITY ........ 33
   6.5  LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY .......... 34

i

6.6    LOST PROFITS—CAPACITY ................................................................ 35

6.7    LOST PROFITS—MARKET SHARE................................................... 36

6.8    LOST PROFITS—AMOUNT OF PROFIT .......................................... 37

6.9    REASONABLE ROYALTY – ENTITLEMENT .................................. 38

6.10  REASONABLE ROYALTY AS A MEASURE OF DAMAGES ........... 39

6.11  FACTORS FOR DETERMINING REASONABLE ROYALTY ........... 40

6.12  DATE OF COMMENCEMENT OF CLAIMED DAMAGES ................ 42

7.      DELIBERATION AND VERDICT................................................................ 43

7.1    DELIBERATION AND VERDICT—INTRODUCTION ........................ 43

7.2    UNANIMOUS VERDICT..................................................................... 44

7.3    DUTY TO DELIBERATE .................................................................... 45

7.4    SOCIAL MEDIA ................................................................................. 46

7.5    COURT HAS NO OPINION................................................................ 47

# 1.   GENERAL INSTRUCTIONS

## 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

1

## 1.2   JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## 1.3   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

This is a civil case in which EMC Corporation, EMC International Company, and EMC Information Systems International (whom I will refer to as "EMC") are accusing Pure Storage, Inc. (whom I will refer to as "Pure") of patent infringement. In addition to denying that infringement for some of the Asserted Claims, Pure asserts that some of the Asserted Claims are invalid.

EMC has the burden of proving patent infringement by what is called a preponderance of the evidence. That means EMC has to produce evidence which, when considered in light of all of the facts, leads you to believe that the infringement is more likely true than not. To put it differently, if you were to put EMC's and Pure's evidence on the opposite sides of a scale, the evidence supporting EMC's claims would have to make the scales tip somewhat on EMC's side.

Pure has the burden of proving that the Asserted Claims are invalid by what is called clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

## 1.4   EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that was presented to you, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and any other evidence that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Sometimes testimony and exhibits are received only for a limited purpose. When I give instructions regarding that limited purpose, you must follow it.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is indirect proof of a fact, i.e., proof of facts from which you may infer or conclude that other facts exist. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to either direct or circumstantial evidence, nor does it say that one type of evidence is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.7   CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

7

This instruction applies to all witnesses, including expert witnesses.

## 1.8    NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 1.9   EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## 1.10   DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

## 1.11   USE OF NOTES

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## 2.     THE PARTIES AND THEIR CONTENTIONS

### 2.1     THE PARTIES

I will now review for you the parties in this action, and the positions that you will have to consider in reaching your verdict. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

The parties are EMC Corporation, EMC International Company, EMC Information Systems International, and Pure Storage, Inc.   EMC is asserting United States Patent Nos. 7,373,464; 7,434,015; and 6,904,556, which I will refer to by their last three numbers, namely "the '015 patent," "the '464 patent," and "the '556 patent."   Collectively, I will refer to these patents as the "Asserted Patents" or the "EMC Patents."

13

## 2.2   SUMMARY OF CONTENTIONS

The claims at issue are claims 1, 2, 7, 15, and 16 of the '015 patent, claim 32 of the '464 patent, and claims 6 and 7 of the '556 patent. I will refer to these as the "Asserted Claims."

With respect to the '015 patent, the parties have agreed that Pure infringes claims 1, 2, 7, 15, and 16 of the '015 patent. Pure contends that these claims of the '015 patent are invalid as anticipated. It is EMC's position that these claims of the '015 patent are valid.

Remember, as I told you at the beginning of the trial, the fact that Pure has agreed to infringement of the '015 patent has no effect on any other issue in the case, and you may not consider it in deciding any other issue in the case. I want to emphasize that the fact that Pure has agreed to infringement of the one patent does not have anything to do with whether or not it infringes the other patents. That is something that you will have to decide based on the evidence that was actually presented to you in this case.

With respect to the '464 patent, EMC contends that Pure literally infringes claim 32 of the '464 patent by making, using, selling, or offering for sale products that EMC argues are covered by that claim. Pure denies that it infringes claim 32 of the '464 patent. Pure does not contest the validity of claim 32 of the '464 patent.

Finally, with respect to the '556 patent, EMC contends that Pure literally infringes claims 6 and 7 of the '556 patent by making, using, selling, or offering for sale products that EMC argues are covered by those two claims. Pure denies that it infringes claims 6 and 7 of the '556 patent. Pure also contends that claims 6 and 7 of the '556 patent are invalid as obvious. It is EMC's position that claims 6 and 7 of the '556 patent are valid.

The products that are alleged to infringe are Pure's FlashArray products.

14

If any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to EMC to compensate it for the infringement.

## 3.    PATENT CLAIMS

## 3.1    THE ROLE OF THE CLAIMS IN A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

## 3.2    INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent. The first way a claim can be stated is in the form of an "independent claim." An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

In this case, claim 32 of the '464 patent, claims 1, 15, and 16 of the '015 patent, and claim 6 of the '556 patent are each independent claims. An "independent claim" sets forth all of the requirements that must be met in order for an accused system or method to be covered by that claim, and thus infringe.

The second way a claim can be stated is in the form of a dependent claim. The remainder of the Asserted Claims in the Asserted Patents are dependent claims. A dependent claim does not itself recite all of the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

An accused product or method is only covered by, and is therefore infringing of, a dependent claim if the accused product meets all of the requirements of both the dependent claim and the claims to which the dependent claim refers. Because a dependent claim incorporates all of the features of the independent claims it refers to, if you find that an independent claim is not infringed, then the claims that depend on that independent claim cannot be infringed. Similarly, if you find that an independent claim is not anticipated or obvious, then the claims that depend on that independent claim are also not anticipated or obvious.

## 3.3    CONSTRUCTION OF CLAIMS

The law says that it is the Court's duty to define the terms of the patent's claims. I have already defined the meaning of some of the words of the Asserted Claims in this case. These definitions have been provided to you on a chart provided to you as Joint Trial Exhibit 1.

You must accept my definition of these words in the Asserted Claims as correct. You must use the definitions I give you for each claim to make your decisions as to whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or the attorneys. You should not take my definition of the language of the Asserted Claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, namely infringement and invalidity. These issues are yours to decide.

When I have not defined a term, you should give it its ordinary meaning.

## 4.   INFRINGEMENT

## 4.1   INFRINGEMENT GENERALLY

Patent law provides that any person or business entity which makes, uses, sells, or offers to sell, without the patent owner's permission, any product, apparatus or method covered by at least one claim of a United States patent before the patent expires, infringes the patent. A patent owner may enforce his right to exclude others from making, using, selling, or offering to sell the patented invention by filing a lawsuit for patent infringement.

## 4.2    INFRINGEMENT – LITERAL INFRINGEMENT

In order to prove literal infringement of the Asserted Claims, EMC must show by a preponderance of the evidence that Pure has made, used, offered for sale, or sold a product or system that meets every limitation of the claim. Making, using, offering for sale, or selling a product that meets every limitation of the claim constitutes literal infringement.  In other words, a claim is literally infringed if a product or system includes each and every component or practices each and every step of the claim. If a product or system omits any single component or fails to practice any step recited in a claim, that product does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

Someone can infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.  They also may infringe a patent even though they believe in good faith that what they are doing does not infringe a patent or if they believe in good faith that the patent is invalid.  An independently developed product or process that falls within the scope of an Asserted Claim still infringes.

## 5.   INVALIDITY—GENERALLY

Pure contends that the asserted claims of the '015 and '556 patents are invalid.  Pure has challenged the validity of the Asserted Claims of the '015 patent under anticipation and Pure has challenged the validity of the Asserted Claims of the '556 patent under obviousness.  Pure does not contest the validity of claim 32 of the '464 patent.

Patent invalidity is a defense to patent infringement. For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious.  It is your job to determine whether Pure has proven, by clear and convincing evidence, that the legal requirements for patentability were not met.

In making your determination as to whether an Asserted Claim of the '015 or '556 patent is valid or invalid, you must consider each Asserted Claim of these patents separately and individually.

## 5.1   PRIOR ART

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." Pure must prove, by clear and convincing evidence, that these items are prior art. In order to do so, Pure must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include any of the following items received into evidence during trial:

1.   patents that issued before the invention was made;

2.   publications having a publication date before the invention was made;

3.   a patent that has been issued where the application for the issued patent was filed before the date the invention was made.

Before determining whether any of the Asserted Claims are invalid, you must first determine whether the evidence you are relying on qualifies as prior art based on these criteria. The '015 and '556 patents were filed on different dates. Therefore, you must decide whether the Asserted Claims of the '015 and '556 patents are invalid in view of the prior art and the ordinary skill in the art as it existed as of a certain time.

### 5.1.1.  PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO

Regardless whether particular prior art references were considered by the United States Patent and Trademark Office (or "USPTO") during the prosecution of the applications which matured into the Asserted Patents, Pure must prove that the challenged Asserted Claims are invalid. Pure must do so by clear and convincing evidence. This burden of proof on Pure never changes regardless whether or not the USPTO considered the reference.

Although Pure's burden of proof never changes, if the USPTO did consider a reference, it may be more difficult for Pure to meet its burden of proof.  A patent examiner is under a duty to consider all references previously considered in conjunction with ancestor applications.

### 5.1.2.  DATE OF INVENTION

In this case, the date of invention is undisputed for one of the patents. For purposes of determining validity in this case, the date of invention of the '556 Patent is August 9, 2001.  The date of invention of the '015 patent is in dispute.

The date of invention is when the invention was conceived, provided the inventors were diligent in reducing the invention to practice.  Diligence means working continuously, though not necessarily every day.   Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person.  But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application. If you find that the inventors were not diligent in

reducing the invention to practice, then the date of invention is the date when the earliest patent application was filed.

Pure contends that U.S. Patent No. 6,889,297 to Oliver Krapp (the "Sun patent") was filed before the date of invention of the '015 patent, while EMC contends that the '015 patent has an earlier invention date. It is Pure's burden to prove, by clear and convincing evidence, that the Sun patent was filed before date of invention of the '015 patent. If you do not find by clear and convincing evidence that the Sun patent was filed before the date of invention of the '015 patent, you should find that the Sun patent is not prior art.

## 5.2    ANTICIPATION

Pure contends that the Asserted Claims of the '015 patent are invalid for anticipation. In order for someone to be granted a patent, the invention must be "new." In general, inventions are new when they have not been made, used, or disclosed before.  In this case, Pure contends that each of the Asserted Claims of the '015 patent is anticipated by prior art.

To prove anticipation, Pure Storage must prove by clear and convincing evidence that the claimed invention is not new. Anticipation must be determined on a claim-by-claim basis.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim.   In determining whether every one of the elements of the claimed invention is found in a particular piece of prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of it.  If you find that any of the Asserted Claims was anticipated by a single item of prior art, then that claim is invalid.

## 5.3   OBVIOUSNESS

Pure contends that claims 6 and 7 of the '556 patent are invalid for obviousness.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. Pure Storage may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider (1) the scope and content of the prior art, (2) the level of ordinary skill in the pertinent art, and (3) the differences between the claimed invention and the prior art.

In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

To determine the scope and content of the prior art, you must determine what prior art is reasonably pertinent to the particular problems with which the inventors were faced. The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.

27

The next factor that you must consider is the differences, if any, between the prior art and the claimed inventions. Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The motivation to modify the prior art to arrive at the claimed invention need not be the same motivation that the inventor had.

In deciding the obviousness question, you may take into account such factors as:

a. Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

b. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

c. Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

d. Whether the prior art teaches away from combining elements in the claimed invention; and

e. Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

In making obviousness determinations, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as whether the invention was commercially successful as a result of the merits of the

claimed invention (rather than the result of design needs or market-pressure advertising or similar activities).

Finding secondary considerations may suggest that the claim was not obvious. However, there must be a connection between the evidence showing any of these factors and the claimed inventions if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those claimed in the patents in suit, then any commercial success may have no relation to the issue of obviousness.

**6.      DAMAGES**

**6.1     DAMAGES – GENERALLY**

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue.

The damages you award must be adequate to compensate EMC for the infringement. They are not meant to punish an infringer. Your damages awards, if you reach this issue, should put EMC in approximately the same financial position that it would have been in had the infringement not occurred.

EMC has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that EMC establishes that it more likely than not suffered.

In this case, EMC seeks lost profits and a reasonably royalty. Lost profits consist of any actual reduction in business profits EMC suffered as a result of Pure's alleged infringement. A reasonable royalty is defined as the amount of money EMC and Pure would have agreed upon as a fee for use of the invention before the infringement first began.  I will give you more detailed instructions regarding damages shortly.

If you find that any of the following: (1) that any of claim 1, 2, 7, 15, and 16 of the '015 patent is valid, (2) that claim 32 of the '464 patent is infringed, or (3) that any of claims 6 and 7 of the '556 patent are infringed and valid, then you must determine the damages to which EMC is entitled for Pure's infringement.

## 6.2   LOST PROFITS – "BUT FOR" TEST

In this case, EMC seeks to recover lost profits for some of Pure's sales of FlashArray products, and a reasonable royalty on the rest of Pure's sales.

To recover lost profits (as opposed to reasonable royalties), EMC must show a causal relationship between the infringement and EMC's loss of profit. In other words, EMC must show that, but for the infringement, there is a reasonable probability that EMC would have earned higher profits. EMC seeks to show that, if there had been no infringement, EMC would have made some portion of the sales that Pure made of the FlashArray products.

EMC is entitled to lost profits if it establishes each of the following:

(1)     That there was a demand for the patented product.

(2)     There were no acceptable non-infringing alternatives to the patented inventions that were available to Pure for use in its products.

(3)     That EMC had the manufacturing, financial and marketing capacity to make any infringing sales actually made by Pure and for which EMC seeks an award of lost profits—in other words, that EMC was capable of satisfying the demand.

(4)     The amount of profit that EMC would have made if Pure had not infringed.

31

## 6.3    LOST PROFITS – DEMAND

Demand for the patented product can be proven by significant sales of an infringing product containing the patented features.

**6.4   LOST PROFITS –NONINFRINGING SUBSTITUTES – ACCEPTABILITY**

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product, but also must not infringe the Asserted Patents. If purchasers of an alleged infringer's product were motivated to buy that product because of features covered by the Asserted Patents, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured some or all of the sales made by the infringer, then EMC is entitled to lost profits only for those sales that would have been captured by EMC.

## 6.5    LOST PROFITS—NONINFRINGING SUBSTITUTES—AVAILABILITY

An alternative product may be considered "available" to Pure, as a potential substitute for an infringing one, even if the alternative product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available to Pure Storage at the time of infringement. Factors suggesting the alternative was not available include whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute, whether the infringer lacked the necessary know-how, equipment, and experience to make the alternative, and whether the cost to make the alternative was high.

Pure has the burden of proof by a preponderance of the evidence to show that an alternative not actually on sale was available to Pure during the damages period. If Pure proves the availability of such an alternative, it remains EMC's burden to prove by a preponderance of the evidence that such an alternative was either infringing or not acceptable.

## 6.6   LOST PROFITS—CAPACITY

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, the patent holder must show that it had the manufacturing and marketing capacity to make the sales it said it lost. This means the patent holder must prove it is more probable than not that it could have made and sold, or could have had someone else make and sell for it, the additional products it says it could have sold but for the infringement.

## 6.7   LOST PROFITS—MARKET SHARE

If EMC establishes it would have made some, but not all, of Pure's sales but for the infringement, the amount of sales that EMC lost may be shown by proving the EMC's share of the relevant market, excluding infringing products.  EMC may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. In determining EMC's market share, the market must be established first, which requires determining which products are in that market.  Products are considered in the same market if they are considered "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

**6.8   LOST PROFITS—AMOUNT OF PROFIT**

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

## 6.9    REASONABLE ROYALTY – ENTITLEMENT

If you find that EMC has established infringement, EMC is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that EMC has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award EMC a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

## 6.10   REASONABLE ROYALTY AS A MEASURE OF DAMAGES

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

## 6.11   FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)   The commercial relationship between EMC and Pure, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(2)   The established profitability of the products made under the patents, its commercial success, and its current popularity.

(3)   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(4)   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by EMC, and the benefits to those who have used the invention.

(5)   The extent to which Pure has made use of the invention and any evidence probative of the value of that use.

(6)   The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(7)   The opinion testimony of qualified experts.

(8)   The amount that a licensor (such as EMC) and a licensee (such as Pure) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent

40

licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Pure would have been willing to pay and EMC would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between EMC and Pure taking place at a time prior to when the infringement began.

41

**6.12    DATE OF COMMENCEMENT OF CLAIMED DAMAGES**

EMC is only seeking damages in this case from November 26, 2013 to the present. EMC is not seeking damages for any infringement before that date.

## 7.    DELIBERATION AND VERDICT

### 7.1    DELIBERATION AND VERDICT—INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of you deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

## 7.3   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

45

## 7.4   SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, MySpace, Linkedin, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

## 7.5   COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.